*No. 14-11157-FF*

IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT



CONSUMER FINANCIAL PROTECTION BUREAU,

*Plaintiff-Appellee,*

*v.*

UNITED GUARANTY CORPORATION,

*Defendant-Appellee,*

*and*

PHH CORPORATION, PHH MORTGAGE CORPORATION, PHH HOME LOANS, LLC, ATRIUM INSURANCE CORPORATION, ATRIUM REINSURANCE CORP.,

*Intervenor Defendants-Appellants.*

_____

*On Appeal from the United States District Court
for the Southern District of Florida,
Case No. 13-cv-21189-KMW*

## BRIEF OF DEFENDANT-APPELLEE
## UNITED GUARANTY CORPORATION

Jane M. Byrne
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
212-849-7000

*and*

Daniel C. Posner
Molly Alana Karlin
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
213-443-3000

*Attorneys for Defendant-Appellee
United Guaranty Corporation*

*No. 14-11157-FF*
*Consumer Financial Protection Bureau*
    *v. PHH Corp., et al.*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and 11th Circuit Rule 26.1-1, Defendant-Appellee United Guaranty Corporation ("United Guaranty") hereby certifies that Appellants' Certificate of Interested Persons and Corporate Disclosure Statement, filed on April 11, 2014, and included in the Brief of Appellants PHH Corporation, PHH Mortgage Corporation, PHH Home Loans, LLC, Atrium Insurance Corporation and Atrium Reinsurance Corporation (collectively, "Appellants"), filed on April 23, 2014, sets forth a complete list of the trial judge(s), attorneys, persons, associations of persons, firms, partnerships or corporations that have or may have an interest in the outcome of the above-captioned appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly-held corporation that owns 10% or more of the party's stock, and other identifiable legal entitles related to a party, *except* as follows:

36.    American International Group, Inc. (NYSE: AIG), parent corporation of United Guaranty; and

37.    Posner, Daniel C., counsel for United Guaranty.

*No. 14-11157-FF*
*Consumer Financial Protection Bureau*
*    v. PHH Corp., et al.*

United Guaranty is a subsidiary of American International Group, Inc.,

which holds 10% or more of United Guaranty's stock.  American International

Group, Inc. is publicly held and trades on the New York Stock Exchange as AIG.

## STATEMENT REGARDING ORAL ARGUMENT

United Guaranty is prepared and willing to present oral argument to the Court but believes that the district court's decision may be upheld without oral argument.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
    DISCLOSURE STATEMENT......................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CITATIONS ........................................................................iv

STATEMENT OF THE ISSUES....................................................................1

STATEMENT OF THE CASE......................................................................2

    A.    Nature Of The Case..................................................................2

    B.    Procedural History...................................................................4

    C.    Statement Of Facts..................................................................5

        1.    Appellees' Negotiation Of And Performance Under The
            Consent Order.................................................................5

        2.    The CFPB's Initiation Of The Administrative Proceeding.......8

        3.    Appellants' Motion To Intervene ...........................................11

    D.    Standard of Review .................................................................13

SUMMARY OF THE ARGUMENT ........................................................14

ARGUMENT ........................................................................................17

I.    INTERVENTION WAS CORRECTLY DENIED BECAUSE IT
    WOULD BE FUTILE..........................................................................17

    A.    Appellants Lack Standing To Enforce The Consent Order ................17

    B.    The District Court Lacks Authority To Interpret The Consent
        Order In The Manner Appellants Request ...........................................21

II.    THE DISTRICT COURT PROPERLY EXERCISED ITS
    DISCRETION IN REJECTING APPELLANTS' MOTION TO
    INTERVENE AS UNTIMELY.....................................................................23

A.    Appellants Knew Or Reasonably Should Have Known Of Their Alleged Interest In The Case Nearly Ten Months Before They Petitioned For Leave To Intervene ........................................................25

B.    Appellees Would Be Substantially Prejudiced By Appellants' Untimely Intervention ..........................................................29

C.    Appellants Will Not Be Prejudiced If The Denial Of Intervention Is Upheld..........................................................31

D.    No Unusual Circumstances Are Present Here ....................................34

III.    EVEN IF APPELLANTS' MOTION TO INTERVENE WERE TIMELY, THE DISTRICT COURT CORRECTLY CONCLUDED THAT APPELLANTS WERE NOT ENTITLED TO INTERVENE AS OF RIGHT ........................................................35

IV.    EVEN IF APPELLANTS' MOTION TO INTERVENE WERE TIMELY, THE DISTRICT COURT PROPERLY EXERCISED ITS SUBSTANTIAL DISCRETION IN DENYING PERMISSIVE INTERVENTION ........................................................43

CONCLUSION ........................................................44

CERTIFICATE OF COMPLIANCE ........................................................46

CERTIFICATE OF SERVICE ........................................................47

ADDENDUM ........................................................ A-i

# <u>TABLE OF CITATIONS</u>

<u>Page</u>

## <u>Cases</u>

*Acree v. Republic of Iraq*,
  370 F.3d 41 (D.C. Cir. 2004) ................................................................ 24

*Aiken v. City of Memphis*,
  37 F.3d 1155 (6th Cir. 1994) ................................................................ 20

*Allen-Bradley Local No. 1111 v. Wis. Emp't Relations Bd.*,
  315 U.S. 740, 62 S. Ct. 820 (1942) ...................................................... 18

*Alley v. U.S. Dep't of Health & Human Servs.*,
  590 F.3d 1195 (11th Cir. 2009) ............................................................ 23

*Alley v. U.S. Dep't of Health & Human Servs.*,
  No. 1:07-cv-00096 (N.D. Ala. Nov. 19, 2008) (ECF No. 59) .......... 23, 24

*Anderson v. City of Alpharetta*,
  770 F.2d 1575 (11th Cir. 1985) ....................................................... 17, 21

*Athens Lumber Co. v. Fed. Election Comm'n*,
  690 F.2d 1364 (11th Cir. 1982) ....................................................... 38, 42

*In re Bayshore Ford Truck Sales, Inc.*,
  471 F.3d 1233 (11th Cir. 2006) ............................................................ 39

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723, 95 S. Ct. 1917 (1975) ........................................ 18, 19, 20

*Bonner v. City of Prichard*,
  661 F.2d 1206 (11th Cir. 1981) ............................................................ 16

*Bryant v. Avado Brands, Inc.*,
  187 F.3d 1271 (11th Cir. 1999) .............................................................. 8

*Campbell v. Hall-Mark Elecs. Corp.*,
  808 F.2d 775 (11th Cir. 1987) ................................................ 27, 29, 30, 31

*Chiles v. Thornbergh*,
  865 F.2d 1197 (11th Cir. 1989) ................................................ 38, 39, 40, 42

---

  [*]  Denotes authority upon which United Guaranty primarily relies.

iv

*Cincinnati, I. & W.R. Co. v. Indianapolis Union Ry. Co.*,
  279 F. 356 (6th Cir. 1922) ................................................... 24

*Clark v. Putnam Cnty.*,
  168 F.3d 458 (11th Cir. 1999) ............................................. 42

*Corrugated Paper Prods., Inc. v. Longview Fibre Co.*,
  868 F.2d 908 (7th Cir. 1989) .............................................. 20

*Davis v. Butts*,
  290 F.3d 1297 (11th Cir. 2002) ........................................... 38

*\*Dillard v. Chilton Cnty. Comm'n*,
  495 F.3d 1324 (11th Cir. 2007) ................................. 13, 17, 18

*Diamond v. Charles*,
  476 U.S. 54, 106 S. Ct. 1697 (1986)..................................... 18

*Diaz v. S. Drilling Corp.*,
  427 F.2d 1118 (5th Cir. 1970) ....................................... 35, 41

*Donaldson v. United States*,
  400 U.S. 517, 91 S. Ct. 534 (1971)................................... 37, 38

*\*EEOC v. E. Airlines, Inc.*,
  736 F.2d 636 (11th Cir. 1984) ..................................... 37, 38

*Elliott Indus. v. BP Am. Prod. Co.*,
  407 F.3d 1091 (10th Cir. 2005) ........................................... 24

*FTC v. Am. Legal Distribs., Inc.*,
  890 F.2d 363 (11th Cir. 1989) ..................................... 34, 35

*Fla. Family Policy Council v. Freeman*,
  561 F.3d 1246 (11th Cir. 2009) ........................................... 17

*Fla. Med. Ass'n v. Dep't of Health, Ed., & Welfare*,
  No. 3:78-cv-00178, 2011 U.S. Dist. LEXIS 111180
  (M.D. Fla. May 18, 2011)................................................... 24

*Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*,
  647 F.3d 1296 (11th Cir. 2011) ..................................... 17, 18

*Freeman v. Quicken Loans, Inc.*,
  132 S. Ct. 2034 (2012)............................. 11, 14, 18, 23, 32

*Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Parish*,
  641 F. Supp. 2d 563 (E.D. La. 2009)................................... 24

*Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Parish*,
No. 2:06-cv-07185 (E.D. La. Jan. 15, 2009) (ECF No. 149) ............................24

*Haddock v. Nationwide Fin. Servs., Inc.*,
262 F.R.D. 97 (D. Conn. 2009) ........................................................................41

*Hollywood Cmty. Synagogue, Inc. v. City of Hollywood*,
254 F. App'x 769 (11th Cir. 2007).............................................24, 28, 29, 30, 32

*King v. Allied Vision, Ltd.*,
65 F.3d 1051 (2d Cir. 1995) .............................................................................22

*Korioth v. Brisco*,
523 F.2d 1271 (5th Cir. 1975) ...................................................................16, 44

*Lindsey v. Fayette Cnty. Bd. of Comm'rs*,
542 F. App'x 747 (11th Cir. 2013) .........................................................19, 20, 37

*Little v. T-Mobile USA, Inc.*,
691 F.3d 1302 (11th Cir. 2012) ........................................................................34

*Lucas v. W.W. Grainger, Inc.*,
257 F.3d 1249 (11th Cir. 2001) ..................................................................14, 36

*Mann v. Palmer*,
713 F.3d 1306 (11th Cir. 2013) ........................................................................13

*McDonald v. E.J. Lavino Co.*,
430 F.2d 1065 (5th Cir. 1970) ...................................................................34, 35

*Mitchell v. McCorstin*,
728 F.2d 1422 (11th Cir. 1984) ..................................................................38, 42

*Moten v. Bricklayers, Masons & Plasterers, Int'l Union of Am.*,
543 F.2d 224 (D.C. Cir. 1976)...........................................................................31

*NAACP v. New York*,
413 U.S. 345, 93 S. Ct. 2591 (1973)............................................................24, 43

*Natural Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*,
578 F.2d 1341 (10th Cir. 1978) ........................................................................41

*Nunley v. Pioneer Pleasant Vale Sch. Dist. No. 56*,
149 F. Supp. 2d 1283 (W.D. Okla. 2001)............................................................40

*Purcell v. BankAtl. Fin. Corp.*,
85 F.3d 1508 (11th Cir. 1996) ........................... 13, 14, 36, 37, 39, 41

*Pure Country, Inc. v. Sigma Chi Fraternity*,
   312 F.3d 952 (8th Cir. 2002) ....................................................19, 20

*Reed v. Beto*,
   343 F.2d 723 (5th Cir. 1965) ............................................................36

\*Reeves v. Wilkes*,
   754 F.2d 965 (11th Cir. 1985) ....................................................27, 29

\*Reynolds v. Butts*,
   312 F.3d 1247 (11th Cir. 2002) ..................................................19, 20

*Reynolds v. Roberts*,
   202 F.3d 1303 (11th Cir. 2000) ..................................................21, 22

*Rich v. Sec'y, Fla. Dep't of Corr.*,
   716 F.3d 525 (11th Cir. 2013) ............................................................8

*Ross v. Marshall*,
   426 F.3d 745 (5th Cir. 2005) ............................................................24

*Rothenberg v. Sec. Mgmt. Co.*,
   667 F.2d 958 (11th Cir. 1982) ............................................................9

*SEC v. Prudential Sec. Inc.*,
   136 F.3d 153 (D.C. Cir. 1998) ..........................................................20

*Shatteen v. JP Morgan Chase Bank, N.A.*,
   519 F. App'x 320 (5th Cir. 2013) ......................................................19

\*Sierra Club v. Meiburg*,
   296 F.3d 1021 (11th Cir. 2002) ..........................................21, 22, 23

*Stallworth v. Monsanto Co.*,
   558 F.2d 257 (5th Cir. 1977) ............................................................40

*Terrebonne v. Blackburn*,
   646 F.2d 997 (5th Cir. June 1, 1981) ..................................................8

*Triax Co. v. TRW Inc.*,
   724 F.2d 1224 (6th Cir. 1984) ..........................................................42

*Tweedle v. State Farm Fire & Casualty Co.*,
   527 F.3d 664 (8th Cir. 2008) ............................................................24

*United Nuclear Corp. v. Cranford Ins. Co.*,
   905 F.2d 1424 (10th Cir. 1990) ........................................................24

*United States by Bell ex rel. Marshall v. Allegheny-Ludlum Indus., Inc.,*
    553 F.2d 451 (5th Cir. 1977) ..........................................................23, 28, 30, 35

*United States v. Armour & Co.,*
    402 U.S. 673, 91 S. Ct. 1752 (1971)...............................................................5, 22

*United States v. FMC Corp.,*
    531 F.3d 813 (9th Cir. 2008) ...............................................................................20

*United States v. Jefferson Cnty.,*
    720 F.2d 1511 (11th Cir. 1983) ........................ 13, 14, 25, 28, 29, 31, 32, 33, 34

*United States v. Marion Cnty. Sch. Dist.,*
    590 F.2d 146 (5th Cir. 1979) ...............................................................................29

*United States v. Perry Cnty. Bd. of Ed.,*
    567 F.2d 277 (5th Cir. 1978) ...............................................................................38

*United States v. U.S. Steel Corp.,*
    548 F.2d 1232 (5th Cir. 1977) .........................................................23, 27, 28, 30

*Worlds v. Dep't of Health & Rehab. Servs.,*
    929 F.2d 591 (11th Cir. 1991) ........................................................14, 35, 43, 44

## Statutes and Rules

12 U.S.C. §§ 2601-2610, 2614-2617 ....................................................................2, 4

12 U.S.C. § 5563 ...................................................................................................33

12 U.S.C. § 5564 .....................................................................................................4

12 C.F.R. § 1081.406 .............................................................................................33

FED. R. APP. P. 32 ..................................................................................................46

FED. R. CIV. P. 24 ...................................................... 25, 34, 35, 36, 38, 39, 43, 44

FED. R. CIV. P. 71 ..................................................................................................20

## Other Authorities

Joe Adler, *Lenders Likely Next Target in CFPB Kickback Probe,*
    AMERICAN BANKER, Apr. 5, 2013 .........................................................................8

7C Charles Alan Wright, *et al.,* FEDERAL PRACTICE & PROCEDURE
    § 1913 (2d ed. 1986)............................................................................................43

## <u>STATEMENT OF THE ISSUES</u>

1.     Whether Appellants' motion to intervene was properly denied because intervention would be futile where (i) Appellants lack standing under Article III to intervene in a closed case so they may "interpret and enforce" a consent order to which they are not parties; and (ii) the district court lacks the authority to "interpret and enforce" the consent order by reference to extrinsic legal authority as sought by Appellants.

2.     Whether, even if intervention were not futile (Issue No. 1), the district court properly exercised its discretion in holding Appellants' motion to intervene untimely where (i) Appellants had notice of the consent order and knew or should have known of their alleged interest therein at the time of its entry but waited almost ten months before petitioning for leave to intervene; (ii) Appellees, who reached the consent order after extensive negotiation and have performed thereunder for more than a year, would be substantially prejudiced by Appellants' delayed intervention; (iii) Appellants are seeking the same relief in an alternative forum and thus would not be prejudiced if intervention is denied; and (iv) no unusual circumstances exist.

3.     Whether, even if Appellants' motion to intervene were timely (Issue No. 2), the district court nonetheless correctly concluded that Appellants were not entitled to intervene as of right to reopen a closed case where Appellants have an

1

adequate alternative forum to pursue—and where they are in fact pursuing—the same relief they seek through intervention, such that disposition of this action will not impede or impair any legally protectable interest they claim to have in the subject matter of the district court case; and where in any case Appellants presently have no such legally protectable interest, and any interest they had before entry of the consent order was adequately represented by United Guaranty.

4.      Whether, even if Appellants' motion to intervene were timely (Issue No. 2), the district court nonetheless properly exercised its substantial discretion in denying permissive intervention where Appellants have an adequate alternative forum to pursue their requested relief and intervention below would be highly prejudicial to Appellees.

## STATEMENT OF THE CASE

### A.    Nature Of The Case

This appeal arises from Appellants' attempt to upset a long-settled Final Consent Judgment and Order between United Guaranty and the CFPB, entered by the district court on April 8, 2013 (the "Consent Order"), so they may seek an advisory opinion from the district court "interpreting" the impact of the Consent Order on their potential liability for alleged violations of Section 8 of the Real Estate Settlement Practices Act, 12 U.S.C. §§ 2601-2610, 2614-2617 ("RESPA"), and then use that interpretation to defend against claims being pursued against

them by the CFPB in a separate administrative proceeding (the "Administrative Proceeding").

Appellants have had notice of the Consent Order since it was entered (*see* Doc. 27 at 2 & n.2) and notice that the CFPB might commence the Administrative Proceeding since as early as 2012 (Doc. 30 at 6:10-17).  Nevertheless, Appellants waited nearly ten months after the Consent Order was entered (Doc. 5), and more than three months after the district court case was closed (Doc. 6), until they moved to reopen the case and intervene so they could ask the district court to "interpret[] and enforc[e]" the Consent Order (Doc. 7 at 9).

Appellants asserted in their motion to intervene that the Consent Order should be "interpreted" in light of a Supreme Court decision construing RESPA in a manner that would permit not only United Guaranty's ceding of insurance premiums to Appellants as expressly authorized by the Consent Order, but also Appellants' receipt of such premiums from United Guaranty—which is among the conduct the CFPB is challenging in the pending Administrative Proceeding.  Doc. 7 at 4.  Appellants sought intervention so the district court could order "the CFPB to abide by the Consent Order, thus interpreted."  Doc. 7-1 at 9.

Following briefing (Docs. 7, 18, 22, 27) and a hearing (Doc. 30), the district court denied intervention, both as a matter of right and as a matter of discretion (*id.* at 35:7-8).  Noting that "[i]t is an extraordinary remedy in the Eleventh Circuit for

3

a non party to intervene and open up a case" (*id.* at 33:21-23), the district court held that Appellants' request was untimely (*id.* at 33:19-34:7) and that the issues they raise are more appropriately litigated in the Administrative Proceeding (*id.* at 34:17-18; *see also id.* at 34:23-35:2).

### B.    Procedural History

The Consent Order at the heart of this action resolved a complaint (the "Complaint") filed by the CFPB against United Guaranty in the Southern District of Florida[1] on April 4, 2013 (Doc. 1), alleging violations of RESPA in conjunction with United Guaranty's participation as a mortgage insurer in captive reinsurance arrangements (*id.* ¶¶ 21-33).

On the same day the Complaint was filed, the CFPB also filed an Unopposed Motion for Entry of the Proposed Final Consent Judgment and Order (Doc. 4), attaching the proposed Consent Order, as executed by the CFPB and United Guaranty (Doc. 4-1).  The district court signed the Consent Order on April 5, 2013 (*see* Doc. 5 at 13), and it was entered by the Clerk on April 8, 2013 (*see generally id.*).  On August 15, 2013, upon a *sua sponte* review of the record, the district court ordered the case closed.  Doc. 6.

---

[1]    Venue was alleged pursuant to, *inter alia*, 12 U.S.C. § 2614, which provides for jurisdiction in "the district in which the property involved is located, or where the violation is alleged to have occurred," and 12 U.S.C. § 5564(f), which grants the CFPB authority to bring a civil action "under this title . . . in a district in which the defendant is located or resides or is doing business."  Doc. 1 ¶ 5.

On January 31, 2014, Appellants initiated the instant dispute by filing a

Motion to Administratively Reopen Case and Intervene for the Limited Purpose of

Interpreting and Enforcing the Consent Order ("Motion to Intervene") (Doc. 7),

together with a (Proposed) Complaint in Intervention (Doc. 7-1).  The district court

denied intervention on the record of the March 10, 2014 hearing on the Motion to

Intervene.  Doc. 30 at 35:7-8.  The same day, the Clerk entered on the docket a

paperless minute entry reflecting that the district court had denied the Motion to

Intervene "for the reasons stated at the hearing."  Doc. 28.  This appeal followed.

**C.    Statement Of Facts**

**1.    Appellees' Negotiation Of And Performance Under The Consent Order**

The Consent Order was reached by Appellees after extensive and hard-

fought negotiation.[2]  It is a "settlement" on its face, the product of compromise.

Doc. 5 at 2.  Pursuant to the Consent Order, the CFPB "release[d] and discharge[d]

---

[2]    As the Supreme Court has long recognized,

> [c]onsent decrees are entered into by parties to a case
> after careful negotiation has produced agreement on their
> precise terms.  The parties waive their right to litigate the
> issues involved in the case and thus save themselves the
> time, expense, and inevitable risk of litigation.  Naturally,
> the agreement reached normally embodies a compromise;
> in exchange for the saving of cost and elimination of risk,
> the parties each give up something they might have won
> had they proceeded with the litigation.

*United States v. Armour & Co.*, 402 U.S. 673, 681-82, 91 S. Ct. 1752, 1757 (1971).

United Guaranty . . . from all potential liability that might have been asserted by the CFPB based on the captive mortgage reinsurance practices described in the Complaint, to the extent such practices occurred prior to the entry" of the Consent Order.  Doc. 5 at 12.  In exchange, United Guaranty was ordered to pay a civil monetary penalty of $4.5 million (*id.* at 6) and subjected to substantial notification, reporting, record-keeping, and distribution requirements (*id.* at 7-11).  United Guaranty was also enjoined for ten years from participating in any captive reinsurance arrangement (*id.* at 4), *except* that the Consent Order would "not be construed . . . as preventing the ceding of premiums on policies originated as of, and subject to [captive reinsurance] [a]rrangements already in existence as of, the date of [its] entry" (*id.* at 5).

Under those terms, Appellees "stipulate[d] and agree[d]" that the Consent Order would "settle and resolve all matters of dispute arising from the conduct of [United Guaranty] alleged in the Complaint to the date of entry of the Order."  *Id.* at 2.  "The parties intend[ed]," however, that the Consent Order "a) not be an adjudication of any fact or legal conclusion, and b) not have any preclusive effect in any other action or proceeding," and thus agreed that it did "not settle or resolve any matters not alleged in the Complaint."  *Id.*  The district court "retain[ed] jurisdiction of this matter for purposes of construction, modification, and enforcement" of the Consent Order.  *Id.* at 13.

6

Because "[n]othing in [the Consent] Order shall be construed . . . as preventing the ceding of premiums on policies originated as of, and subject to Arrangements already in existence as of" April 8, 2013, the date of the Consent Order's entry (Doc. 5 at 5), United Guaranty continued after entry of the Consent Order to cede payments to reinsurers as required under its existing captive reinsurance arrangements (*see*, *e.g.*, Doc. 30 at 5:5-11).  Among United Guaranty's captive reinsurance agreements in existence on April 8, 2013 was an agreement with Appellant Atrium Insurance Corporation ("Atrium") (subsequently assumed by Appellant Atrium Reinsurance Corporation ("Atrium Re")).  Doc. 7-1 ¶¶ 11, 19.[3]  After the Consent Order's entry, United Guaranty made two more payments to Appellants before United Guaranty and Atrium Re, "by mutual decision and pursuant to the terms of their agreement, . . . commuted [the] agreement," effective May 31, 2013.  *Id.* ¶ 27.

The CFPB, for its part, has ceased its prosecution of United Guaranty for the violations alleged in the Complaint, as required under the Consent Order.  *See* Doc. 5 at 12.  Thus, it is undisputed that, to date, both parties to the Consent Order have

---

[3]  Atrium and Atrium Re, as well as Appellant PHH Mortgage Corporation, are wholly-owned subsidiaries of Appellant PHH Corporation.  Doc. 7-1 ¶¶ 8, 10, 11.  Appellant PHH Home Loans, LLC is a joint venture of PHH Corporation and a non-party to this appeal.  *Id.* ¶ 9.

performed thereunder and in reliance thereon, and neither seeks any relief from the district court with respect thereto.

### 2.    The CFPB's Initiation Of The Administrative Proceeding

From as early as 2012, Appellants were aware that the CFPB was investigating them, too, for violations of RESPA.  Doc. 30 at 6:10-17.  On April 5, 2013, three days before the Consent Order was entered, *American Banker*—in an article cited by Appellants before the district court—reported on the Consent Order, quoting the CFPB's Director of Enforcement:  "'In every kickback situation, there is somebody paying and somebody receiving.  It takes two to tango.  Today we're dealing with those *paying* the kickbacks.  But we have more work to do on this matter.'"  Doc. 27 at 2 (quoting Joe Adler, *Lenders Likely Next Target in CFPB Kickback Probe*, AMERICAN BANKER, Apr. 5, 2013, at 1) (emphasis added).

On January 29, 2014, the CFPB initiated the Administrative Proceeding against Appellants.  Doc. 7-1 ¶ 40; *see* Notice of Charges Seeking Disgorgement, Other Equitable Relief, and Civil Money Penalty, *In re PHH Corp.*, CFPB Admin. Proc. 2014-CFPB-0002, Dkt. 1 (Jan. 29, 2014).[4]  On January 31, 2014, Appellants

---

[4]  The Court may take judicial notice of the public docket in the Administrative Proceeding and the documents therein (as did the district court (Doc 30 at 22:16-17)) "for the purpose of determining what statements the documents contain."  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999); *see Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 533 (11th Cir. 2013) (quoting *Terrebonne v. Blackburn*, 646 F.2d 997, 1000 n.4 (5th Cir. June 1, 1981)) ("'Absent some reason for mistrust, courts have not hesitated to take judicial notice

moved to dismiss the charges, or sought, in the alternative, summary disposition. *See* Brief in Support of the Motion of PHH Corp., *et al.*, to Dismiss the Notice of Charges or, in the Alternative, for Summary Disposition, *In re PHH Corp.*, CFPB Admin. Proc. 2014-CFPB-0002, Dkt. 18 (Jan. 31, 2014). Appellants argued that because the Consent Order (as well as separate consent orders entered between the CFPB and three other mortgage insurers, respectively[5]) "explicitly permit [ceding] payments under existing agreements to continue, and release the [mortgage insurers] from liability for those payments under the existing agreements," judicial estoppel barred the CFPB from pursuing Appellants. *Id.* at 23.

On March 13, 2014 (three days after the district court denied Appellants' motion to intervene[6]), the administrative law judge ("ALJ") rejected Appellants' contention that judicial estoppel barred the charges as a matter of law and denied Appellants' motion. *See* Order Denying Motion to Dismiss the Notice of Charges or, in the Alternative, for Summary Disposition at 13-15, *In re PHH Corp.*, CFPB Admin. Proc. 2014-CFPB-0002, Dkt. 67 (Mar. 13, 2014).

_____

of agency records and reports.'"). The docket can be viewed at http://www.consumerfinance.gov/administrativeadjudication/2014-cfpb-0002/.

[5] Although discussed extensively in Appellants' Brief (at 3-5), those consent orders are not at issue in this appeal, and Appellants have not attempted to intervene in those actions. Doc. 30 at 4:14-20.

[6] The Court is further "free to take judicial notice of subsequent developments in cases that are a matter of public record and are relevant to the appeal." *Rothenberg v. Sec. Mgmt. Co.*, 667 F.2d 958, 961 (11th Cir. 1982).

The hearing in the Administrative Proceeding commenced on March 24, 2014.  *See* Order Sealing Filings and Directing Public Release, *In re PHH Corp.*, CFPB Admin. Proc. 2014-CFPB-0002, Dkt. 86 (Mar. 25, 2014).  On May 12, 2014, Appellants renewed their motion to dismiss.  In their supporting brief, they argued again that the CFPB "is judicially estopped from asserting that the ceding payments violate RESPA" based on the Consent Order (as well as the three other consent orders discussed *supra*), and that they "are entitled to dismissal of any claims based on the receipt of ceding payments or, in the alternative, at a minimum for conduct occurring after the entry of" those orders.  Brief in Support of Respondents' Renewed Motion to Dismiss or, in the Alternative, to Narrow the Notice of Charges at 54, *In re PHH Corp.*, CFPB Admin. Proc. 2014-CFPB-0002, Dkt. 101-A (May 12, 2014).  After considering purported "newly available evidence"—namely, the transcript of the March 10, 2014 hearing before the district court below—the ALJ concluded again that "a genuine issue of material fact as to judicial estoppel" precluded summary judgment on the issue.  Order on Dispositive Motions at 9, *In re PHH Corp.*, CFPB Admin. Proc. 2014-CFPB-0002, Dkt. 152 (May 22, 2014).

The hearing concluded, after a total of nine hearing days, on June 4, 2014. *See* Order Regarding Closing of Hearing Record, *In re PHH Corp.*, CFPB Admin. Proc. 2014-CFPB-0002, Dkt. 168 (July 7, 2014).

### 3.    Appellants' Motion To Intervene

In their January 31, 2014 Motion to Intervene, Appellants argued, relying on the U.S. Supreme Court's decision in *Freeman v. Quicken Loans, Inc.*, 132 S. Ct. 2034 (2012), that because United Guaranty was expressly authorized in the Consent Order to *make* certain ceding payments to them, Appellants' *receipt* of those payments must also be lawful.  Doc. 7 at 2-3, 5.  Appellants therefore sought to intervene in the closed district court case so they could obtain a declaration that Appellants' receipt of ceding payments from United Guaranty did not violate RESPA as a matter of law.  *Id.* at 5; *see* Doc. 7-1 at 9 ¶¶ A, B.  Appellants also requested that the district court "enforc[e]" the Consent Order, as interpreted in light of *Freeman*, against the CFPB.  Doc. 7 at 5; *see* Doc. 7-1 at 9 ¶ C.  They requested oral argument.  Doc. 8.

Both the CFPB and United Guaranty opposed Appellants' Motion to Intervene, as well as the request for oral argument.  *See* Doc. 18 at 1, 14; Doc. 22 at 1, 17.  As United Guaranty explained, Appellants lacked standing to intervene because they are not parties to the Consent Order and in any case they have an adequate remedy in the Administrative Proceeding, where they are actively litigating this very issue.  Doc. 18 at 3-5.  The CFPB argued, similarly, that Appellants' intervention would be futile and that the Consent Order on its face did not support the relief Appellants sought.  Doc. 22 at 3-10.  Both Appellees argued

11

that the Motion to Intervene was untimely because Appellants had waited more than nine months after the Consent Order's entry to seek to intervene (despite their awareness of the Consent Order during that entire time), and prejudice would inure to United Guaranty and the CFPB, but not to Appellants, if intervention were granted.  Doc. 18 at 5-10; Doc. 22 at 10-14.  Even assuming the Motion to Intervene were timely, Appellees argued that intervention should be denied because Appellants could not meet the remaining requirements for intervention as of right or for permissive intervention.  Doc. 18 at 10-14; Doc. 22 at 14-17.

The district court granted Appellants' request for oral argument (Doc. 26), and a hearing was held on March 10, 2014 (*see* Doc. 30).  At the hearing, the district judge noted that Appellants were asking her "to decree the payments did not violate RESPA, which is something that was never before me to begin with." *Id.* at 11:14-16.  The district court also pointed out, having taken judicial notice of the docket of the Administrative Proceeding, that "[i]t does seem the precise issues are being litigated before . . . the Administrative Law Judge," and concluded that, "for purposes of this proceeding, this case which existed for all of five days, I don't see where I can give you the remedy you seek."  *Id.* at 22:16-20, 22:22-24.

After extensive argument, the district court issued its final ruling from the bench:

> I agree with counsel for United [Guaranty] that the first
> question is the threshold question, and the dispositive

12

> question is timeliness.  It is an extraordinary remedy in
> the Eleventh Circuit for a non party to intervene and open
> up a case.
>
> In this instance, clearly from the parties'
> discussion, there has been a long period of debate and
> interaction and notice and exchange far before the April
> arrival of the parties and their consent decree, and for a
> long time after that.

*Id.* at 33:19-34:3.  Noting that Appellants "have a forum to litigate this, and you

are litigating this" (*id.* at 34:17-18), the district court held further that, "[a]s for

exercising discretion, the consent decree says what it says.  If there is an argument

to be made the Government through its agency had made a party admission that

relieves you from any liability, that argument can be made in the administrative

proceeding" (*id.* at 34:23-35:2).

### D.    Standard of Review

The threshold question of standing is reviewed *de novo*.  *Dillard v. Chilton*

*Cnty. Comm'n*, 495 F.3d 1324, 1330 (11th Cir. 2007) (per curiam).  The Court

likewise determines *de novo* whether granting the relief requested by Appellants

would be futile.  *See Mann v. Palmer*, 713 F.3d 1306, 1316 (11th Cir. 2013).

As for the merits, respecting both intervention as of right and permissive

intervention, "[t]he question of timeliness is largely committed to the district

court's discretion; therefore [the Court] review[s] the [district] court's action only

for an abuse of discretion."  *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1516

(11th Cir. 1983).  The Court otherwise "review[s] the district court's denial of

13

[Appellants'] motion to intervene as of right *de novo*." *Purcell v. BankAtl. Fin. Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996). "The district court's decision to refuse permissive intervention may be overturned on appeal only after a showing of a *clear* abuse of discretion." *Worlds v. Dep't of Health & Rehab. Servs.*, 929 F.2d 591, 595 (11th Cir. 1991) (emphasis added).

This Court may affirm "on any ground that finds support in the record." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001) (internal quotation marks omitted).

## SUMMARY OF THE ARGUMENT

This appeal should be dismissed[7] because the undisputed record establishes that the denial of intervention was wholly correct and a proper exercise of the district court's discretion. This is so for any of several independent reasons.

*First*, intervention was correctly denied because it would be futile. While Appellants seek to intervene to "interpret and enforce" the Consent Order, under the law of this Circuit they lack standing to enforce the Consent Order as non-parties thereto. Intervention also would be futile because the "interpretation" Appellants seek would require the district court to incorporate into the Consent Order extrinsic case law (*Freeman*, 132 S. Ct. 2034), which the district court lacks

---

[7]  *See Jefferson Cnty.*, 720 F.2d at 1515 ("[I]f we find the motion [to intervene] to have been properly denied, we must dismiss for lack of jurisdiction.").

14

the authority to do.  Each of these two grounds independently requires dismissal of this appeal.

*Second*, even if intervention would not be futile, the district court properly exercised its discretion in finding Appellants' Motion to Intervene untimely.  Each of the factors relevant to the issue weighs against a finding of timeliness: (i) Appellants waited nearly ten months to petition for leave to intervene after the Consent Order was entered, even though they were aware of its entry and the interest they claim to have in it during that entire time; (ii) Appellants' much-delayed attempt to reopen the case, at the risk that the Consent Order could be disrupted, would substantially prejudice Appellees, who agreed to the Consent Order after extended negotiation and have performed under it for more than a year in reliance on its terms; (iii) Appellees will not be prejudiced if intervention is denied because they have an adequate alternative forum in which to seek—and in fact are seeking—identical relief; and (iv) no unusual circumstances favor a finding of timeliness.

*Third*, even if the district court abused its discretion in finding intervention untimely (which it did not), intervention as of right was nonetheless correctly denied because Appellants cannot satisfy *any* of three remaining mandatory requirements for such intervention:  (i) Appellants make no attempt to show that any interest they may have in the Consent Order may be impaired or impeded if

15

they do not intervene—and indeed they cannot making that showing, as they are pursuing the same relief elsewhere; (ii) Appellants' alleged interest in how the Consent Order impacts a separate legal proceeding pending between them and the CFPB does not constitute the "direct, substantial, legally protectable interest" in *this* proceeding that this Court requires for intervention of right; and (iii) any interest Appellants actually had before the Consent Order's entry was adequately protected by United Guaranty, and there remain no "interests" at all at issue in this closed case for United Guaranty to protect.

*Fourth*, Appellants cannot show that the district court committed a clear abuse of discretion in denying permissive intervention, and they make little effort to do so, presumably because they "ha[ve] other adequate means of asserting [their] rights," such that "a charge of abuse of discretion . . . would appear to be almost untenable on its face." *Korioth v. Brisco*, 523 F.2d 1271, 1279 n.25 (5th Cir. 1975).[8]

Accordingly, the district court properly denied intervention, and this appeal should be dismissed.

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), this Court adopted as binding precedent all decisions the former Fifth Circuit handed down before the close of business on September 30, 1981.

## ARGUMENT

## I.    INTERVENTION WAS CORRECTLY DENIED BECAUSE IT WOULD BE FUTILE

As a threshold matter, this appeal should be dismissed because Appellants' intervention would be futile, for two reasons.  *First*, Appellants lack standing to enforce the Consent Order.  *Second*, the district court cannot grant the remedy Appellants seek.  Where "the granting of intervention would be futile," intervention must be denied.  *See Anderson v. City of Alpharetta*, 770 F.2d 1575, 1580 (11th Cir. 1985).

### A.    Appellants Lack Standing To Enforce The Consent Order

It is axiomatic that "[a]ny party . . . that seeks relief from a federal court must have standing to pursue its claims."  *Dillard*, 495 F.3d at 1330.  "The burden is on [Appellants], as the party seeking to invoke jurisdiction, to produce facts sufficient to support [their] standing."  *Fla. Family Policy Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir. 2009).

Where a consent decree has been entered and neither party to the decree seeks judicial relief at the time intervention is sought, the party seeking intervention cannot "piggyback on the standing . . . of the original parties," but instead must "independently fulfill the familiar requisites of injury-in-fact, causation, and redressability."  *Dillard*, 495 F.3d at 1330, 1337-39; *see also Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir.

17

2011) (citing *Diamond v. Charles*, 476 U.S. 54, 68, 106 S. Ct. 1697, 1706 (1986))

("Once the district court approves the consent decree . . . the original case or

controversy evaporates, and an intervenor appealing the decree must assert an

independent case or controversy in order to maintain standing."). "The district

court's perpetuation of its jurisdiction for purposes of enforcement of a consent

decree is insufficient, by itself, to justify piggybacking." *Dillard*, 495 F.3d at

1337.

    Here, no dispute remains between United Guaranty and the CFPB, and the

matter formerly pending between them has been finally resolved and closed by the

district court.[9] Appellants therefore must demonstrate independent standing. *See*

*id.* at 1337-39; *Fla. Wildlife Fed'n*, 647 F.3d at 1302. This they cannot do,

however, because they are not parties to the Consent Order.

    As the Supreme Court has stated, "a well-settled line of authority from this

Court establishes that a consent decree is not enforceable directly or in collateral

---

    [9] Appellants' attempt (Br. 18) to manufacture a dispute between United
Guaranty and the CFPB by pointing to their disagreement over the interpretation of
*Freeman* is a red herring, as United Guaranty and the CFPB's allegedly opposing
theoretical views do not create a case or controversy under Article III. *See Allen-*
*Bradley Local No. 1111 v. Wis. Emp't Relations Bd.*, 315 U.S. 740, 746, 62 S. Ct.
820, 824 (1942) ("We deal . . . not with theoretical disputes but with concrete and
specific issues raised by actual cases."); *Dillard*, 495 F.3d at 1338 ("The presence
of a disagreement, however sharp and acrimonious it may be, is insufficient by
itself to meet Art. III's requirements of a case or controversy . . . unless one party
is actually seeking judicial relief against another.") (citation omitted).

18

proceedings by those who are not parties to it even though they were intended to be benefited by it." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750, 95 S. Ct. 1917, 1932 (1975); *see also Reynolds v. Butts*, 312 F.3d 1247, 1249 (11th Cir. 2002) (per curiam) ("The appellants are not parties to the consent decree.  As non-parties, the appellants have no standing to enforce the consent decree."); *Lindsey v. Fayette Cnty. Bd. of Comm'rs*, 542 F. App'x 747, 749 (11th Cir. 2013) (per curiam) ("Intervenors were not parties to the lawsuit, and their motion to intervene was denied properly.  As a result, they lack standing to challenge the consent decree."); *see also*, *e.g.*, *Shatteen v. JP Morgan Chase Bank, N.A.*, 519 F. App'x 320, 321 (5th Cir. 2013) (per curiam) ("[Plaintiff] has no standing to enforce consent decrees to which she is not a party."); *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 958 (8th Cir. 2002) ("[S]trangers to a consent decree generally do not have standing to enforce a consent decree.").[10]

---

[10]    Appellants' argument below (Doc. 27 at 7) that *Blue Chip Stamps* applies only in the context of antitrust consent orders is not supported by precedent.  *See*, *e.g.*, *Butts*, 312 F.3d at 1248, 1250 (holding that, under *Blue Chip Stamps*, non-party appellants lacked standing to intervene to enforce consent decree entered in employment discrimination suit); *Lindsey*, 542 F. App'x at 748-49 (holding that non-party appellants lacked standing to intervene to enforce consent decree entered in redistricting action).

While some courts, relying on Federal Rule of Civil Procedure 71,[11] have recognized an exception to *Blue Chip Stamps* permitting enforcement by a limited category of *intended*, as opposed to *incidental*, third party beneficiaries of consent decrees,[12] this Court has adhered to the Supreme Court's bright line rule that consent decrees are enforceable only by the parties thereto. *See Butts*, 312 F.3d at 1250; *Lindsey*, 542 F. App'x at 749; *see also Aiken v. City of Memphis*, 37 F.3d 1155, 1168 (6th Cir. 1994) (holding that *Blue Chip Stamps* precludes enforcement by *all* third party beneficiaries, *i.e.*, "even *intended* third-party beneficiaries").[13]

---

[11]   Rule 71 provides that "[w]hen an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." FED. R. CIV. P. 71.  Rule 71 does not apply here, however, because the Consent Order did not "grant[] relief" to Appellants and is not susceptible to being "enforced against" Appellants.

[12]   *See*, *e.g.*, *United States v. FMC Corp.*, 531 F.3d 813, 820 (9th Cir. 2008) (holding that, although "intended third-party beneficiaries" may enforce consent decrees, "incidental third-party beneficiaries may not").

[13]   Even if this Circuit recognized such an exception (which it does not), it would be of no benefit to Appellants because there is no indication in the plain language of the Consent Order or otherwise that Appellees "'intended that [Appellants] should receive a benefit *which might be enforced in the courts*.'" *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 159 (D.C. Cir. 1998) (quoting *Corrugated Paper Prods., Inc. v. Longview Fibre Co.*, 868 F.2d 908, 911 (7th Cir. 1989)) (emphasis in *Prudential*); *see also Pure Country*, 312 F.3d at 958 ("In order for a third party to be able to enforce a consent decree, the third party must, at a minimum, show that the parties to the consent decree not only intended to confer a benefit upon that third party, but also intended to give that third party a legally binding and enforceable right to that benefit.").  At most, Appellants are *incidental* third party beneficiaries with no right of enforcement under *any* enunciated standard.

20

Accordingly, because Appellants are not parties to the Consent Order, they lack standing to enforce it. The district court's decision to deny intervention should therefore be upheld on the grounds that intervention would be futile. *See Anderson*, 770 F.2d at 1580 (dismissing appeal of motion to intervene as futile where intervenor-appellants lacked standing).

## B. The District Court Lacks Authority To Interpret The Consent Order In The Manner Appellants Request

While Appellants purport (Br. 1[14]) to seek an "interpretation" of the Consent Order and to have it enforced accordingly, what they in fact desire is for the district court to rewrite the Consent Order by reference to extrinsic legal authority. *See* Doc. 7 at 2-3, 5. As the district court correctly recognized (Doc. 30 at 22:23-24), it lacked the authority to interpret the Consent Order in that manner, such that intervention, even if otherwise appropriate, would be futile.

"Long standing precedent evinces a strong public policy against judicial rewriting of consent decrees." *Reynolds v. Roberts*, 202 F.3d 1303, 1312 (11th Cir. 2000). As the Supreme Court has instructed, "any command of a consent decree or order must be found within its four corners, and not by reference to any purposes of the parties or of the underlying statutes." *Sierra Club v. Meiburg*, 296 F.3d 1021, 1031 (11th Cir. 2002) (internal quotation marks omitted). Under these

---

[14]    "Br." refers to the Brief of Appellants.

strictures, "'[a] district court may not impose obligations on a party that are not unambiguously mandated by the decree itself.'" *Roberts*, 202 F.3d at 1312 (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)).

*Sierra Club v. Meiburg* is instructive. There, the district court concluded that a consent decree that "clearly and explicitly place[d] a number of duties on EPA," but did not include any requirement that the EPA establish implementation plans to facilitate those duties, nonetheless required the EPA to establish implementation plans because (i) unless the consent decree also required implementation plans, there was no guarantee that the EPA would ever carry out its stated duties, and (ii) reading that requirement into the consent decree "would further the goal of the Clean Water Act[.]" 296 F.3d at 1030-31. Stating "that this is not a close call," *id.* at 1032, this Court rejected the district court's conclusion, as "the Act [could] not be a source of authority for changing the Act's allocation of responsibilities" as set forth in the consent decree, *id.* at 1031; *see also United States v. Armour & Co.*, 402 U.S. 673, 683, 91 S. Ct. 1752, 1758 (1971) (holding that, "although the relief the Government seeks may be in keeping with the purposes of the antitrust laws, we do not believe that it is supported by the terms of the consent decree under which it is sought").

In this case, Appellants requested to intervene so the district court could "interpret" the Consent Order by reading into it the Supreme Court's decision in

22

*Freeman. See* Br. 5-8; Doc. 7 at 5. But that is precisely what *Sierra Club*

prohibits. The Supreme Court's interpretation of RESPA is outside the four

corners of the Consent Order, and therefore can play no role in its interpretation.

The district court thus has no authority to interpret the Consent Order as Appellants

have requested, such that intervention would be futile for this reason too.

## II.   THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION IN REJECTING APPELLANTS' MOTION TO INTERVENE AS UNTIMELY

"Post-judgment intervention is rare." *United States by Bell ex rel. Marshall*

*v. Allegheny-Ludlum Indus., Inc.*, 553 F.2d 451, 453 (5th Cir. 1977) (per curiam).

Indeed, as "[i]nterventions after judgment have a strong tendency to prejudice

existing parties to the litigation or to interfere substantially with the orderly process

of the court," they "are ordinarily looked upon with a jaundiced eye." *United*

*States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977) (internal quotation

marks omitted). The district court properly heeded this well-established principle

in exercising its discretion to deny Appellants' Motion to Intervene as untimely.[15]

---

[15]   Appellants' citations (Br. 16 n. 12) to authorities purporting to show that "courts routinely permit intervention after judgment for the purpose of enforcing orders over which a court has retained jurisdiction" are misleading and distinguishable and do not show that the district court abused its discretion here. In *Alley v. U.S. Department of Health & Human Services*, 590 F.3d 1195 (11th Cir. 2009), the lone case from this Court Appellants cite, intervention was not even at issue on appeal. Moreover, unlike here, the district court's decision involved a "close" call in which intervention was sought only "one day after [the] court entered an order on both parties' motion for summary judgment," and only one week after

"The Supreme Court has held that the timeliness of a motion to intervene is

a threshold factor that must be satisfied before the other factors should be

considered." *Hollywood Cmty. Synagogue, Inc. v. City of Hollywood*, 254 F.

App'x 769, 771 (11th Cir. 2007) (per curiam) (citing *NAACP v. New York*, 413

U.S. 345, 365, 93 S. Ct. 2591, 2603 (1973)).  Four factors govern the assessment of

whether a motion to intervene is timely:

---

intervenors learned of the suit, such that intervention "afford[ed] [intervenors] an opportunity to participate in any post-judgment motions as well as any appeals process." *See Alley*, No. 1:07-cv-00096, slip op. at 1, 4, 6, 10 (N.D. Ala. Nov. 19, 2008) (ECF No. 59).  Appellants' citation to *Greater New Orleans Fair Housing Action Center v. St. Bernard Parish*, 641 F. Supp. 2d 563 (E.D. La. 2009), is likewise misleading, as that decision also did not involve the question of whether intervention should be granted; and the relevant decision of the magistrate judge in that case reflects that, at the time intervention was sought, "the issue which [the intervenor] [sought] to press [was] also being pursued by [plaintiffs]."  *Greater New Orleans*, No. 2:06-cv-07185, slip op. at 5 (E.D. La. Jan. 15, 2009) (ECF No. 149). The remaining district court and out-of-Circuit authorities Appellants cite are similarly inapposite:  in *Tweedle v. State Farm Fire & Casualty Co.*, 527 F.3d 664, 671-72 (8th Cir. 2008), and *Cincinnati, I. & W.R. Co. v. Indianapolis Union Ry. Co.*, 279 F. 356, 362 (6th Cir. 1922), unresolved issues remained as between the original parties; in *Elliott Industries v. BP American Production Co.*, 407 F.3d 1091, 1103-04 (10th Cir. 2005), *Ross v. Marshall*, 426 F.3d 745, 755 (5th Cir. 2005), and *Acree v. Republic of Iraq*, 370 F.3d 41, 50 (D.C. Cir. 2004), intervention was permitted solely for purposes of appeal, where the intervenor either sought to challenge subject matter jurisdiction or was directly liable for the adverse judgment; and in *United Nuclear Corp. v. Cranford Insurance Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990), and *Florida Medical Association v. Department of Health, Education & Welfare*, No. 3:78-cv-00178, 2011 U.S. Dist. LEXIS 111180, at *13-17 (M.D. Fla. May 18, 2011), the proposed intervenors sought to *vacate* (rather than enforce) the relief the court had previously imposed because it was no longer necessary and burdensome on the intervenors.  Additionally, in *Florida Medical Association*, the motion to intervene was unopposed.  *See* 2011 U.S. Dist. LEXIS 111180, at *12.  None of those circumstances is present here.

> (1) the length of time during which the would-be
> intervenor knew or reasonably should have known of his
> interest in the case before he petitioned for leave to
> intervene; (2) the extent of prejudice to the existing
> parties as a result of the would-be intervenor's failure to
> apply as soon as he knew or reasonably should have
> known of his interest; (3) the extent of prejudice to the
> would-be intervenor if his petition is denied; and (4) the
> existence of unusual circumstances militating either for
> or against a determination that the application is timely.

*Jefferson Cnty.*, 720 F.2d at 1516.  "This analysis applies whether intervention of

right or permissive intervention under Federal Rule of Civil Procedure 24 is

claimed."  *Id.*

Appellants do not squarely address these four factors.  This is undoubtedly

because, as discussed below, they cannot satisfy *any* of them.

### A.    Appellants Knew Or Reasonably Should Have Known Of Their Alleged Interest In The Case Nearly Ten Months Before They Petitioned For Leave To Intervene

In determining whether the district court properly exercised its discretion in

finding Appellants' Motion to Intervene untimely, the Court first looks to "the

length of time during which the would-be intervenor knew or reasonably should

have known of his interest in the case before he petitioned for leave to intervene[.]"

*Jefferson Cnty.*, 720 F.2d at 1516.  Appellants claim to "have an undeniable

interest in the legality under RESPA of Atrium Re's agreement with [United

Guaranty], as well as in having the District Court enforce the Consent Order

permitting certain payments made to Atrium Re under that Agreement."  Br. 23-24.

25

While they argue that they did not know of their interest until the CFPB filed its

Notice of Charges against them on January 29, 2014 (Br. 13-14), it is undisputed

that they were aware when the Consent Order was entered that:  (i) they were

under investigation by the CFPB for violations of RESPA (Doc. 30 at 6:10-17);

(ii) the CFPB had previously taken the position (as in its Complaint against United

Guaranty) that United Guaranty's ceding of payments to lenders (such a

Appellants) violated RESPA (*see* Doc. 1 ¶ 16); and (iii) the CFPB had announced

in the media (as quoted in multiple sources) that, following entry of the Consent

Order, they would seek prosecution of those, such as Appellants, "receiving" the

ceding payments (*see* Doc. 27 at 2 & n.2).  Appellants' alleged interest "in the

legality under RESPA of Atrium Re's agreement with [United Guaranty]," as well

as their asserted interest in assuring that the CFPB would "abide by" the Consent

Order (presumably by declining to prosecute Appellants for violations of RESPA

arising from ceding payments made to them by United Guaranty), were thus

present and known (or reasonably should have been known) to Appellants at the

time the Consent Order was entered in April 2013.

Conceding their long-held knowledge of the Consent Order and of their

purported interest in it, Appellants argue (Br. 13-14) that intervention would have

been "premature" at any point until the CFPB filed its Notice of Charges on

January 29, 2014 because, until then, they reasonably relied on the Consent Order

to believe they would be protected by it.  As a matter of law, Appellants' mistaken belief that the CFPB would not assert similar RESPA claims against them as it did against United Guaranty—in reliance on a consent order to which they are not parties; which they admit (Br. 2) only "appears" to apply to them; and which the CFPB clearly indicated in media reports at the time it did not view as precluding prosecution of Appellants (*see* Doc. 27 at 2 & n.2)—does not excuse Appellants' ten-month delay in moving to intervene.  *See U.S. Steel Corp.*, 548 F.2d at 1235-36 (rejecting argument that delayed intervention was justified where intervenor "mistakenly believed that EPA would again extend the compliance deadline" under the terms of a consent decree but "the consent decree [could] not be read to *promise* further extensions") (emphasis added); *see also Campbell v. Hall-Mark Elecs. Corp.*, 808 F.2d 775, 777 (11th Cir. 1987) (holding that intervenor "could not . . . bury his head in the sand and later claim that he was unaware of the potential adverse effect such a settlement might have on his own interests"); *Reeves v. Wilkes*, 754 F.2d 965, 969-71 (11th Cir. 1985) (finding delay unjustified where "numerous articles appeared in the local newspaper discussing the decree's intent" and "the intervenors recalled some general discussion" on the topic).

Nor is Appellants' delay justified by any purported assumption that United Guaranty would protect Appellants' interests (although, as discussed *infra*, Point III, United Guaranty did indeed protect any actual interests Appellants had).  *See*

*Jefferson Cnty.*, 720 F.2d at 1517 (holding that intervenor-appellants, "having made an apparently ill-advised decision to rely on others to advance their interests, knowing that they could be adversely affected, cannot now be heard to complain"); *Hollywood Cmty. Synagogue*, 254 F. App'x at 770-71 (affirming finding of untimeliness where appellants moved to intervene one day before district court approved consent decree, where appellants should have been aware that their interests might not be protected for years prior).

If Appellants have the purported strong and direct interests under the Consent Order they claim to have, then they knew or reasonably should have known of those interests no later than April 2013, almost ten months before they filed their Motion to Intervene. The first of the four untimeliness factors therefore weighs heavily against Appellants. *See*, *e.g.*, *United States by Bell*, 553 F.2d at 453 (affirming finding of untimeliness where "[t]he applicants knew of the consent agreement three days after the suit was filed" but "offered no compelling reason for waiting until seven and a half months after the judgment and six months after implementation of the decrees to file their motion"); *U.S. Steel Corp.*, 548 F.2d at 1235 (affirming finding of untimeliness where appellant "was aware of the proposed consent decree" but waited almost a year before moving to intervene).

**B.    Appellees Would Be Substantially Prejudiced By Appellants'
Untimely Intervention**

"Under the second factor of the timeliness test, the district court was
required to consider how much prejudice would result [to the existing parties] from
the would-be intervenor's failure to request intervention as soon as he knew or
should have known of his interest in the case." *Jefferson Cnty.*, 720 F.2d at 1517
(alteration in original) (internal quotation marks omitted). "In weighing possible
prejudice to the existing parties the court must consider what has happened as a
result of the movant's failure to apply for intervention" at that time. *United States
v. Marion Cnty. Sch. Dist.*, 590 F.2d 146, 148-49 (5th Cir. 1979).

This Court has repeatedly found that intervention would substantially
prejudice the existing parties where, as here, they engaged in extensive settlement
negotiations culminating in a consent decree or settlement. *See*, *e.g.*, *Jefferson
Cnty.*, 720 F.2d at 1518 (holding that intervention "after two trials and a long
complex negotiation process had taken place . . . would plainly have prejudiced the
existing parties, since it would have nullified these negotiations"); *Campbell*, 808
F.2d at 779 (holding that intervention just before approval of settlement "would
only jeopardize a legitimately negotiated, accepted, and approved settlement");
*Reeves*, 754 F.2d at 971 ("if intervention is allowed, time and effort expended in
formulating the settlement . . . will be for naught"); *Hollywood Cmty. Synagogue*,
254 F. App'x at 771 (finding no abuse of discretion in district court's conclusion

that intervention one day before approval of consent decree "would substantially prejudice the existing parties by practically undoing twenty-two months of litigation and settlement negotiations culminating in [the] consent decree").

Such prejudice is magnified where, again as here, the motion to intervene is so dilatory that the parties to the consent decree have already substantially performed under it, in reliance thereon—as Appellants admit is the case here (Br. 8).  *See*, *e.g.*, *United States by Bell*, 553 F.2d at 453 (holding that allowing intervention six months after implementation of consent decrees would "prejudice the appellees by jeopardizing months of negotiations, causing substantial litigation expenses, and even more substantial expenses of implementation"); *U.S. Steel Corp.*, 548 F.2d at 1235 (finding it "too late" for intervenors to challenge consent decree settling enforcement action by EPA against steel manufacturer, as "EPA would lose its bargain and suffer prejudice to its attempt to effect" the regulation that, but for the consent decree, would have required closure of steel plants the previous year).

Appellants contend (Br. 20) that the substantial prejudice that would inure to Appellees is not "cognizable" because Appellants were not parties to the underlying negotiation of the Consent Order.  But Appellants fail to cite any authority supporting this premise; indeed, the law is to the contrary.  *See Campbell*, 808 F.2d at 776-77 (holding that district court did not abuse its discretion in

finding Secretary of Labor's motion to intervene filed on day of hearing to approve

settlement untimely despite the fact that "the Secretary's counsel did not

participate in the negotiations" that led to the settlement).

Further, in arguing (Br. 19) that no additional prejudice arises from

Appellants' ten-month delay, Appellants ignore the substantial steps both United

Guaranty and the CFPB have taken in compliance with the Consent Order since its

April 8, 2013 entry.  United Guaranty, in particular, has paid $4.5 million to the

government, has undertaken substantial effort and expense to comply with

burdensome reporting requirements, and has refrained from entering into RESPA-

compliant captive reinsurance agreements pursuant to the Consent Order's terms.

*See* Doc. 5 at 4-11.  Were the Consent Order to unravel as a result of Appellants'

delayed intervention, United Guaranty would likely be forced to incur additional

and undue costs of negotiation and litigation, as well as untold disruption to its

business practices.  Even "the *risk* of the hard-won settlement package becoming

undone" renders the district court's denial of intervention "well within the bounds

of appropriate judicial discretion[.]"  *Moten v. Bricklayers, Masons & Plasterers,*

*Int'l Union of Am.*, 543 F.2d 224, 228 (D.C. Cir. 1976) (emphasis added).

### C.    Appellants Will Not Be Prejudiced If The Denial Of Intervention Is Upheld

A would-be intervenor is not prejudiced for purposes of the third timeliness

prong where he can gain the relief he seeks in an alternative forum.  *See Jefferson*

*Cnty.*, 720 F.2d at 1518-19 (holding that "the district court was justified in finding no prejudice to the [intervenors'] rights in denying intervention" where intervenors could have instituted an independent suit to determine whether consent decree violated their rights); *Hollywood Cmty. Synagogue*, 254 F. App'x at 771 (affirming district court's finding of untimeliness where district court "concluded that prejudice to the [a]ppellants would be minimal as they could litigate the constitutionality of the consent decree in another forum").

As the district court concluded (Doc. 30 at 34:17-35:2), Appellants here are litigating in the Administrative Proceeding the precise question they have asked the district court to address, *i.e.*, whether the Consent Order incorporates *Freeman*, 132 S. Ct. 2034, and, if so, whether it renders lawful under RESPA their receipt of ceding payments from United Guaranty. *See* Brief in Support of Respondents' Renewed Motion to Dismiss or, in the Alternative, to Narrow the Notice of Charges at 54, *In re PHH Corp.*, CFPB Admin. Proc. 2014-CFPB-0002, Dkt. 101-A (May 12, 2014). If Appellants prevail on this argument in the Administrative Proceeding, the charges asserted by the CFPB (at least to the extent premised on Appellants' receipt of payments from United Guaranty) presumably will be rejected. *See* Order on Dispositive Motions at 9, *In re PHH Corp.*, CFPB Admin. Proc. 2014-CFPB-0002, Dkt. 152 (May 22, 2014). An order from the district court "enforcing" the Consent Order according to Appellants' interpretation

would yield the same result.  Permitting intervention here simply gives Appellants

two bites at the apple.[16]

Appellants' additional argument (Br. 17-18) that the ALJ "is simply the

wrong person to interpret" the Consent Order is likewise meritless.  *See Jefferson*

*Cnty.*, 720 F.2d at 1519 ("Since we assume that the forum hearing any future suit

by the would-be intervenors . . . would consider their claims carefully, we hold that

the district court was justified in finding no prejudice to [their] rights in denying

intervention.").  Indeed, the ALJ is positioned no differently from any other judge

who is called upon to interpret how an existing contract or law affects the rights or

obligations of the parties before it; this is what judges do.  Moreover, the district

judge—who presided over this case for only five days before it was resolved— is

in no better (and likely a far worse) position than the ALJ to "interpret" the

meaning of the Consent Order and how (or whether) it applies to Appellants,

because, as the district judge acknowledged, the question of whether the ceding

payments violated RESPA "is something that was never before me to begin with."

Doc. 30 at 11:14-16.  In contrast, this question is squarely before the ALJ in the

Administrative Proceeding.

---

[16]   Nor would an adverse ruling by the ALJ be the end of the line for
Appellants, as they would have the opportunity to petition the CFPB's Director for
reconsideration of the ALJ's decision, 12 C.F.R. § 1081.406, whose decision
would in turn be subject to judicial review by a federal court of appeals, 12 U.S.C.
§ 5563(b)(3).

### D.    No Unusual Circumstances Are Present Here

Appellants do not allege "the existence of unusual circumstances militating either for or against a determination that the application is timely," the fourth factor relevant to the timeliness of a motion to intervene.  *See Jefferson Cnty.*, 720 F.2d at 1516.  There are no such circumstances, and by declining to raise any Appellants have waived any argument on the issue.  *See Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1307 (11th Cir. 2012) (holding argument waived by absence in opening brief of "a statement that 'plainly and prominently' indicate[d] an intent to raise the . . . issue").

In sum, all four factors relevant to timeliness support the district court's conclusion that Appellants' request was not timely, thus precluding intervention under Rule 24.  *See* FED. R. CIV. P. 24(a), (b) (permitting intervention "[o]n timely motion").[17]

---

[17]    In an argument that does not relate directly to any of the four factors relevant to whether a request for intervention is timely (*see Jefferson Cnty.*, 720 F.2d at 1516)—Appellants assert (Br. 15-16) that they should have been permitted to intervene because they sought intervention only for the "limited purpose" of seeking "the interpretation and enforcement of the Consent Order," and not to "'reopen or relitigate any issue which had previously been determined'" (*id.* (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1071 (5th Cir. 1970))).  To the contrary, Appellants' intervention would interfere with the only determination that actually was made in the district court, which is the entry of the Consent Order.  Nor do Appellants' authorities (Br. 15-16) support their argument.  In two of the cases they cite, the intervenors claimed an interest in funds that the court had awarded (pursuant to a judgment) but had yet to distribute, such that intervention did not impact any issues that had already been determined.  *See FTC v. Am. Legal*

34

### III. EVEN IF APPELLANTS' MOTION TO INTERVENE WERE TIMELY, THE DISTRICT COURT CORRECTLY CONCLUDED THAT APPELLANTS WERE NOT ENTITLED TO INTERVENE AS OF RIGHT

As discussed in Point II, *supra*, the district court properly exercised its discretion in concluding that Appellants' Motion to Intervene was untimely. On that basis alone, this appeal must be dismissed. *See United States by Bell*, 553 F.2d at 453 ("Because the district court correctly denied the motion to intervene as untimely under Rule 24(a), we do not reach the additional grounds on which the district court based its decision."). But even if the district court abused its discretion in finding Appellant's motion untimely (and it did not), the denial of intervention as of right was nonetheless correct, as Appellants cannot satisfy Rule 24(a)'s remaining requirements. *See Worlds*, 929 F.2d at 595 ("[A]ppellant must meet *all* of the prerequisites to intervention of right.") (emphasis added).

A party seeking to intervene as of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure must demonstrate that

---

*Distribs., Inc.*, 890 F.2d 363, 365-66 (11th Cir. 1989) (holding that unopposed motion to allow intervenors to assert interest in assets yet to be distributed by prevailing plaintiff should have been granted, but noting that intervention as to previously determined issues was correctly denied, as "it would serve no purpose to allow intervention as to matters resolved before appellants' Motion to Intervene was filed"); *McDonald*, 430 F.2d at 1070-74 (permitting post-judgment intervention in "unusual situation" where insurer moved to intervene one day after judgment to protect its statutory subrogation interest in plaintiff's recovery). The third case Appellants cite, *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118 (5th Cir. 1970), did not concern post-judgment intervention at all. *See id.* at 1125.

> (1) his application to intervene is timely; (2) he has an
> interest relating to the property or transaction which is
> the subject of the action; (3) he is so situated that
> disposition of the action, as a practical matter, may
> impede or impair his ability to protect that interest; *and*
> (4) his interest is represented inadequately by the existing
> parties to the suit.

*Purcell*, 85 F.3d at 1512 (emphasis added); *see* FED. R. CIV. P. 24(a) ("On timely

motion, the court must permit anyone to intervene who:  (1) is given an

unconditional right to intervene by a federal statute; or (2) claims an interest

relating to the property or transaction that is the subject of the action, and is so

situated that disposing of the action may as a practical matter impair or impede the

movant's ability to protect its interest, unless existing parties adequately represent

that interest.").[18]

Appellants' failure to satisfy *all three* of the remaining requirements of Rule

24(a) is plain because they do not even squarely address the third requirement:

whether they are "so situated that disposition of the action, as a practical matter,

---

[18]    Because these issues present pure questions of law given that the record
is substantially undisputed, even in the event the Court concludes that the district
court abused its discretion in finding the Motion to Intervene untimely, it need not
remand if intervention was nonetheless correctly denied.  *See Reed v. Beto*, 343
F.2d 723, 725 (5th Cir. 1965) ("[I]n view of [petitioner's argument] being a pure
question of law, we see no need to remand it for a determination by the District
Court. . . .   So long as that decision stands, denial of the relief was proper."), *aff'd
sub nom. Spencer v. Texas*, 385 U.S. 554, 87 S. Ct. 648 (1967); *see also Lucas*, 257
F.3d at 1256 (noting that district court's decision may be affirmed "on any ground
that finds support in the record").

36

may impede or impair [their] ability to protect [their] interest[.]" *Purcell*, 85 F.3d
at 1512.  As "one is entitled to intervention of right only if" this requirement
(among the remaining three) is met, *EEOC v. E. Airlines, Inc.*, 736 F.2d 636, 638-
39 (11th Cir. 1984), Appellants' appeal respecting the denial of intervention of
right must fail, *see Lindsey*, 542 F. App'x at 749 ("Because Intervenors fail to
challenge a dispositive issue, they cannot prevail on appeal.").

       In any event, Appellants are not, in fact, "so situated."  This Court has held
that where the party seeking to intervene can obtain the same relief in a separate
suit, "then she has a choice that effectively preserves all of her rights, without the
need to intervene in the [underlying] case." *EEOC*, 736 F.2d at 638.  Here,
Appellants are seeking in the Administrative Proceeding, and have the ability to
obtain there, the same relief they seek by means of intervention, *i.e.*, an
interpretation of the Consent Order that would result in the rejection of charges
brought against them by the CFPB in the Administrative Proceeding stemming
from payments ceded to them by United Guaranty.  *See supra* Point II.3.  Because
the Consent Order does not "'impair or impede' [Appellants'] ability to seek [their]
own relief," *EEOC*, 736 F.2d at 639, intervention as of right was correctly denied.
*See Donaldson v. United States*, 400 U.S. 517, 531, 91 S. Ct. 534, 542 (1971)
(holding that party could not intervene as of right where he could "assert [his]
interest or [his] claim in due course at its proper place in any subsequent trial"),

*superseded by statute on other grounds*, Tax Reform Act of 1976, Pub L. No. 94-455, 90 Stat. 1520; *Davis v. Butts*, 290 F.3d 1297, 1300 (11th Cir. 2002) (holding that non-parties could not intervene as of right where "they ha[d] not shown how the disposition of the [underlying] litigation, as a practical matter, may impede or impair their ability to seek recompense for violations of [the] Consent Decree" as "[t]hey [were] still free to seek any applicable legal remedies . . . whether it arises due to [the] Consent Order . . . or for any other reason"); *EEOC*, 736 F.2d at 639 (holding intervenor-appellant unentitled to intervene of right where she could "proceed with her own action independently of the [underlying] suit"); *Mitchell v. McCorstin*, 728 F.2d 1422, 1423 (11th Cir. 1984) (per curiam) (same).

Nor can Appellants satisfy the second or fourth requirements of intervention under Rule 24(a). Respecting the second requirement, Appellants' alleged interest in how the Consent Order might impact the separate Administrative Proceeding is not, as Appellants assert, the "'direct, substantial, legally protectible [sic] interest'" in this action they concede this Court mandates to allow intervention as of right. Br. 21 (quoting *Chiles v. Thornbergh*, 865 F.2d 1197, 1213 (11th Cir. 1989)) (in turn quoting *Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982)). Contrary to the expansive definition urged by Appellants, this Court's interpretation of the term "interest" in Rule 24 is "somewhat narrow," *United States v. Perry Cnty. Bd. of Ed.*, 567 F.2d 277, 279 (5th Cir. 1978), and

includes only those interests directly and actually implicated by the underlying

action, *see*, *e.g.*, *In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233, 1246-47

(11th Cir. 2006) (holding that intervenor did not have a "clear interest" in

underlying action as required under Rule 24 where "the motion to intervene

focused on the collateral issue of whether [the] injunction" sought by plaintiffs in

the underlying action "would impair or impede [intervenor's] ability to litigate" a

pending parallel action).  Thus, this Court has held that a proposed intervenor's

interest in the potential collateral estoppel effect of an underlying action on a

separate proceeding "is too collateral, indirect, and insubstantial to support

intervention as of right."  *Purcell*, 85 F.3d at 1513.  "Broadening the right of

intervention to cover [such] circumstances . . . would not only be unprecedented, it

would also run counter to the public policy values that are furthered by permitting

parties to settle a case without the interference of interlopers."  *Id.*

Moreover, while Appellants contend (Br. 22 (quoting *Chiles*, 865 F.2d at

1214)) that "Atrium Re's agreement with [United Guaranty]" is "'the axis on

which the [underlying] lawsuit turns,'" the legality of Appellants' receipt of

payments ceded under that agreement was never at issue in this case, as the district

court correctly recognized (Doc. 30 at 11:14-16), and as the Consent Order itself

provides (Doc. 5 at 2).  This case is therefore unlike *Chiles*, in which the Court

found that the potential *stare decisis* effect of the adjudication of the lawfulness of

the operation of the detention facility in which the detainees seeking to intervene were being held could practically impair their liberty interests, 865 F.2d at 1214; here, the Consent Order (as it presently stands) has no potential *stare decisis* effect on any future action involving Appellants—including the pending Administrative Proceeding. *See* Doc. 5 at 2 ("The parties intend that this Order . . . not have any preclusive effect in any other action or proceeding.").[19]

Appellants also rely (Br. 21) on *Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977), for the proposition that a mere contractual relationship between the party seeking intervention and a party to the consent decree grants them a protectable interest sufficient to support intervention. *Stallworth*, too, is inapposite, as appellants there "contend[ed] that the consent decree unnecessarily interfere[d] with their contractual relations with Monsanto." *Id.* at 268. Here, the Consent Order did not *prohibit* United Guaranty from continuing to cede payments to Appellants, thus interfering with their existing contract. Other cases Appellants

---

[19] The only case Appellants discuss at any length (Br. 23), *Nunley v. Pioneer Pleasant Vale School District No. 56*, 149 F. Supp. 2d 1283 (W.D. Okla. 2001), is inapposite for the same reason. As a threshold point, the Western District of Oklahoma did not, as Appellants contend (Br. 23), conclude that the intervenor had a "protectable interest" because he would be unable to "establish his innocence of the allegations through the administrative process that would be available to him." But even accepting Appellants' incorrect characterization, *Nunley* is inapposite because here, whether Appellants are innocent of RESPA violations based on their acceptance of ceding payments is the precise question before the ALJ, while no issues of liability under RESPA were adjudicated at all in the district court before entry of the Consent Order.

cite are similarly distinguishable, as in each case, the third party's rights were directly at issue in the underlying and still pending litigation. *See Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970) (allowing government to intervene to attach tax lien to funds at issue, as tax lien was "clearly a legally cognizable interest in property"); *Natural Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1344 (10th Cir. 1978) (holding that potential recipients of licenses to operate nuclear plants in New Mexico had sufficient interest to intervene in pending litigation in which plaintiffs sought to enjoin issuance of licenses for operation of nuclear plants in New Mexico); *Haddock v. Nationwide Fin. Servs., Inc.*, 262 F.R.D. 97, 101 (D. Conn. 2009) (parties did not dispute that contracting third party had an interest in pending dispute where the legality of contracting party's conduct was at issue, which could "impede" contracting party "from seeking injunctive relief in a separate or later action"), *vacated and remanded on other grounds sub nom. Nationwide Life Ins. Co. v. Haddock*, 460 F. App'x 26 (2d Cir. 2012).

Finally, to the extent Appellants *had* a sufficient interest in the action between Appellees, they fail to show that United Guaranty's representation of those interests was inadequate, which is the fourth requirement for intervention as of right. *See Purcell*, 85 F.3d at 1512. Here, it was in the interest of *both* United Guaranty and Appellants for United Guaranty to ensure that it was not found liable

for any violation of RESPA, as well as for United Guaranty to adhere to its obligations under its existing contracts—including its contract with Appellants. *See Athens*, 690 F.2d at 1366 ("Because both the union and the FEC have the same objective, we presume that the union's interest is adequately represented."). The facts that (i) no RESPA violation was actually adjudicated and (ii) United Guaranty's contract with Atrium Re was not interrupted reflect that United Guaranty adequately represented any interests Appellants actually had with respect to the Consent Order. *See Mitchell*, 728 F.2d at 1423 (holding intervention as of right inappropriate where intervenor "show[ed] no inadequacy in [plaintiff]'s representation of any hypothetical interest he may have that might be hurt").

Appellants' remaining cited authorities (Br. 24-25) likewise do not support intervention. In each of *Chiles*, 865 F.2d 1197, *Clark v. Putnam County*, 168 F.3d 458 (11th Cir. 1999), and *Triax Co. v. TRW Inc.*, 724 F.2d 1224 (6th Cir. 1984), the underlying litigation was ongoing at the time intervention was sought. Moreover, in *Chiles* and *Triax*, the proposed intervenor disagreed with the strategy of the party with which its interest was generally aligned, *see Chiles*, 865 F.2d at 1215; *Triax Co.*, 724 F.2d at 1228, and in *Clark*, the intervenors did not share interests with either party, *id.* at 462. This case, by contrast, has been resolved for more than a year, such that no "interests" are left for United Guaranty to represent

42

and no strategy decisions are left to be made.  To the extent such interests ever

existed, they were adequately represented by United Guaranty.

## IV.    EVEN IF APPELLANTS' MOTION TO INTERVENE WERE TIMELY, THE DISTRICT COURT PROPERLY EXERCISED ITS SUBSTANTIAL DISCRETION IN DENYING PERMISSIVE INTERVENTION

Finally, Appellants fail to show that the district court committed a *clear*

abuse of discretion in declining permissive intervention—and indeed they hardly

attempt to do so.  *See* Br. 26-27.  While Appellants contend (Br. 26) that their

complaint in intervention raises a "common question of law or fact" under which

intervention may be *permitted* pursuant to Rule 24(b),[20] "'it is wholly discretionary

with the court whether to allow intervention under Rule 24(b), and even though

there is a common question of law or fact, or the requirements of Rule 24(b) are

otherwise satisfied, the court may refuse to allow intervention.'"  *Worlds*, 929 F.2d

at 595 (quoting 7C Charles Alan Wright, *et al.*, FEDERAL PRACTICE & PROCEDURE

§ 1913, at 376-77 (2d ed. 1986)).

Because the district court found the issue of timeliness dispositive, it was

unnecessary for the district court to address the existence of a "common question

of law or fact."  *See NAACP*, 413 U.S. at 365.  Even if the district court had found

---

[20]    "On timely motion, the court may permit anyone to intervene who:
(A) is given a conditional right to intervene by a federal statute; or (B) has a claim
or defense that shares with the main action a common question of law or fact."
FED. R. CIV. P. 24(b)(1).

43

that requirement satisfied, however, it was well within the district court's discretion to deny permissive intervention, particularly in light of the substantial prejudice that would result to Appellees, *see* FED. R. CIV. P. 24(b)(3) ("In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."), and the fact that Appellants are presently asserting their alleged rights under the Consent Order in the Administrative Proceeding, *see Korioth*, 523 F.2d at 1279 n.25 ("When an appellant has other adequate means of asserting its rights, a charge of abuse of discretion in the denial of a motion for permissive intervention would appear to be almost untenable on its face."); *e.g.*, *Worlds*, 929 F.2d at 594 (finding no clear abuse of discretion in denial of permissive intervention where proposed intervenor had filed a separate lawsuit).

## <u>CONCLUSION</u>

Because the district court correctly denied intervention, this appeal should be dismissed.

DATED:  July 17, 2014                    Respectfully submitted,


                                         s/ Jane M. Byrne

                                         Jane M. Byrne
                                         QUINN EMANUEL URQUHART
                                          & SULLIVAN, LLP
                                         51 Madison Avenue, 22nd Floor
                                         New York, NY  10010
                                         Telephone:  (212) 849-7000
                                         Facsimile:   (212) 849-7100
                                         janebyrne@quinnemanuel.com

                                         Daniel C. Posner
                                         Molly Alana Karlin
                                         QUINN EMANUEL URQUHART
                                          & SULLIVAN, LLP
                                         865 S. Figueroa Street, 10th Floor
                                         Los Angeles, California  90017
                                         Telephone:  (213) 443-3000
                                         Facsimile:   (213) 443-3100
                                         danposner@quinnemanuel.com
                                         mollykarlin@quinnemanuel.com

                                         *Counsel for Defendant-Appellee United*
                                         *Guaranty Corporation*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the type-volume limitation in Fed. R. App. P. 32(a)(7)(B) because it contains 11,390 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally-spaced 14-point Times New Roman font using Microsoft Word.

<u>s/ Jane M. Byrne</u>
Jane M. Byrne

*Counsel for Defendant-Appellee United Guaranty Corporation*

46

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2014, I caused to be served one hard copy of

the foregoing Brief of Defendant-Appellee United Guaranty Corporation on the

counsel of record designated below via overnight delivery, and caused the same to

be filed electronically with the Clerk of Court using the Court's CM/ECF system,

which will send a notice of such filing to the counsel of record designated below:

Mitchel H. Kider
David M. Souders
Michael Y. Kieval
WEINER BRODSKY KIDER PC
1300 19th Street, N.W., 5th Floor
Washington, DC 20036-1609

Herman J. Russomanno, III
Robert J. Borrello
RUSSOMANNO & BORRELLO, P.A.
Museum Tower
Penthouse 2800
150 W Flagler Street
Miami, FL 33130

*Counsel for Intervenor Defendants-*
*Appellants*

John R. Coleman
CONSUMER FINANCIAL PROTECTION
  BUREAU
1700 G Street, N.W.
Washington, DC 20552

Kristin Bateman
CONSUMER FINANCIAL PROTECTION
  BUREAU
Office of the General Counsel
1801 L Street, N.W.
Washington, DC 20036

*Counsel for Plaintiff-Appellee*


                          s/ Jane M. Byrne
                          Jane M. Byrne

                          *Counsel for Defendant-Appellee United*
                          *Guaranty Corporation*

ADDENDUM

# ADDENDUM

## TABLE OF CONTENTS

**Page(s)**

### Unpublished Cases

*Alley v. U.S. Dep't of Health & Human Servs.*,
  No. 1:07-cv-00096 (N.D. Ala. Nov. 19, 2008) (ECF No. 59) ......................... A-1

*Fla. Med. Ass'n v. Dep't of Health, Ed., & Welfare*,
  No. 3:78-cv-00178, 2011 U.S. Dist. LEXIS 111180
  (M.D. Fla. May 18, 2011)............................................................... A-17

*Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Parish*,
  No. 2:06-cv-07185 (E.D. La. Jan. 15, 2009) (ECF No. 149)......................... A-26

*Hollywood Cmty. Synagogue, Inc. v. City of Hollywood*,
  254 F. App'x 769 (11th Cir. 2007)................................................... A-31

*Lindsey v. Fayette Cnty. Bd. of Comm'rs*,
  542 F. App'x 747 (11th Cir. 2013)................................................... A-34

*Shatteen v. JP Morgan Chase Bank, N.A.*,
  519 F. App'x 320 (5th Cir. 2013)................................................... A-37

FILED
2008 Nov-19  PM 02:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN  DIVISION

| | | |
|---|---|---|
| **JENNIFER D. ALLEY and REAL TIME MEDICAL DATA, LLC** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | |
| **v.** | ] | **CV-07-BE-0096-E** |
| | ] | |
| **UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES.,** | ] | |
| | ] | |
| **Defendant.** | ] | |
| | ] | |
| | ] | |
| | ] | |
| | ] | |

## MEMORANDUM OPINION

This matter is before the court on "Motion of the American Medical Association for Leave to Intervene" (doc. 45) and the parties' response to that motion; "Defendant's Motion for Reconsideration" (doc. 49); and "Motion to Stay by the United States Department of Health and Human Services" (doc. 52).  For the reasons stated, the court will GRANT the motion to intervene, will DENY the motion for reconsideration, will find as MOOT the motion for stay pending reconsideration, and will DENY the alternative motion for a stay pending appeal.

## Motion to Intervene

The American Medical Association filed the instant motion to intervene one day after this court entered an order on both parties' motions for summary judgment and twenty-three days after the hearing at which the court indicated its intended ruling.  The court held in part that the decision of *Florida Med. Ass'n v. Dep't of Health, Ed. & Welfare*, 479 F. Supp. 1291 (M.D. Fla.

1

1979) ("*FMA*") and accompanying injunction did not apply to the Medicare Part B outpatient

data withheld by Defendant HHS in this case.

In its motion, the AMA requests the right to intervene under Fed. R. Civ. P. 24(a),

Intervention of Right, which provides as follows:

> On timely motion, the court must permit anyone to intervene who (1) is given
> an unconditional right to intervene by a federal statute; or (2) claims an
> interest relating to the property or transaction that is the subject of the action,
> and is so situated that disposing of the action may as a practical matter impair
> or impede the movant's ability to protect its interest, unless existing parties
> adequately represent that interest.

Alternatively, the AMA requests that the court grant permissive intervention under Rule 24(b).

It claims a "direct and compelling interest" in this case because "the AMA and its members are

the beneficiaries of the permanent injunction in [the FMA case]"  and because "the disclosure of

the records that plaintiffs seeks would effectively reveal the financial information of physician

members of the AMA."  (doc. 45 at 2, 3).  The AMA claims that it first became aware of this

litigation on May 2, 2008, a week before it filed the motion to intervene. (doc. 45, at 5).

The Eleventh Circuit Court of appeals, applying Rule 24(a), has held that intervention

> must be granted when four requirements are met:
> (1)    the application to intervene is timely;
> (2)    the applicant has an interest relating to the property or transaction that
>         is the subject of the action;
> (3)    the applicant is so situated that the disposition of the action, as a
>         practical matter, may impede or impair his ability to protect that
>         interest; and
> (4)    the applicant's interest will not be represented adequately by the
>         existing parties to the suit.

*Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007).  This test essentially restates the

language of Rule 24(a)(2).  This court will apply each of these four requirements to the instant case.

### (1) Timeliness

A discussion of timeliness necessitates a short chronology of the instant case.  Plaintiffs filed the case on January 11, 2007 against HHS, requesting preliminary and permanent injunctive relief regarding its FOIA request.  HHS acknowledged that it was withholding data from Plaintiffs, but argued in part that it was bound by the decision and accompanying injunction in *FMA*; HHS contends that the *FMA* injunction prohibits it from releasing the withheld data to Plaintiffs.  This court denied the initial request for preliminary injunction.  The parties subsequently filed cross-motions for summary judgment.

On April 16, 2008, the court held a hearing on those cross-motions for summary judgment and announced in open court its intention to grant partial summary judgment in favor of the Plaintiffs, finding that HHS improperly withheld certain 2002 Medicare Part B outpatient data.  The court also announced in open court its finding that the *FMA* injunction does not apply to the withheld data in the instant case.

HHS notified the AMA of this lawsuit on May 2, 2008, shortly after the hearing.  On May 5, 2008, the AMA orally notified the court that it would be filing a motion to intervene.  On May 8, 2008, this court entered a Memorandum Opinion and Order on those cross-motions, granting in part and denying in part both parties' motions for summary judgment.  Consistent with its findings at the hearing, it ruled that HHS had improperly withheld from Plaintiffs certain 2002 Medicare Part B outpatient data and that the *FMA* injunction did not apply to that data.  It also entered a permanent injunction, directing HHS to make certain data available to Plaintiffs.  On

May 9, 2008, one day after this court's Order on the cross-motions and almost sixteen months

after the case was filed, the AMA filed the instant motion to intervene.

Because Rule 24 fails to define the term "timely" and the Advisory Notes to that rule

provide no clarification, "the question whether an application for intervention is timely is largely

committed to the discretion of the trial court, and its determination will not be overturned on

appeal unless an abuse of discretion is shown." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263

(5th Cir. 1977). "[T]imeliness is not limited to chronological considerations but 'is to be

determined from all the circumstances.'" *Id.* (quoting *United States v. U.S. Steel Corp.*, 548 F.2d

1232, 1235 (5th Cir. 1977)). The Fifth[1] and Eleventh Circuits consider four factors governing

timeliness of a motion to intervene.

The first factor is "[t]he length of time during which the would-be intervenor actually

[knew] or reasonably should have known of his interest in the case before he petitioned for leave

to intervene." *Stallworth*, 558 F.2d at 264. As noted from the chronology above, the AMA has

stated that only one week elapsed from the date that HHS notified it of the suit and the date it

filed the motion to intervene. The Plaintiffs express scepticism at the AMA's claim of ignorance

about this suit until May of 2008. Plaintiffs argue that in light of the fact that the AMA and HHS

have established a partnership to appeal a very similar case, *Consumers' Checkbook v. U.S. Dep't

of Health & Human Svcs.*, 502 F. Supp. 2d 79 (D.D.C. 2007) (involving a similar district court's

ruling on this Medicare disclosure issue and the same *FMA* injunction), HHS would have

notified the AMA of the instant case much sooner.

---

[1]In *Bonner v. City of Prtichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit
adopted as precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

The court agrees that the *logical* and *prudent* approach would have been for HHS to notify the AMA soon after this suit was filed implicating the *FMA* injunction. In that regard, the AMA "should have known" of this case much sooner than the notification date it asserts, after the court had made its oral ruling. However, the court knows of no way the AMA would have received notice of this case except from HHS. The court cannot condone HHS's tactic of waiting until it received an unfavorable ruling and *then* calling on the AMA to intervene; the intervention's timing appears to be HHS's attempt to obtain the proverbial "second bite at the apple." Nevertheless, the court cannot hold the AMA responsible for this delay; under the circumstances, it must accept the AMA's representation regarding when it received notice. Accordingly, the court finds that the AMA has met the first factor.

The second factor in considering timeliness is "the extent of prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest in the case." *Stallworth*, 558 F.2d at 265. Accepting the AMA's date of notice, the court finds that Plaintiffs[2] and HHS have suffered little or no prejudice from the one-week delay by AMA. The fact that the applicant filed its motion to intervene after a ruling on a dispositive motion does not automatically render the motion untimely. *See United States v. Covington Tech.*, 967 F.2d 1391, 1394 (9th Cir. 1992) (finding the government's motion to intervene to be timely even though that motion occurred after the district court had dismissed two defendants with prejudice and entered judgment against the

---

[2]The Plaintiffs assert that they are prejudiced by the further delay in receipt of documents due them under the court's May 8, 2008 order. The court agrees. However, that prejudice is the result of HHS's sixteen-month delay in notifying AMA of the Plaintiffs' case – not the one week delay between notification and the filing of the AMA's motion.

remaining defendant); *see generally* 7 C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1916 (noting that "the mere fact that judgment already has been entered should not by itself require a motion for intervention to be denied").

The third factor concerns the prejudice that the intervenor will suffer if its claim is denied. In the instant case, the data to be released concerns medical services that AMA physicians performed. In addition, the AMA members are the beneficiaries of the *FMA* injunction at issue. The court does not agree that the *FMA* injunction applies to the data in question and does not necessarily accept the AMA's characterization of the data to be released or the extent that the data impacts the physicians' privacy interests. Nevertheless, the court accepts the AMA's argument that it may suffer prejudice if the beneficiaries of the *FMA* injunction are not allowed to participate in the post-judgment motions and appeal of an order finding that the injunction does not apply.

The fourth factor concerns the existence of "unusual circumstance" that support intervention. Although the court does not agree that the *FMA* injunction encompasses the data withheld in this case, it recognizes that HHS and the AMA have a colorable argument that the injunction does apply. Because the data required to be withheld in the *FMA* injunction *and* the data required to be produced in the instant case involve AMA member physicians, this court finds that "unusual circumstances" exist pursuant to factor four.

In summary, the timeliness issue presented is a close one because the AMA "should have known" of this suit's existence much sooner than the actual notification date. However, despite the fact that HHS's tardy plea to the AMA has prejudiced Plaintiffs, the court acknowledges that the intervening delay was the fault of HHS and not the AMA. Accordingly, the court, in its

6

discretion, finds that the motion to intervene was timely within the meaning of Rule 24(a).

### *(2) Appliant's Interest in the Property or Transaction*

Having reluctantly found the timeliness requirement to be met, the court addresses the

second requirement for intervention as of right.  "Under Rule 24(a)92), a party in entitled to

[intervene] if the party's interest in the subject matter of the litigation is direct, substantial, and

legally protectable."  *Georgia v. U.S. Army Corps of Eng'rs*, 02 F.3d 1242, 1249 (11th Cir.

2002).  As noted above, the data elements in this case relate to medical services provided by

AMA member physicians and their practices.  The court finds that the AMA's interest in the

present litigation satisfies the relevant criteria for Rule 24(a)(2).

### *(3) This Action's Potential to Impair Applicant's Ability to Protect Its Interest*

The third requirement for intervention of right is that the disposition of the action *may*

impede or impair the applicant's ability to protect his interest.  Although this court and the AMA

disagree about whether the *FMA* injunction applies to this case, the court acknowledges that its

May 8, 2008 order requires the release of data relating to AMA members and, further, that the

AMA's ability to attack the order and protect its interests will be impaired if the court does not

grant its motion to intervene.  Accordingly, the court finds that the AMA has satisfied this

requirement.

### *(4) Adequate Representation*

The final requirement for an intervention of right is that the applicant's interest is not

adequately represented by the existing parties to this suit.  When an applicant and existing party

seek the same outcome – as the HHS and the AMA do in the instant suit – the Eleventh Circuit

presumes the party's representation is adequate.  *See Clark v. Putnam County*, 168 F.3d 454, 461

(11th cir. 1999). However, "the presumption is weak; in effect, it merely imposes upon the proposed intervenors the burden of coming forward with some evidence to the contrary." *Id.* Similarly, the United States Supreme Court has characterized the applicant's burden on this fourth requirement as "minimal." *Trbovich v. United Mine Worker of America*, 404 U.S. 528, 538 n.10 (1972). Therefore, the court will determine whether the AMA has overcome the "weak" presumption and met its "minimal" burden by presenting some evidence that HHS does not adequately represent its interests.

The AMA argues that the HHS and the AMA do not have identical interests. The data involved not only in the instant case but also in the *FMA* injunction related to services provided by AMA physicians and their practices, and included information such as medical providers' names and addresses. The AMA claims that the release of that kind of data – especially when combined with financial information – violates its members' privacy interests, and claims that because the HHS does not share the privacy interests of the physician groups at issue, it could not adequately protect them. The AMA acknowledges that HHS may well have an institutional interest in clarifying or avoiding potentially conflicting injunctions and FOIA rulings and further, in avoiding the inconvenience of responding to FOIA requests. However, HHS's privacy rights are not at stake and its interests do not coincide neatly with those of the AMA and its members. To emphasize HHS's inability to adequately represent and protect the AMA's interests, the AMA notes that the HHS initially disclosed to Plaintiffs without a court order the type of records made the basis of the instant suit. The AMA also points out several "new" arguments and procedural strategies – such as requesting a stay in this court while the AMA requests the Middle District of Florida to clarify the scope of the *FMA* injunction – that HHS did not proffer but that the AMA

would pursue if allowed to intervene.

This court acknowledges that the interests of the HHS and the AMA members are not identical. However, HHS raised the privacy interests of the AMA members in its briefs and at the hearing, arguing that providing the requested information to Plaintiffs would violate those privacy interests and arguing that the *FMA* injunction covered the information requested in this case. Thus, despite the AMA's protests to the contrary, HHS *did* present at least some of the same privacy arguments that the court would expect the AMA to raise in support of withholding the data at issue and the court doubts that the AMA will generate new and material arguments in that regard. Yet, in light of the AMA's valid interest in the outcome, the court finds that the AMA has overcome the "weak" presumption that HHS adequately represented its interests, and the court will give the AMA a chance to represent itself.

Therefore, the court finds that the AMA meets the four requirements of Rule 24(a) and will GRANT the AMA's motion to intervene as of right.

Because of its ruling, the court need not consider the AMA's alternative motion for permissive intervention under Rule 24(b). Nevertheless, even if, assuming *arguendo*, the AMA did not fully meet all requirements to intervene as of right, the court, in an exercise of its discretion, would grant permissive intervention because the court finds that the AMA has a "claim or defense that shares with the main action a common question of law or fact" as required by Fed. R. Civ. P. 24(b)(1)(B). As noted previously, the privacy rights that HHS raises are those of the AMA members, and the AMA was a party to the *FMA* case and its members were the beneficiaries of the *FMA* injunction upon which HHS relies in defending this case.

Rule 24(b)(3) further requires the court to consider "whether the intervention will unduly

delay or prejudice the adjudication of the original parties' rights." Because the primary prejudice that Plaintiffs allegedly suffer corresponds to the delay caused by the proposed intervention, the court will focus on that element. The court recognizes that the intervention of the AMA has already caused some delay in the adjudication of the original parties' rights. The court had already ruled on the original parties' cross-motions for summary judgment before the AMA filed the motion to intervene and before HHS filed its motion for a stay in light of the motion to intervene; without the filing of those motions, this case was nearing conclusion. The filing of those motions stopped the progression of the case as the court considered whether to allow the AMA's intervention[3]. However, the court finds, in its discretion, that although allowing the AMA to intervene will cause and has caused some delay, that delay is not *undue.* As noted previously, the court has already ruled on cross-motions for summary judgment and, as established later in this opinion, it will deny HHS's motion for reconsideration. Although the AMA has hinted at the possibility of requesting a stay in this case pending a ruling by the Middle District of Florida on the scope of the *FMA* injunction, the AMA apparently has not yet filed any action in the Middle District of Florida requesting such a ruling, and this court will not base its own rulings upon speculation about cases not yet filed. Accordingly, the information presently before the court indicates that this case should conclude in the near future, and the AMA's intervention in the case should not *unduly* prejudice Plaintiffs or cause *undue* delay in the case's resolution before this court. Rather, it will afford the AMA an opportunity to participate in any post-judgment motions as well as any appeals process. Therefore, in the alternative, the court would grant the AMA's motion for permissive intervention under Rule 24(b).

---

[3]The court acknowledges that the delay was extended by the court's own heavy schedule.

**Motion for Reconsideration**

HHS has filed a motion, pursuant to Rule 59(3) asking the court "to amend its May 8, 2008 order to the following extent: (1) that HHS is required to disclose the 2002 Medicare Part B outpatient data elements for Florida, Georgia, Mississippi, and Tennessee in dispute; and (2) that HHS is subjected to a permanent injunction." (doc. 49).

"[R]econsideration of an order is an extraordinary remedy and is employed sparingly." *Reuter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 440 F. Supp. 2d 1256, 1266 (N.D. Ala. 2006). Motions for reconsideration should not be a "'knee-jerk reaction to an adverse ruling.'" *Id.* (quoting *Summit Medical Center of Ala., Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003)). Neither should they be "a platform to relitigate arguments previously considered and rejected." *Retuter*, 440 F. Supp. 2d at 1266. Rather, they should be "only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Summit Medical Center*, 294 F. Supp. 2d at 1266.

In the instant case, HHS does not present any new evidence that was unavailable at the time of the decision nor does it argue that controlling law changed after the date of the court's order. Rather, HHS argues that the court should reconsider its previous rulings to correct clear error or avoid manifest injustice. In support of its "manifest injustice" argument, HHS in effect presents an argument for allowing the AMA to intervene, stating that the AMA holds different interests than the HHS and that the court would be unjust not to allow the AMA to join this action as a party and have its "day in court." Presumably, HHS also expects the court to reconsider its rulings in light of whatever new arguments the AMA might assert. The court finds

11

HHS's position to be curious in light of its failure to notify the AMA of this litigation, despite their "partnership" on appeal in the *Consumers' Checkbook* case. If HHS knew of the AMA's strong interest in this matter – such a strong interest that the court would be manifestly unjust not to allow it to intervene and present its arguments – then, why did HHS wait to notify the AMA of this lawsuit until sixteen months after the case's filing and after the court orally ruled adversely to HHS? In any event, as noted previously, the court will grant the AMA's motion to intervene. The court will not, however, grant HHS's motion to reconsider based on its assumption that the AMA may, sometime in the future, present new and different arguments to the court regarding the cross-motions for summary judgment.

HHS also points to two "clearly erroneous" rulings in this court's May 8, 2008 order and accompanying opinion. The first "error" involves this court's ruling that the *FMA* injunction does not apply to certain data withheld in the instant case. Yet, HHS primarily presents the *same* arguments that the court heard before its ruling and found unpersuasive. HHS does, for the first time, argue that this court should "stay its hand pending a definitive interpretation by the Middle District of Florida as to the applicability of the 1979 order." (Def.'s Br. 11). However, HHS does not advise the court that it has taken action in the Middle District of Florida to address the scope of the *FMA* injunction. Accordingly, the court is unclear whether HHS is demanding this court to wait – perhaps indefinitely – until it seeks a ruling from the Middle District or whether HHS is demanding that this court request a ruling from the Middle District of Florida to that effect. This court will not accede to either demand.

HHS relies heavily on the decision of *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980). The *GTE Sylvania* opinion stated that governmental agencies

"subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order."  *Id.* at 386.  Accordingly, the court held that an agency withholding documents subject to such an injunction is not "improperly" withholding data within the meaning of FOIA and is not required to commit contempt of court to release documents under FOIA.  *Id.* at 387.   HHS also argues that considerations of comity require this court to give broad deference to the *FMA* injunction of the United States District Court for the Middle District of Florida, and that this court's ruling on the cross-motions for summary judgments interferes with and fails to defer to the *FMA* injunction.

HHS's argument misconstrues this court's ruling on the cross-motions for summary judgment.  As noted previously, the court has recognized the existence of the *FMA* injunction.  If this court had found that the *FMA* injunction applied to the instant case, then it would defer to that order.  However, after careful consideration and analysis, this court found that the *FMA* injunction does not apply to the instant case; consequently, it does not agree that a conflict exists between the *FMA* injunction and its own rulings.  Without a conflict, the established principles of comity and deference to orders of sister federal courts do not arise and require this court to stay its hand.  In any event, this court finds no clear error in its decision that the *FMA* injunction does not apply to the data withheld in the instant case.

The second "error" that HHS identifies is the court's finding that, having engaged in FOIA's Exemption 6 balancing test, the public interests outweighed the privacy interests and required disclosure of the data in question.  The court reiterates that the onerous burden rested on HHS to prove that disclosure "would constitute a clearly unwarranted invasion of personal

privacy." *See* 5 U.S.C. § 552(b)(6); *New-Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173, 1198 (11th Cir. 2007). Further, Exemption 6's "clearly unwarranted" language weighs the balancing scales "in favor of disclosure." "Under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the Act." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002). Yet, HHS insists that it met its onerous burden and overcame the strong presumption in favor of disclosure. The court disagreed in April and still disagrees today.

HHS claims that this court committed error by focusing on the "providers who receive Medicare reimbursement rather than on the operations and activities of the agency itself." (doc. 50, p. 13). The court, however, did focus properly on the public's interest in what its "government is up to" (*see U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 773-74 (1989); providing information for the public to determine how efficiently the government is spending its Medicare dollars undoubtedly serves the core purpose of FOIA. HHS insists that providing information to evaluate doctors who receive Medicare payments does not serve the core purposes of FOIA, because HHS has no authority "to pay doctors with high success rates more under Medicare." (Def.'s Br. On Motion for Reconsideration 23). The Plaintiffs have never argued that HHS should pay doctors at different rates, so HHS's argument misses the point. The court remains convinced that a nexus exists between the public's interest in evaluating doctors who receive Medicare payments and the public's interest in evaluating the government's efficient use of Medicare dollars.

HHS argues at length that individuals have a privacy interest in the nondisclosure of names and addresses paired with financial information. This court does not disagree; it simply

found that the privacy interest in the *raw data* at issue in the instant case – data that had not been converted into reimbursement totals for each provider – is limited.   The court weighed the privacy interests against the public interests in disclosure and found that the balance tipped in favor of disclosure.  Upon reconsideration, the court finds that its previous ruling is not "clear error."  HHS did not meet its onerous burden of proving that the data at issue constituted a "clearly unwarranted invasion of personal privacy" within the meaning of Exemption 6.  The court stands by its interpretation that the law as applied to the facts of this case supports the strong presumption of disclosure.

Accordingly, the court finds that its Order of May 8, 2008, requiring HHS to disclose certain data to Plaintiffs, was not clear error and does not cause manifest injustice.  Because HHS has provided no further grounds in support of its motion for reconsideration, the court will DENY HHS's Motion for Reconsideration.

### **Motion for Stay Pending Reconsideration**

In conjunction with its Motion for Reconsideration, HHS also requests that the court enter a stay until the court reconsidered its ruling.  The court did not previously grant the stay and, in light of its ruling on the motion for reconsideration, the court finds the motion to stay is MOOT.

In the alternative, HHS requests a stay of the disclosure order and of the permanent injunction pending appeal.  The court will DENY this request.  The court notes that its rulings are not yet final; its May 8, 2008 Order only granted partial summary judgment and issues remain in this case.  HHS has not requested that the court certify its ruling as "final" for purposes of an interlocutory appeal under FRCP 54(b), so no appeal is imminent.

**<u>Conclusion</u>**

In summary, the court will GRANT the AMA's Motion to Intervene as of right (doc. 45);

DENY HHS's Motion for Reconsideration (doc. 49); FIND AS MOOT  HHS's Motion for a

Stay Pending Reconsideration (doc. 52); and DENY HHS's alternative Motion for a Stay

Pending Appeal.

Dated this 19th day of November, 2008.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

16



**FLORIDA MEDICAL ASSOCIATION, INC., et al., Plaintiffs, vs. DEPARTMENT OF HEALTH, EDUCATION, & WELFARE, et al., Defendants, DOW JONES & COMPANY, INC., et al., Intervening Defendants.**

**Case No. 3:78-cv-00178-MMH-MCR**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION**

*2011 U.S. Dist. LEXIS 111180*

**May 18, 2011, Decided**
**May 18, 2011, Filed**

**SUBSEQUENT HISTORY:** Adopted by, in part, Motion granted by, Motion granted by, in part, Objection sustained by *Fla. Med. Ass'n v. HEW, 2011 U.S. Dist. LEXIS 109451 (M.D. Fla., Sept. 26, 2011)*

**PRIOR HISTORY:** *Florida Medical Asso. v. Department of Health, Education & Welfare, 479 F. Supp. 1291, 1979 U.S. Dist. LEXIS 9021 (M.D. Fla., 1979)*

**CASE SUMMARY:**

**OVERVIEW:** A magistrate issued a report recommending granting a motion to reopen a case involving an injunction against disclosure of certain information as well as granting *Fed. R. Civ. P. 24(a)* leave to intervene by intervening defendants, a publisher and a data company, because the motions were timely, and the intervenors had a direct interest in the subject of the suit, which could only be protected by intervention.

**OUTCOME:** Granting motions recommended.

**LexisNexis(R) Headnotes**

*Civil Procedure > Parties > Intervention > Right to Intervene*
[HN1] A party seeking to intervene as of right under *Fed. R. Civ. P. 24(a)(2)* must show that: (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit. If these requirements are met, the district court must allow the movant to intervene.

*Civil Procedure > Parties > Intervention > Right to Intervene*
*Civil Procedure > Parties > Intervention > Timeliness*
[HN2] When considering a motion pursuant to *Fed. R. Civ. P. 24(a)*, a court should assess timeliness based on all the surrounding circumstances, including (1) the length of time during which the intervenor knew or should have known of its interest in the case; (2) the extent of prejudice to existing parties as a result of the intervenor's failure to apply as soon as it knew or should have known of its interest; (3) the extent of prejudice to the would-be intervenor if its petition is denied; and (4) the existence of unusual circumstances militating either for or against the application being timely.

*Civil Procedure > Parties > Intervention > Right to Intervene*
[HN3] Nothing in *Fed. R. Civ. P. 24(a)* precludes post judgment or even post-appeal intervention.

*Administrative Law > Governmental Information > Freedom of Information > General Overview*
*Civil Procedure > Parties > Intervention > Right to Intervene*
[HN4] A requester under the Freedom of Information Act, *5 U.S.C.S. § 551 et seq.*, is entitled to intervene as of right in an action designed to prevent the government from disclosing the relevant information.

*Civil Procedure > Pleading & Practice > Pleadings > Counterclaims > General Overview*
*Civil Procedure > Parties > Intervention > Right to Intervene*
[HN5] It is very doubtful that a court has the right to make significant inroads on the standing of an intervenor of right; and in particular, it should not be allowed to limit him in the assertion of counterclaims and other new claims. Where courts have imposed limits on the scope of intervention, the limitations have been purely reasonable conditions of a housekeeping nature.

*Civil Procedure > Pleading & Practice > Pleadings > Counterclaims > General Overview*
*Civil Procedure > Pleading & Practice > Pleadings > Cross-Claims > General Overview*
*Civil Procedure > Parties > Intervention > Right to Intervene*
[HN6] The same standards for counterclaims and cross-claims by original parties apply with full force to an intervenor of right under *Fed. R. Civ. P. 24(a)*. *Fed. R. Civ. P. 13* directs that cross-claims may be filed by any person entitled to file a pleading. So once intervention has been granted the intervener becomes a party, within the meaning of the rules, entitled to litigate fully on the merits.

*Civil Procedure > Parties > Intervention > General Overview*
[HN7] Courts should not resolve a motion for intervention by reference to the ultimate merits of the claim the intervenor seeks to assert unless the allegations are frivolous on their face.

*Civil Procedure > Venue > Multiparty Litigation*
[HN8] Courts may cure defects where venue is proper for one of several claims arising out of the same core of operative facts.

*Civil Procedure > Parties > Intervention > General Overview*
[HN9] Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows a court to resolve all related disputes in a single action.

**COUNSEL:  [*1]** For Florida Medical Association, Inc., a Florida Corporation, on behalf of its members; Louis C. Murray, M.D., Jack MaCris, M.D., Jere Annis, M.D., William Davenport, M.D., Robert E. Windom, M.D., and Charles H. Buchert, M.D. on behalf of themselves and all others similarly situated, Plaintiff: James Arthur Bolling, Stephen D. Busey, LEAD ATTORNEYS, Smith, Hulsey & Busey, Jacksonville, FL.

For American Medical Association, on behalf of members and Robert B. Hunter, M.D., Frank J. Jirka, Jr., M.D., Lowell H. Steen, M.D., Harold Gurgone, Walter E. Schrage, Intervenor Plaintiff: Jack R. Bierig, LEAD ATTORNEY, Sidley Austin LLP, Chicago, IL; James Arthur Bolling, Stephen D. Busey, LEAD ATTORNEYS, Smith, Hulsey & Busey, Jacksonville, FL.

For Department Of Health, Education And Welfare: Joseph A. Califano, Jr., Secretary of Health, Education & Welfare, Defendant: James C. Luh, LEAD ATTORNEY, US Department of Justice - Civil Division, Washington, DC; Roberto H. Rodriguez, Jr., LEAD ATTORNEY, US Attorney's Office - FLM*, Jacksonville, FL.

For Dow Jones & Company, Inc., Intervenor Defendant: Gail Gove, LEAD ATTORNEY, PRO HAC VICE, Jason Conti, Mark H. Jackson, LEAD ATTORNEYS, Dow Jones & Company,  **[*2]** Inc., New York, NY; Helen A Peacock, Michael G. Tanner, LEAD ATTORNEYS, Tanner Bishop, Jacksonville, FL; John R. Eastburg, Laura R. Handman, Ronald G. London, LEAD ATTORNEYS, Davis Wright Tremaine, LLP, Washington, DC.

For Jennifer D. Alley, Intervenor Defendant: Howard S. Marks, LEAD ATTORNEY, Burr & Forman, LLP, Winter Park, FL; Julie W. Pittman, Victor L. Hayslip,

LEAD ATTORNEYS, PRO HAC VICE, Burr & Forman, LLP, Birmingham, AL.

For Real Time Medical Data, L.L.C., Intervenor Defendant: Howard S. Marks, LEAD ATTORNEY, Burr & Forman, LLP, Winter Park, FL; Julie W. Pittman, LEAD ATTORNEY, PRO HAC VICE, Burr & Forman, LLP*, Birmingham, AL; Victor L. Hayslip, LEAD ATTORNEY, PRO HAC VICE, Burr & Forman, LLP, Birmingham, AL.

For Jennifer D. Alley, Cross Claimant: Howard S. Marks, LEAD ATTORNEY, Burr & Forman, LLP, Winter Park, FL; Julie W. Pittman, LEAD ATTORNEY, PRO HAC VICE, Burr & Forman, LLP*, Birmingham, AL; Victor L. Hayslip, LEAD ATTORNEY, PRO HAC VICE, Burr & Forman, LLP, Birmingham, AL.

For Department Of Health, Education And Welfare: Joseph A. Califano, Jr., Secretary of Health, Education & Welfare, Cross Defendant: James C. Luh, LEAD ATTORNEY, US Department of Justice - Civil Division, [*3] Washington, DC; Roberto H. Rodriguez, Jr., LEAD ATTORNEY, US Attorney's Office - FLM*, Jacksonville, FL.

For Jennifer D. Alley, Counter Claimant: Howard S. Marks, LEAD ATTORNEY, Burr & Forman, LLP, Winter Park, FL; Julie W. Pittman, LEAD ATTORNEY, PRO HAC VICE, Burr & Forman, LLP*, Birmingham, AL; Victor L. Hayslip, LEAD ATTORNEY, PRO HAC VICE, Burr & Forman, LLP, Birmingham, AL.

For Florida Medical Association, Inc., a Florida Corporation, on behalf of its members; Louis C. Murray, M.D., Jack MaCris, M.D., Jere Annis, M.D., William Davenport, M.D., Robert E. Windom, M.D., and Charles H. Buchert, M.D. on behalf of themselves and all others similarly situated, Counter Defendant: Stephen D. Busey, LEAD ATTORNEY, Smith, Hulsey & Busey, Jacksonville, FL.

**JUDGES:** MONTE C. RICHARDSON, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** MONTE C. RICHARDSON

**OPINION**

**REPORT AND RECOMMENDATION**[1]

1  Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal. See *28 U.S.C. § 636(b)(1)*; *Rule 72(b), Fed.R.Civ.P.*; **[*4]** and *Local Rule 6.02(a), United States District Court for the Middle District of Florida*.

**THIS CAUSE** is before the Court on Intervening Defendant Dow Jones and Company, Inc.'s Motion to Reopen Case (Doc. 7), Intervening Defendant Dow Jones and Company, Inc.'s Motion to Intervene (Doc. 1), and Intervening Defendants Jennifer D. Alley and Real Time Medical Data, LLC's Motion to Intervene (Doc. 20). For the reasons stated herein, it is respectfully recommended that the aforementioned Motions (Docs. 1, 7, 20) be granted.

**I. INTRODUCTION**

In 1979, the plaintiffs in this action, including the American Medical Association ("AMA"), successfully petitioned this Court to prohibit the government (now via the Centers for Medicare & Medicaid Services ("CMS"))2 from disclosing the amount of taxpayer dollars individual doctors r0.0.eceive from Medicare reimbursements. See *Florida Medical Association v. HEW, 479 F. Supp. 1291 (M.D. Fla. 1979)*.

2  CMS is an agency of the Department of Health and Human Services ("HHS"), the renamed Department of Health, Education and Welfare ("HEW").

Last year, Dow Jones & Company, Inc. ("Dow Jones"), publisher of *The Wall Street Journal (*the "*Journal")*, began to investigate **[*5]** Medicare fraud and the American healthcare system. The *Journal* wanted to do an investigative series based on a set of databases known as the Limited Data Set Files (the "LDS Files"), which are maintained by CMS. After a Freedom of Information Act ("FOIA") request that CMS denied, an ensuing FOIA lawsuit, and a protracted settlement; the *Journal* obtained access to a limited set of Medicare data. That data, along with additional information and reporting, resulted in last year's *Journal* series, *Secrets of the System.*

Dow Jones now seeks to re-open the case and dissolve the 1979 Injunction. (Doc. 1). Jennifer D. Alley and Real Time Medical Data, LLC (collectively "RTMD")[3] seek to intervene for the same purpose. (Doc. 20).

> 3  RTMD is a commercial entity whose primary business is providing health care data to a targeted client base consisting of hospitals and other health care facilities. (Doc. 20, p. 4). RTMD utilizes Medicare claims data as part of the information that it tailors to its clients, in order to assist those clients with healthcare planning. RTMD's business is dependent on Medicare data that it receives via FOIA requests. (Id.).

## II. BACKGROUND

In 1977, HHS released a list of medical **[*6]** providers whose Medicare reimbursements totaled at least $100,000.00 during 1975 and announced plans to release 1977 reimbursement data. See *Florida Medical Association, 479 F. Supp. at 1297*. In 1979, however, the plaintiffs in this action successfully petitioned this Court for an order enjoining HHS from releasing annual Medicare payments to individually identified medical providers. *Id. at 1311*. This Court (Sr. District Judge Charles R. Scott) entered an injunction reasoning that such information was "exempt from required disclosure under the FOIA because it would constitute a 'clearly unwarranted invasion of personal privacy'" under *5 U.S.C. § 552(b)(6)*, and that HHS was "prohibited by the Privacy Act from disclosure, without the prior written consent of each affected individual." Id.

In 2009, the Eleventh Circuit ruled that this injunction is still in force and continues to bind HHS from releasing annual Medicare payments to individual medical providers.[4] *Alley v. HHS, 590 F.3d 1195, 1199-1200 (11th Cir. 2009)*.[5] However, the Court further held, if it is "believe[d] the FMA injunction is invalid, overly broad, or outdated, [it] can [be] challenge[d] in the Middle District of Florida **[*7]** after joining all necessary parties." *Id. at 1210*.

> 4  It should be noted that in 2007, a D.C. district court ordered HHS to produce similar information in response to a FOIA request, finding that the interest in disclosure overwhelmed any privacy interests under FOIA Exemption 6 and the Privacy Act. *Consumers' Checkbook v. HHS, 502*

*F. Supp. 2d 79, 85-86 (D.D.C. 2007)*. The D.C. Circuit reversed, in part, because the majority found that respondents had "not provided any evidence of alleged fraud the requested data would reveal" as to outweigh any alleged privacy interests. *Consumers' Checkbook v. HHS, 554 F.3d 1046, 1049, 1054, 384 U.S. App. D.C. 306 (D.C. Cir. 2009)*. Yet one D.C. Circuit judge disagreed, noting that the information should be released even in the absence of direct evidence of fraud "because Medicare distributes extensive amounts of public funds, there is a special need for public oversight of HHS's activities in administering Medicare." *Id. at 1059* (Rogers, J, J., concurring in part and dissenting in part) (internal quotations marks omitted).

> 5  On January 11, 2007, RTMD filed suit against HHS in the Alabama District Court, requesting preliminary and injunctive relief prohibiting HHS from withholding **[*8]** from RTMD the records requested pursuant to the FOIA and directing HHS to produce such records. On May 8, 2008, the Alabama District Court entered an Order granting partial summary judgment in favor of RTMD, finding that the 1979 Injunction did not apply to RTMD's FOIA requests and, further, that the requested data was not protected by Exemption 6. The Alabama District Court ordered HHS to release the requested data in response to RTMD's FOIA requests from that point forward. HHS appealed the decision to the Eleventh Circuit, arguing that the 1979 Injunction prevented disclosure of the data requested. On December 18, 2009, the Eleventh Circuit vacated the opinion of the Alabama court in *Alley v. HHS, 590 F.3d 1195 (11th Cir. 2009)*, upholding the 1979 Injunction based solely on the appellate posture of the case. The Eleventh Circuit held that, under the U.S. Supreme Court's opinion in *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc., 445 U.S. 375, 384, 100 S. Ct. 1194, 63 L. Ed. 2d 467 (1980)*, an injunction issued by one court against the disclosure of information may not be collaterally attacked in another court in a FOIA lawsuit seeking disclosure of that information. *Alley, 590 F.3d at 1204-1205*.

In 2009, the *Journal* **[*9]** and the non-profit Center for Public Integrity ("CPI") teamed up to investigate Medicare billings. As part of this partnership, the *Journal*

and CPI drafted a FOIA request, submitted by CPI, requesting portions of the LDS Files. When HHS did not respond to the request, CPI filed a lawsuit under FOIA. The FOIA suit was voluntarily dismissed on January 27, 2010 due to settlement. As part of the settlement, Dow Jones purchased from CMS a portion of the LDS File which contained billings for a randomly selected 5% of Medicare recipients. (Doc. 1-B, ¶¶ 5-6). CMS agreed to disclose the LDS Files on the condition that Dow Jones sign a Data Use Agreement (the "Agreement") providing that it would not disseminate information derived from the LDS Files if the information could be used to deduce an individual doctor's identity. (Doc. 1-C, ¶ 17).

The *Journal*'s investigative series uncovered evidence of possible fraud and abuse in the Medicare system. Despite the success of the series, the limits imposed on the use of the LDS Files prevented the *Journal* from fully reporting what it uncovered, and uncovering more. Therefore, on January 25, 2011, Dow Jones filed the instant Motion to Intervene, seeking **[*10]** to dissolve the 1979 Injunction for the following reasons: (1) the Injunction limits the *Journal's* ability to use the LDS Files; (2) in order to obtain the LDS Files, Dow Jones was required to sign an Agreement providing that it would not disseminate information that would identify an individual provider and the provider's Medicare reimbursements; and (3) the Injunction limits the *Journal's* ability to fully report on its findings. Dow Jones is also petitioning the Court for declaratory and injunctive relief against HHS. (Doc. 1).

On April 18, 2011, Alley and RTMD also filed a Motion to Intervene in this action, seeking to dissolve the 1979 Injunction and to assert claims for declaratory and injunctive relief against HHS. (Doc. 20).

In response to Intervening Defendants' Motions, HHS takes no position as to whether Intervening Defendants should be permitted to intervene for the limited purpose of seeking relief from the 1979 Injunction. However, HHS opposes intervention for the purpose of bringing cross-claims seeking declaratory and injunctive relief. (Docs. 8, 33).

This case was referred to the undersigned for preparation of a Report and Recommendation regarding these pending Motions. **[*11]** (Doc. 13). On April 21, 2011, the Court conducted a hearing on the matter. (Doc. 29). Accordingly, this matter is now ripe for judicial determination.

## III. ANALYSIS

### A. Motion to Reopen Case[6]

> 6   There is no opposition to this motion to the extent that it merely reopens the case from "inactive" to "active" status.

On February 4, 2011, Dow Jones filed a Motion to Reopen Case asking the Court to return this case to "active" status. (Doc. 7). In 2009, the Eleventh Circuit decided *Alley, 590 F.3d 1195*, which (among other things) articulated the procedural roadmap for those demanding greater access to Medicare data, and thus potentially needing to challenge the 1979 Injunction. Alley made clear that a "direct attack, instead of a collateral one, is the proper procedure," *id. at 1204*, and that this Court is the proper venue for seeking relief needed to acquire Medicare payment information covered by the 1979 Injunction.

Dow Jones accordingly moved to intervene in this case, served all the parties, and stated its intent to ask the Court to vacate the 1979 Injunction. Upon filing of the Motion to Intervene and associated papers, the docket for this case was placed on the Court's Electronic Case Filing **[*12]** ("ECF") system for the first time. However, ECF continues to show the case as having "closed" status. Dow Jones requests that the Court officially reopen the case to allow it to return to "active" status.

Because this request is unopposed and because Dow Jones followed the procedural roadmap set out by the Eleventh Circuit, this Court can see no reason why Dow Jones' request should be denied. According, the undersigned recommends Dow Jones' Motion to Reopen the Case (Doc. 7) be granted.

### B. Intervening Defendants' Motions to Intervene[7]

> 7   There is no opposition to Intervening Defendants' Motions to Intervene for the limited purpose of seeking relief from the 1979 Injunction. See (Docs. 8, 33).

[HN1] A party seeking to intervene as of right under *Federal Rule of Civil Procedure 24(a)(2)* must show that: (1) its application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair

his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit. *Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989).* **[\*13]** If these requirements are met, the district court *must* allow the movant to intervene. ld. (emphasis added).

## 1. Intervening Defendants' Motions to Intervene are timely

[HN2] When considering a motion pursuant to *Rule 24(a)*, the Court should assess timeliness based on all the surrounding circumstances, including (1) the length of time during which the intervenor knew or should have known of its interest in the case; (2) the extent of prejudice to existing parties as a result of the intervenor's failure to apply as soon as it knew or should have known of its interest; (3) the extent of prejudice to the would-be intervenor if its petition is denied; and (4) the existence of unusual circumstances militating either for or against the application being timely. See *United States v. Jefferson County, 720 F.2d 1511, 1516 (11th Cir.1983); Stallworth v. Monsanto Co., 558 F.2d 257, 264-66 (5th Cir. 1977).*

Here, the Court finds Intervening Defendants' motions are timely. Although the injunction itself is over thirty years old, [HN3] "nothing in *Rule 24(a)* precludes post judgment or even post-appeal intervention." *Tweedle v. State Farm Fire & Cas. Co., 527 F.3d 664, 671 (8th Cir. 2008).* Additionally, it was as **[\*14]** recent as 2009 that this Circuit made clear that the 1979 Injunction still applies to FOIA requests for the LDS Files. *Alley, 590 F.3d at 1204.*[8]

> 8   It is important to recognize that RTMD originally filed suit in the Alabama District Court, rather than challenging the 1979 Injunction in this Court. However, the Eleventh Circuit ruled otherwise, holding that RTMD was required to challenge the Injunction before the Middle District of Florida.

Even assuming *arguendo* that there had been a substantial delay, no existing party would be prejudiced by intervention at this time as there has been no activity in this case for nearly thirty years. Additionally, the parties do not dispute whether Dow Jones and RTMD may intervene as a matter of right under *Rule 24*, and thus are not prejudiced by the timing of these Motions.

There are additional circumstances militating in

favor of determining that the applications are timely. For example, both the Medicare data at issue and the reasons for protecting that data from disclosure may be outdated. In 1979, Medicare's primary function was to pay doctors for their services and the reimbursement system was geared toward that goal; thus, Medicare reimbursed doctors **[\*15]** for "reasonable" charges that were not disclosed to the public and that were set, in part, by the doctors themselves in their own "discretion." However, the Omnibus Budget Reconciliation Act of 1989 changed Medicare reimbursements from a generous "discretionary fee" system to a non-discretionary fee schedule that is public information.

This fundamental change in Medicare reimbursement may have eliminated the privacy interests that favored the physicians in Florida Medical Association. Now that Medicare fees are set by Congress and are public information, disclosure of the requested data no longer exposes an individual doctor's "discretionary" billing practices to public scrutiny, or to comparison by competitors. Additionally, today, the majority of physicians practice as corporate or business entities which, as a matter of law, have no privacy interest in the requested Medicare data. Together, these changes may have altered the privacy interests that were at issue in Florida Medical Association.[9]

> 9   Some additional changes include: The 1982 Medicare Utilization and Quality Control Peer Review Program (*42 U.S.C. 1320c et. seq.* and *42 U.S.C. 1395y(g)*); The Deficit Reduction Act of 1984 (Public Law 98-369); **[\*16]** and the 2003 Medicare Prescription Drug, Improvement and Modernization Act of 2003 (*42 U.S.C. §1395cc-3(b)*).

Therefore, in light of the foregoing, as well as the direction of Eleventh Circuit, Intervening Defendants have met all the elements of timeliness under *Rule 24(a).*[10]

> 10   Courts faced with similar injunctions have deemed timely motions to intervene filed decades after an injunction was entered. See, e.g., *Moses v. Washington Parish Sch. Bd., 379 F.3d 319, 321 (5th Cir. 2004)* (private school permitted to intervene in desegregation case to seek relief from 1974 injunction enjoining state from providing school with material aid).

A-22

**2. Intervening Defendants have a direct interest in the subject matter of this action which can be protected only by intervention**

Both Dow Jones and RTMD have attempted to access the LDS Files, and their requests have been circumscribed by the 1979 Injunction. See *Alley, 590 F.3d at 1203-04*. Thus, both Intervening Defendants have an interest in the dissolution of the 1979 Injunction. See *John Doe No.1 v. Glickman, 256 F.3d 371, 380 (5th Cir. 2001)* ([HN4] FOIA requester entitled to intervene as of right in action designed to prevent the government from disclosing the **[*17]** relevant information); *Campaign for Family Farms v. Glickman, 200 F.3d 1180, 1184 (8th Cir. 2000)* (FOIA requester permitted to intervene as a defendant in reverse FOIA action).

Additionally, both Dow Jones and RTMD are "so situated that the disposition of the action may as a practical matter impair or impede [their] ability to protect" their interest in obtaining Medicare claims data. See *Chiles, 865 F.2d at 1212 n. 15*. Furthermore, the decision in Alley noted that petitioning this Court is the only method for challenging the 1979 Injunction and thus gaining access to the information contained in the LDS Files. *Alley, 590 F.3d at 1204*. Therefore, Intervening Defendants have a direct interest in the subject matter of this action which can be protected only by intervention.

**3. Intervening Defendants' interest are not adequately represented by existing parties**

Intervening Defendants interests are not "adequately represented by existing parties." See *Chiles, 865 F.2d at 1212 n.15*. Although HHS and Intervening Defendants would become co-defendants, their interests are in many ways adverse. Indeed, in light of the 1979 Injunction, HHS has actively opposed release of similar information in subsequent **[*18]** litigation. See *Alley, 590 F.3d at 1200-01*; *Consumers' Checkbook v. HHS, 554 F.3d 1046, 384 U.S. App. D.C. 306 (D.C. Cir. 2009)*.

With regarding to Intervening Defendants' interests, Dow Jones represents the interests of a nationwide media organization, seeking to establish its rights to purchase Medicare information from HHS via contract, as well as to obtain Medicare data by means of a FOIA request. In contrast, RTMD's interest is in the full disclosure of Medicare data, via the processing of FOIA requests, in order to provide benefit to its clients. In light of the foregoing, Dow Jones and RTMD are not similarly situated to the point that either party could adequately represent the interests of the other.

Accordingly, the undersigned finds Intervening Defendants Dow Jones and RTMD have met all criteria pursuant to *Rule 24(a)* and recommends their Motions to Intervene (Docs. 1, 20) be granted.

**C. Scope of the Intervention**

As abovementioned, no party disputes that Intervening Defendants Dow Jones and RTMD may intervene as a matter of right under *Rule 24(a)*. While not opposing intervention for the purpose of dissolving the 1979 injunction, HHS contends that the Court should deny intervention for the purpose of **[*19]** bringing cross-claims seeking declaratory and injunctive relief.

The Court disagrees with HHS's contention and finds that limiting the scope of intervention at this time would require prejudging complex issues, which is procedurally improper and substantively unfounded. See *United States v. Exxon Corp., 773 F.2d 1240, 1306 (Temp. Emer. Ct. App. 1985)* (holding that [HN5] it is "very doubtful ... a court has the right to make significant inroads on the standing of an intervenor of right; and in particular, it should not be allowed to limit him in the assertion of counter-claims and other new claims."). Where other courts have imposed limits on the scope of intervention, the limitations have been purely "reasonable conditions of a housekeeping nature." See *Columbus-America Discovery Group v. Atlantic Mut. Ins. Co., 974 F.2d 450, 469 (4th Cir. 1992)*; see also *Murphy v. Towmotor Corp., 642 F. Supp. 22, 24 (N.D. Ill. 1985)*.[11] HHS is not asking the Court to place conditions on intervention as a housekeeping matter; rather, it is requesting the Court dismiss Intervening Defendants' cross-claims. Such an inquiry is more properly considered on a motion to dismiss, not a motion to intervene.[12]

11    The **[*20]** only two cases HHS cites to the contrary are inapposite. (Doc. 8, p. 11). First, *Southern v. Plumb Tools, 696 F.2d 1321, 1321-23 (11th Cir. 1983)*, was a diversity action that applied state law "requir[ing] conditions to be imposed on an intervening insurance company's participation at trial." Second, *United States v. South Fla. Water Mgmt. Dist., 922 F.2d 704, 707 (11th Cir. 1991)*, merely contemplates "housekeeping" limitations. *Id. at 710 n.9* (e.g., requiring intervenors to share a single set of

A-23

documents, respond to interrogatories, or limit the number of counsel). Because the intervenor had an interest in only one of four counts, the intervention could be limited to that count or a separate trial could be ordered on the other counts. *Id. at 711.*

12   Indeed, Dow Jones' Answer to Complaints of Florida Medical Association, Inc., et al. and American Medical Association, *et al.;* Cross-Claims for Declaratory and Equitable Relief; and Counter-Claim for Equitable Relief has not even been filed at this time. Rather, it is on the docket as an attachment to Dow Jones' Motion to Intervene. See (Doc. 1-A). Therefore, it is premature to dismiss claims not yet filed.

HHS argues that Intervening Defendants' **[*21]** cross-claims must be evaluated under *Rule 24*'s standard for intervention, but this is not the test. [HN6] The same standards for counter-claims and cross-claims by original parties "apply with full force to an intervenor of right under *Rule 24(a).*" *Atlantis Dev. Corp. v. United States, 379 F.2d 818 (5th Cir. 1967).* "*Rule 13* directs that ... cross-claims may, be filed by any person entitled to file a pleading. So once intervention has been granted the intervener becomes a 'party', within the meaning of the Rules, 'entitled to litigate fully on the merits.'" *Hartley Pen Co. v. Lindy Pen Co., 16 F.R.D. 141, 153 (S.D. Cal. 1954)* (citations omitted).

HHS asks the Court to preemptively limit the intervention because HHS *may* be able to prevail on a future motion to dismiss. However, [HN7] courts "should not resolve the motion for intervention by reference to the ultimate merits of the claim the intervenor seeks to assert unless the allegations are frivolous on their face." *Turn Key Gaming, Inc. v. Oglala Sioux Tribe, 164 F.3d 1080, 1081 (8th Cir. 1999)* (citations omitted). HHS cites no case in which a court limited intervention based on a prediction of whether a intervenor's claim might be successful,[13] **[*22]** but asks the Court to prejudge Intervening Defendants' cross-claims based on its idea of how they might be argued.[14]

13   *Anderson v. City of Alpharetta, 770 F.2d 1575, 1576, 1580 (11th Cir. 1985)* (per curiam) is inapposite insofar as it denied intervention "for a multitude of reasons," including that putative intervenors' motions to intervene were not even before the court, and that they neglected to submit

briefing as ordered. To be sure, the court also called their intervention "futile," but this reflected failure to even allege a legally-protectable interest in the action whatsoever, which no one has argued in the instant case. See (Doc. 8, p. 16).

14   As Intervening Defendants' Motions to Intervene have not yet been granted, the parties may choose to modify their Answer before filing - all the more reason to wait until intervention is granted and the claims are properly filed before litigating them on the merits.

Additionally, this Court should not reach the justiciability issues HHS raises at this stage, as they are premature. Furthermore, the specific venue requirements of the FOIA and the Privacy Act would not require dismissal, as suggested by HHS, since Intervening Defendants are **[*23]** not advancing a FOIA/Privacy Act claim. But even if such claims were asserted and could not otherwise be brought in this district, venue would still be proper under the pendant venue doctrine. See, e.g., *Beattie v. U.S., 756 F.2d 91, 101-02, 244 U.S. App. D.C. 70 (D.C. Cir. 1984)* ([HN8] courts may cure defects where venue is proper for one of several claims arising out of the same core of operative facts).

The Court need not wade into these brambles, which are far too complex to take up on (or serve as grounds to limit) intervention. See *Federal Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist., 983 F.2d 211, 216 (11th Cir. 1993)* ([HN9] "Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action."). Therefore, the Court need not, and should not, preemptively decide the merits of this case.

## IV. CONCLUSION

In sum, the undersigned recommends the Court reopen the above-captioned case and move it from "closed" to "active" status. Additionally, the undersigned finds Intervening Defendants Dow Jones and RTMD have met all criteria pursuant to *Rule 24(a)* and recommends that their Motions **[*24]** to Intervene be granted in full.

Accordingly, after due consideration, it is respectfully

**RECOMMENDED:**

2011 U.S. Dist. LEXIS 111180, *24

1. Intervening Defendant Dow Jones and Company, Inc.'s Motion to Reopen Case (Doc. 7) be **GRANTED.**

2. Intervening Defendant Dow Jones and Company, Inc.'s Motion to Intervene (Doc. 1) be **GRANTED.**

3. Intervening Defendant Jennifer D. Alley and Real Time Medical Data, LLC's Motion to Intervene (Doc. 20) be **GRANTED.**

**DONE AND ENTERED** in Chambers in Jacksonville, Florida this 18th day of May, 2011.

/s/ Monte C. Richardson

MONTE C. RICHARDSON

UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GREATER NEW ORLEANS FAIR** | **CIVIL ACTION** |
| **HOUSING ACTION CENTER, et al** | |
| | |
| **VERSUS** | **NO:  06-7185-HGB-SS** |
| | |
| **ST. BERNARD PARISH, et al** | |

## <u>ORDER</u>

PROVIDENT'S MOTION TO INTERVENE (Rec. doc. 131)

**GRANTED**

Before the undersigned is the motion of Provident Realty Advisors, Inc. ("Provident") to intervene in this proceeding.  On October 3, 2006, the plaintiffs, Greater New Orleans Fair Housing Action Center ("GNO") and Wallace Rodrigue ("Rodrigue"), instituted this action, alleging violations of the Fair Housing Act of 1968, 42 U.S.C. § 3601, and 42 U.S.C. §§ 1981-83.  Named as defendants were St. Bernard Parish ("Parish") and St. Bernard Parish Council ("Council").  After Hurricane Katrina, the Council passed ordinances which are referred to as the multi-family moratorium, the single-family rental moratorium, the single-family conditional use permit ordinance, and the blood relative ordinance.  The plaintiffs alleged that the ordinances were enacted with the intent and effect of discriminating against minorities and they sought a preliminary injunction to stay the operation of the blood relative ordinance.  In January 2007, the defendants rescinded three of the ordinances, and enacted a further ordinance and established criteria for its implementation.

On February 27, 2008, the parties agreed to a consent order with injunctive relief; they accepted the continuing jurisdiction of the Court for a period of three years to resolve disputes under

A-26

the consent order; they agreed to pay the plaintiffs $32,500.00 in settlement of the claim for damages; and they made provision for attorneys' fees and costs. Rec. doc. 114 at 6-8. Pursuant to the terms of the injunctive relief, St. Bernard Parish was enjoined from violating the terms of the Fair Housing Act. Specifically, St. Bernard Parish agreed that it will not: (a) refuse to rent a dwelling unit to any person because of race; (b) deny minority citizens the same rights as are enjoyed by white citizens to make and enforce contracts, to lease real property; (c) deny any person equal protection of the law by discriminating on the basis of race in the leasing of real property and (d) retaliate against Rodrigue or any other person who alleges that defendants violated the Fair Housing Act. Rec. doc. 114 at 6-7. There were further specific provisions concerning applications for permissive use permits to rent single-family residences. Id.

On December 18, 2008, GNO and Provident filed a motion to enforce the February 7, 2008 Consent Order. Rec. doc. 126. The movers report that on September 16, 2008 the Council passed a moratorium on the construction of structures with more than 5 units. They contend that the moratorium: (a) has the same disparate impact on minorities as the blood relative ordinance;(b) it halts four affordable housing developments which Provident is attempting to build; and (c) it is a clear violation of the Fair Housing Act and the Consent Decree. The motion to enforce is brought under the general provision of the injunction which enjoined the Parish and Council from violating the Fair Housing Act. Rec. doc. 114.

On December 22, 2008, Provident filed its motion for leave to intervene. It reports that: (a) in early 2008, it learned of tax credits and grants available to encourage affordable housing development in St. Bernard Parish; (b) it is working to develop four such projects in St. Bernard Parish; (c) in August 2008, an editorial in a St. Bernard Parish newspaper criticized the

2

A-27

developments; (d) on September 16, 2008, the Council passed the moratorium; (e) Provident incurred over $400,000 in land and development costs; (f) its costs will continue to accrue; and (g) if the project is delayed, it will loose the tax credits and grants. It urges that it is entitled to intervene as a matter of right. In the alternative, it contends that the Court should allow it to permissively intervene. Rec. doc. 131.

The Parish and Council contend that Provident is not entitled to intervene as a matter of right. Pursuant to Fed. R. Civ. P. 24(a)(2), a party may intervene as a matter of right if it demonstrates that: (1) its motion is timely; (2) it claims an interest relating to the property or transaction that is the subject of the action; and (3) it is so situated that disposing of the action may as a practical matter impair its ability to protect its interest, unless existing parties adequately represent that interest. The Parish and Council contend that the Provident "complaint" involves a transaction or matter (the moratorium passed on September 16, 2008) which is different from the transaction or matter (the blood relative ordinance) in the Rodrigue "complaint," and therefore, Provident cannot satisfy the second requirement for intervention of right. The distinction made by the defendants between the blood relative ordinance and the moratorium against multi-family developments is without merit because the defendants were enjoined from violating the Fair Housing Act. The Consent Order remains in effect for three years. GNO contends that the moratorium violates that Act. It filed its motion to enforce the consent decree within the three year limit. Provident has a significant protectable interest in the outcome of this motion. This satisfies the second requirement for intervention of right. Stallworth v. Monsanto Co., 558 F.2d 257, 268 (5th Cir. 1977) and 7C Wright, Miller and Kane, Federal Practice and Procedure §1908.1 at 308-09 (3d ed. 2007).

In response to Provident's alternative request that it be allowed to permissively intervene, the Parish and Council contend that its request is not timely. This is a requirement for both an intervention of right or a permissive intervention. In <u>Stallworth</u>, the Fifth Circuit enumerated four factors that must be considered in passing on the timeliness of a petition for leave to intervene: (1) the length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. 558 F.2d at 264-266.

The defendants rely on <u>Jones v. Caddo Parish School Board</u>, 735 F.2d 923, 927 (5th Cir. 1984) (en banc). The decision is inapposite. <u>Jones</u> involved 1973 school desegregation plan, which was approved by the United States. Some African-American parents and students sought to intervene on the ground that the plan maintained too many racially identifiable one-race schools. They argued that both the plaintiffs and the United States were not adequately representing their interests. The intervention was denied by the district court. Although the decision was reversed, the would-be intervenors did not pursue intervention after the appeal. In 1980-81, the United States and the School Board negotiated a new consent decree. A person sought to intervene making the same contention as was made in 1973. The Fifth Circuit found her application was not timely.

Provident's interest in the case must be measured from the time of the passage of the moratorium and not from the passage of the blood relative ordinance. There will be no prejudice

to the defendants because the issue which Provident seeks to press is also being pursued by GNO. Provident's financial commitment to the development demonstrates that it will be prejudiced if it is not permitted to intervene. There are no unusual circumstances militating either for or against a determination that the application is timely. Based on the Stallworth factors, Provident's motion for leave to intervene is timely.

The defendants do not raise any other challenge to Provident's contention that it is entitled to intervene of right. Provident's motion will be granted. Nothing in this order should be interpreted as a determination that the passage of the moratorium is a violation of the consent decree or the Fair Housing Act. This is reserved to the District Judge.

IT IS ORDERED that Provident's motion for leave to intervene (Rec. doc. 131) is GRANTED.

New Orleans, Louisiana, this 15th day of January, 2009.

**SALLY SHUSHAN**
**United States Magistrate Judge**

5

254 Fed.Appx. 769
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial
decisions issued on or after Jan. 1, 2007. See
also Eleventh Circuit Rules 36-2, 36-3. (Find
CTA11 Rule 36-2 and Find CTA11 Rule 36-3)
United States Court of Appeals,
Eleventh Circuit.

HOLLYWOOD COMMUNITY SYNAGOGUE, INC.,
United States of America, Plaintiffs–Appellees,

v.

CITY OF HOLLYWOOD, FL, Sal
Oliveri, Defendants–Appellees,

v.

Lisa Self, Heidi O'Sheehan, Richard Johnson,
Carolyn Johnson, Proposed Intervenors–Appellants,
Patrici Petrillo, Eva Petrillo, Proposed Intervenors.

No. 06–14343    |    Non–Argument
Calendar.    |    Nov. 20, 2007.

**Synopsis**
**Background:** Synagogue sued municipality, claiming that
denial of special exception providing for continued operations
out of single family houses located in area zoned residential
violated its federal and state rights. Property owners moved to
intervene. The United States District Court for the Southern
District of Florida, D.C. Docket Nos. 04–61212–CV–
JAL & 05–60687–CV–JAL, denied the motion. Intervenors
appealed.

**Holding:** The Court of Appeals held that motion for
intervention was untimely.

Affirmed.

West Headnotes (1)

[1]    **Federal Civil Procedure**

⬤ **Time for intervention**

Property owners' motion to intervene as a matter
of right, whereby they sought to challenge
proposed consent decree between synagogue and
municipality on grounds that it violated their
rights to due process and quiet enjoyment of their
property, was untimely, where property owners
were aware that city may not have represented
their interests in proceeding in light of city's
opposition to their attempted intervention in
a state court action, intervention by property
owners would have substantially prejudiced
existing parties by practically undoing 22
months of litigation and settlement negotiations,
any prejudice to the owners would have
been minimal as they could litigate the
constitutionality of the consent decree in another
forum, and no unusual circumstances otherwise
justified intervention. U.S.C.A. Const.Amend.
14; Fed.Rules Civ.Proc.Rule 24(a), 28 U.S.C.A.

6 Cases that cite this headnote

**Attorneys and Law Firms**

**\*770** Vincent F. Vaccarella, Miami, FL, for Proposed
Intervenors–Appellants, Proposed Intervenors.

Jason Gordon, Arnstein & Lehr LLP, Ft. Lauderdale, FL,
Jessica Dunsay Silver, U.S. Dept. of Justice, Washington,
DC, for Plaintiffs–Appellees.

A. Hinda Klein, Carlos Daniel Cabrera, Conroy Simberg
Ganon Krevans Abel Lurvey Morrow & Schefar, Hollywood,
FL, Joseph A. Garcia, W. Todd Boyd, Carlos E. Mustelier, Jr.,
Boyd Mustelier Smith & Parker, P.L., Miami, FL, Franklin
L. Zemel, Arnstein & Lehr LLP, Ft. Lauderdale, FL, Lisa J.
Stark, Washington, DC, for Defendants–Appellees.

Appeal from the United States District Court for the Southern
District of Florida. D.C. Docket Nos. 04–61212–CV–JAL &
05–60687–CV–JAL.

Before ANDERSON, BARKETT and COX, Circuit Judges.

**Opinion**

PER CURIAM:

Hollywood Community Synagogue, I... v. City of Hollywood, 254 Fed.Appx. 769...

Case: 14-11157    Date Filed: 07/17/2014    Page: 92 of 98

The Appellants–Proposed Intervenors appeal the district court's denial of their motion to intervene as defendants in a civil action between the Hollywood Community Synagogue and the United States as plaintiffs and the City of Hollywood and Sal Oliveri as defendants. Because we find no error in the district court's determination that the Appellants' motion was untimely, we affirm denial of the motion and dismiss the appeal.

The Appellants moved to intervene as a matter of right under Fed.R.Civ.P. 24(a) on July 6, 2006 (R.7–382), one day before the district court approved a consent decree to which all parties to the action agreed. They sought intervention to challenge the proposed decree on the grounds that it violated their rights to due process and quiet enjoyment of their property. (R.7–382 at 2.) After considering the factors in Rule 24(a), the district court denied their motion on the basis that they had only an "extremely tenuous" legal interest in the action (R.7–384 at 9) and, even assuming a colorable legal interest, their motion was untimely (R.7–384 at 15).

We have jurisdiction over this appeal under the "anomalous rule," whereby "the court has jurisdiction to determine whether the denial of intervention [is] proper. If the district court was correct in denying the motion to intervene, this court's jurisdiction evaporates and we must dismiss the appeal for want of jurisdiction. If the district court erred, we retain jurisdiction and must reverse." *Davis v. Butts,* 290 F.3d 1297, 1299 (11th Cir.2002) (quoting *FTC v. Am. Legal Distribs., Inc.,* 890 F.2d 363, 364 (11th Cir.1989)) (internal quotation marks omitted). This rule only applies where intervention was sought as a **\*771** matter of right under Rule 24(a). *Id.* Because the Appellants moved to intervene under Rule 24(a), we have jurisdiction.

Under Rule 24(a), a nonparty is entitled to intervene where he can show:

> (1) that the intervention application is timely; (2) that an interest exists relating to the property or transaction which is the subject of the action; (3) that disposition of the action, as a practical matter, may impede or impair the ability to protect that interest; and (4) the existing parties to the lawsuit inadequately represent the interests.

*Fed. Savs. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.,* 983 F.2d 211, 215 (11th Cir.1993) (citing *Chiles v.*

*Thornburgh,* 865 F.2d 1197, 1213 (11th Cir.1989)). The Supreme Court has held that the timeliness of a motion to intervene is a threshold factor that must be satisfied before the other factors should be considered. *NAACP v. New York,* 413 U.S. 345, 365, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973) ("If [a motion to intervene] is untimely, intervention must be denied. Thus, the court where the action is pending must first be satisfied as to timeliness."). And, although we typically review denial of a motion to intervene de novo, we have consistently reviewed a district court's timeliness determination for abuse of discretion. *See Meek v. Metro. Dade County,* 985 F.2d 1471, 1477 (11th Cir.1993); *Campbell v. Hall–Mark Elecs. Corp.,* 808 F.2d 775, 777 (11th Cir.1987); *United States v. Jefferson County,* 720 F.2d 1511, 1516 (11th Cir.1983).

Analysis of the timeliness of a motion to intervene must account for the chronology leading up to the motion and

> (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Jefferson County,* 720 F.2d at 1516.

Applying these factors, the district court found that the Appellants' motion was untimely. (R.7–384 at 15.) The court found that the Appellants were aware that the City may not represent their interests as early as February 2003 in light of the City's opposition to the Appellants' attempted intervention in a state court action arising from the same dispute. (R.7–384 at 12–13.) The court further found that intervention by the Appellants would substantially prejudice the existing parties by practically undoing twenty-two months of litigation and settlement negotiations culminating in a consent decree. (R.7–384 at 14.) Finally, the court concluded that prejudice to the Appellants would be minimal as they could litigate the constitutionality of the consent decree in another forum

A-32

(R.7–384 at 15) and that no unusual circumstances justified intervention (R.7–384 at 15). We find no abuse of discretion in the court's conclusion. Because the Appellants' motion was untimely, we need not consider whether the Appellants satisfied the remaining Rule 24(a) factors. *See NAACP*, 413 U.S. at 369, 93 S.Ct. at 2604–05.

As a consequence of affirming denial of the motion to intervene, we dismiss the appeal for lack of jurisdiction, *Jefferson County*, 720 F.2d at 1515, and do not consider the Appellants' argument that they were entitled to a hearing before the **\*772** district court approved the consent decree.[1]

[1] The Government's motion to reconsider and grant its motion to supplement the record and file a supplemental index is **DENIED**.

**AFFIRMED.**

**Parallel Citations**

2007 WL 4105372 (C.A.11 (Fla.))

---

End of Document    © 2014 Thomson Reuters. No claim to original U.S. Government Works.

542 Fed.Appx. 747
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial
decisions issued on or after Jan. 1, 2007. See
also Eleventh Circuit Rules 36-2, 36-3. (Find
CTA11 Rule 36-2 and Find CTA11 Rule 36-3)
United States Court of Appeals,
Eleventh Circuit.

Richard P. LINDSEY, Plaintiff–Appellee,

v.

FAYETTE COUNTY BOARD OF COMMISSIONERS,
Chairperson Herb Frady, in his official
capacity, et al., Defendants–Appellees,
Ali Abdur–Rahman, Alisha Abdur–
Rahman, Interested Parties–Appellants.

No. 12–15770.    |    Oct. 3, 2013.

## Synopsis

**Background:** Non-parties moved to intervene in civil action challenging county board's districts as unconstitutional. The United States District Court for the Northern District of Georgia denied the motion, and the non-parties appealed.

**Holding:** The Court of Appeals held that denial of motion to intervene was warranted.

Affirmed in part, and dismissed in part.

Jordan, Circuit Judge, filed concurring opinion.

West Headnotes (1)

[1]    **Federal Civil Procedure**
          👉 **Time for intervention**
       **Federal Civil Procedure**
          👉 **Particular Intervenors**
       Denial of non-parties' motion to intervene in civil action challenging the constitutionality of

county board's districts was warranted, where intervenors lacked standing and their motion was untimely. Fed.Rules Civ.Proc.Rule 24(a, b), 28 U.S.C.A.

Cases that cite this headnote

## Attorneys and Law Firms

**\*748** Richard P. Lindsey, Lindsey Law Firm, PC, Peachtree City, GA, pro se.

Wayne B. Kendall, Wayne B. Kendall, PC, Atlanta, GA, Interested Party–Appellant.

Anne Ware Lewis, Frank B. Strickland, Bryan P. Tyson, Strickland Brockington Lewis, LLP, Atlanta, GA, for Defendant–Appellee.

Appeal from the United States District Court for the Northern District of Georgia. Docket No. 3:12–cv–00040–TCB.

Before HULL, JORDAN, and EDMONDSON, Circuit Judges.

## Opinion

PER CURIAM:

Ali and Aisha Abdur–Rahman ("Intervenors") appeal from the district court's order denying their post judgment motion to intervene as defendants in a civil action. Appellees—plaintiff and defendants in the underlying action—have filed motions to dismiss the appeal, which we have construed as motions for summary affirmance. We grant Appellees' motions; we affirm in part and dismiss in part.

In the underlying civil action, Plaintiff–Appellee Richard Lindsey sought declaratory and injunctive relief, alleging that the Fayette County Board of Commissioners districts were unconstitutional. Shortly after Lindsey filed his complaint, the parties filed a joint motion seeking, among other things, the approval of a consent decree and entry of final judgment. The district court issued the consent decree and terminated the case. The district court retained jurisdiction over the case only for purposes of enforcing the consent decree.

Several months after the case was terminated, Intervenors filed a motion to intervene as defendants, pursuant to Fed.R.Civ.P. 24(a) and (b). The district court issued an order

staying the action pending resolution of the intervention motion.

The district court ultimately denied Intervenors' motion to intervene based on two independent grounds: (1) Intervenors failed to demonstrate standing to continue the suit after the original parties had settled, as required by *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1330 (11th Cir.2007); and (2) "[e]ven if Intervenors **\*749** had standing," they failed to show that their motion was timely, as required by Fed.R.Civ.P. 24(a) and (b).[1]

[1]  The district court later issued an order imposing sanctions against Intervenors' lawyer under Fed.R.Civ.P. 11. Intervenors appealed separately from that order, and that appeal is docketed as No. 13–10895.

In this appeal, Intervenors have filed a motion to stay the district court's sanctions order. Because the district court's sanctions order is not properly before us in this appeal, we lack jurisdiction to consider the motion. *See Holloman v. Mail–Well Corp.*, 443 F.3d 832, 844–45 (11th Cir.2006) (dismissing an appeal from a sanctions order for lack of jurisdiction where sanctions were imposed only on the lawyer when the lawyer failed to list himself as an appellant in the notice of appeal).

In their initial appellate brief, Intervenors make no argument challenging the district court's denial—on the ground of untimeliness—of their motion to intervene. Instead, Intervenors raise the timeliness issue for the first time in their reply brief. So, Intervenors have waived the timeliness argument. *See Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1310 n. 17 (11th Cir.2012).

Because Intervenors fail to challenge a dispositive issue, they cannot prevail on appeal. *See NAACP v. New York*, 413 U.S. 345, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973) (explaining that a court considering a motion to intervene "must first be satisfied as to timeliness" and, if the motion to intervene "is untimely, intervention must be denied."). No substantial question exists for the outcome of the case; we grant Appellees' motions for summary affirmance.[2] *See Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir.1969) (summary disposition is necessary and proper when "one of the parties is clearly right as a matter of law so that there can be no substantial question as to the outcome of the case....").

[2]  Because we grant Appellees' motions for summary affirmance based on Intervenors' failure to appeal the

timeliness-of-the-motion issue, we need not address Appellees' alternative argument that Intervenors failed to file a timely appellate brief.

Intervenors were not parties to the lawsuit, and their motion to intervene was denied properly. As a result, they lack standing to challenge the consent decree. *See Marino v. Ortiz*, 484 U.S. 301, 108 S.Ct. 586, 587, 98 L.Ed.2d 629 (1988) ("only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment"). To the extent Intervenors seek to challenge the district court's issuance of the consent decree, we dismiss the appeal.

AFFIRMED IN PART; DISMISSED IN PART.

JORDAN, Circuit Judge, concurring.

I agree that we must affirm the district court's denial of the motion to intervene because Ali and Alisha Abdur–Rahman did not contest, in their initial brief, the district court's ruling that their motion was untimely. And I also agree that, as a result, we must dismiss the challenge to the underlying consent decree. I therefore join the Court's opinion in full.

There are, however, troubling indications that the lawsuit filed by Richard Lindsey against Fayette County was the product of collusion. First, several days before the lawsuit was filed, Steve Brown—a Fayette County Commissioner—asked the Attorney General of Georgia for an opinion as to whether the County could "sue itself" through a "pre-arranged agreement" in which it would "pay [ ] the expenses of a [third] party to file litigation" against the County. Second, two Fayette County officials-Commissioner **\*750** Brown and Commissioner Robert Horgan—testified under oath (at their depositions in a related case) that Scott Bennett, the Fayetteville County Attorney, told them that he had asked Mr. Lindsey to file the lawsuit against the County in order to get the February 2012 redistricting plan approved. Third, emails between Mr. Lindsey and Mr. Bennett appear to confirm that Mr. Bennett (counsel for the would-be-defendants) drafted the complaint for Mr. Lindsey (the would-be-plaintiff) to file against his clients, and that both men then worked together to finalize the document before it was filed in court. Fourth, less than two weeks after the lawsuit was filed, Mr. Lindsey and the County filed a joint motion for approval of a consent decree.

Mr. Lindsey, in a letter he sent to counsel for the Abdur–Rahmans, denied that there was any collusion. But if it is true that the lawsuit was collusive, then the district court lacked

Article III jurisdiction to entertain it, *see generally United States v. Johnson,* 319 U.S. 302, 304–05, 63 S.Ct. 1075, 87 L.Ed. 1413 (1943), and Mr. Lindsey and Mr. Bennett may have improperly manufactured (without the district court's knowledge) a case or controversy. In my opinion, the district court should inquire further into how this lawsuit came to be filed and settled.

---

**End of Document**      © 2014 Thomson Reuters. No claim to original U.S. Government Works.

A-36

519 Fed.Appx. 320
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial
decisions issued on or after Jan. 1, 2007. See
also Fifth Circuit Rules 28.7, 47.5.3, 47.5.4.
(Find CTA5 Rule 28 and Find CTA5 Rule 47)
United States Court of Appeals,
Fifth Circuit.

Joyce Angela SHATTEEN, Plaintiff–Appellant,

v.

JP MORGAN CHASE BANK,
N.A., Defendant–Appellee.

No. 12–40862    |    Summary
Calendar.    |    May 15, 2013.

**Attorneys and Law Firms**

Joyce A. Shatteen, Dallas, TX, pro se.

Marcie Lynn Schout, Esq., William Lance Lewis, Esq., Quilling, Selander, Lownds, Winslett & Moser, P.C., Dallas, TX, for Defendant–Appellee.

Appeal from the United States District Court for the Eastern District of Texas, No. 4:10–CV–107.

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

**Opinion**

PER CURIAM: [*]

[*]     Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Joyce Shatteen defaulted on her home mortgage. Proceeding *pro se*, she appeals **\*321** the dismissal of claims against her loan servicer, JPMorgan Chase Bank, N.A. ("JPMorgan Chase"). We affirm.

**I.**

After refinancing, Shatteen executed a deed of trust and promissory note in 1999. In 2006, she and her original servicer, Washington Mutual, agreed to a loan modification that required monthly payments of $1052.62. By early 2008, Shatteen had fallen behind and began negotiating a further modification with Washington Mutual. She last made a payment on May 30, 2008.

After Washington Mutual was closed by the Office of Thrift Supervision in September 2008, JPMorgan Chase acquired the right to service Shatteen's loan. [1] In a letter dated May 15, 2009, Shatteen was offered a loan modification that included a down payment of $3032.70, due May 29, and an initial monthly payment of $1038.99.

[1]     JPMorgan Chase continued to use the name "Washington Mutual" in correspondence with Shatteen.

Though on appeal she denies doing so, the record shows that Shatteen responded to that offer by requesting a sixty-day extension to make the down payment. On June 5, JPMorgan Chase tendered a new written offer that would have entailed monthly payments of $1516.35. Shatteen alleges that, on or about June 8, she was orally offered a loan modification that would have lowered her payments to approximately $1032. For reasons unknown, she never received any paperwork substantiating that offer. After JPMorgan Chase initiated foreclosure, Shatteen sued. The district court dismissed all of her claims on summary judgment.

**II.**

Much of Shatteen's briefing focuses on litigation between JPMorgan Chase and other parties. We will not address arguments regarding consent decrees and other litigation made for the first time on appeal. *See, e.g., Leverette v. Louisville Ladder Co., 183 F.3d 339, 342 (5th Cir.1999)* (per curiam). Moreover, Shatteen has no standing to enforce consent decrees to which she is not a party. *See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 750, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).*

By failing to raise it in her opening brief on appeal, Shatteen abandoned any claim that JPMorgan Chase violated the Real Estate Settlement Procedures Act or "recent federal law initiatives." *See Cinel v. Connick, 15 F.3d 1338, 1345 (5th Cir.1994).* [2] She also waived her breach-of-contract claim: Her initial brief alleges that JPMorgan Chase has breached

WestlawNext® © 2014 Thomson Reuters. No claim to original U.S. Government Works.                    1

contracts with "plaintiffs" but does not identify any specific breach applicable to this case. [3]

[2]    Nor does Shatteen's allusion to recent "federal law initiatives" such as the Home Affordable Modification Program state a cognizable claim upon which relief could be granted.

[3]    Shatteen's attempt to revive abandoned claims in her reply brief—by invoking the "plain error" standard—conflates forfeiture and waiver. "An appellant abandons all issues not raised and argued in its initial brief on appeal." *Cinel,* 15 F.3d at 1345.

Similarly, Shatteen fails to press her claims that JPMorgan Chase violated the Texas Deceptive Trade Practices Consumer Protection Act and the Texas Business and Commerce Code. *See Davis v. Maggio,* 706 F.2d 568, 571 (5th Cir.1983) (per curiam). Shatteen mentions both of those statutes in a conclusional fashion but fails **\*322** to cite the applicable legal standard or relevant authority. [4]

[4]    *See United States v. Skilling,* 554 F.3d 529, 568 n. 63 (5th Cir.2009), *vacated in part on other grounds by Skilling v. United States,* ─── U.S. ───, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010).

Both of Shatteen's remaining state law claims—for common-law fraud and promissory estoppel—require a showing of detrimental reliance. [5] She has not demonstrated that she relied on JPMorgan Chase's alleged oral promise of reduced payments, such as by remitting the agreed-upon amount each month. As noted above, she made no payments at all for more than two years before JPMorgan Chase initiated foreclosure proceedings.

[5]    *See Allstate Ins. Co. v. Receivable Fin. Co.,* 501 F.3d 398, 406 (5th Cir.2007) (interpreting Texas law and articulating the elements of common law fraud, which include reliance and injury); *English v. Fischer,* 660 S.W.2d 521, 524 (Tex.1983) (noting that the elements of promissory estoppel include detrimental reliance).

Moreover, Shatteen defaulted on her loan when her monthly payments under the 2006 modification were $1052.62. In her April 2009 loan-modification application, she claimed she could afford monthly payments of between $750 and $1000. It follows, therefore, that she could *not* afford payments of more than $1000 per month. Thus, even assuming the summary judgment evidence supported a finding that JPMorgan Chase made a false oral representation upon which Shatteen relied, its unsubstantiated offer to reduce her monthly payment to $1032 did not result in damage or legal injury.

The summary judgment is AFFIRMED.

### Parallel Citations

2013 WL 2099063 (C.A.5 (Tex.))

---

End of Document    © 2014 Thomson Reuters. No claim to original U.S. Government Works.