No. 14-11157-FF
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

**CONSUMER FINANCIAL PROTECTION BUREAU,**

*Plaintiff-Appellee,*

v.

**UNITED GUARANTY CORPORATION,**

*Defendant-Appellee,*

**PHH CORPORATION, PHH MORTGAGE CORPORATION, PHH HOME
LOANS, LLC, ATRIUM INSURANCE CORPORATION, ATRIUM
REINSURANCE CORPORATION,**

*Intervenor-Defendants-Appellants*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
District Court Case No. 1:13-cv-21189-KMW
_____

**BRIEF OF APPELLEE CONSUMER FINANCIAL PROTECTION
BUREAU**
_____

MEREDITH FUCHS
*General Counsel*
TO-QUYEN TRUONG
*Deputy General Counsel*
CONSUMER FINANCIAL PROTECTION BUREAU     JOHN R. COLEMAN
1700 G Street, NW                        *Senior Counsel*
Washington, D.C. 20552                   KRISTIN BATEMAN
(202) 435-7821                           *Attorney*

No. 14-11157

*PHH Corp. v. Consumer Financial Protection Bureau*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Eleventh Circuit Rule 26.1-1, I hereby certify that Appellants' Certificate of Interested Persons and Corporate Disclosure Statement, filed on April 11, 2014, and included in the Brief of Appellants PHH Corporation, PHH Mortgage Corporation, PHH Home Loans, LLC, Atrium Insurance Corporation and Atrium Reinsurance Corporation (collectively, "Appellants"), filed on April 23, 2014, sets forth a complete list of the trial judge(s), attorneys, persons, associations of persons, firms, partnerships or corporations that have or may have an interest in the outcome of the above captioned appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly-held corporation that owns 10% or more of the party's stock, and other identifiable legal entitles related to a party, except as follows:

Alexis, Anthony, counsel for CFPB

American International Group, Inc., parent corporation of United Guaranty
  (NYSE: AIG)

Auchterlonie, Sarah J., counsel for CFPB

Bateman, Kristin, counsel for CFPB

Fuchs, Meredith, counsel for CFPB

Morris, Lucy, counsel for CFPB

No. 14-11157
*PHH Corp. v. Consumer Financial Protection Bureau*

Posner, Daniel C., counsel for United Guaranty

Truong, To-Quyen, counsel for CFPB


/s/ John R. Coleman
John R. Coleman

## STATEMENT REGARDING ORAL ARGUMENT

The district court's decision denying Appellants' motion to intervene as untimely is supported by existing precedent and well within the bounds of the district court's discretion.  Accordingly, the Consumer Financial Protection Bureau believes that oral argument is not necessary.  If the Court determines that oral argument will facilitate its deliberations and sets the case for argument, the government stands ready to participate in that argument.

# TABLE OF CONTENTS

**<u>Page</u>**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT ..............................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................... i

TABLE OF CONTENTS....................................................................... ii

TABLE OF CITATIONS ....................................................................... iv

STATEMENT OF THE ISSUES...............................................................1

STATEMENT OF THE CASE................................................................1

   Nature of the Case .....................................................................1

   Statement of the Facts and Prior Proceedings ........................................2

   Standard of Review ...................................................................10

SUMMARY OF THE ARGUMENT ....................................................11

ARGUMENT .................................................................................13

  I. The District Court Did Not Abuse Its Discretion by Holding that
    Appellants' Motion to Intervene Was Untimely .........................................13

    A. Appellants Knew or Should Have Known of Their "Interest" in this Case

       Nearly Ten Months Before they Moved to Intervene.............................15

    B. Intervention at this Late Stage Could Prejudice the Parties....................23

    C. Appellants Will Not be Prejudiced by the Denial of their Motion...........25

    D. There Are No Unusual Circumstances Militating in Favor of Finding the

       Motion to Intervene To Be Timely .........................................................29

ii

II. The District Court's Denial of Appellants' Motion to Intervene May Be Affirmed on the Alternative Ground that Appellants Have No Basis to Intervene ...................................................................................................29

    A. Appellants Have No Basis To Intervene as of Right Because they Have No Protectable Interest that Could Be Impaired or Impeded by this Case ...................................................................................................30

    B. Appellants Have No Ground for Permissive Intervention .......................36

CONCLUSION .........................................................................................................38

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF CITATIONS

**<u>CASES</u>**  **<u>Pages</u>**

*Acree v. Republic of Iraq,*
  370 F.3d 41 (D.C. Cir. 2004)................................................................18

*Alley v. HHS,*
  590 F.3d 1195 (11th Cir. 2009)...........................................................18

*Blue Chip Stamps v. Manor Drug Stores,*
  421 U.S. 723, 95 S.Ct. 1917 (1975)...................................................33

*Bonner v. City of Prichard,*
  661 F.2d 1206 (11th Cir. 1981) (en banc).........................................14

*Campbell v. Hall-Mark Electronics Corp.,*
  808 F.2d 775 (11th Cir. 1987).............................................................23

*Chiles v. Thornburgh,*
  865 F.2d 1197 (11th Cir. 1989)...........................................................30

*Cincinnati, I. & W.R. Co. v. Indianapolis U. R. Co.,*
  279 F. 356 (6th Cir. 1922)...................................................................17

*Dillard v. Chilton Cnty. Comm'n,*
  495 F.3d 1324 (11th Cir. 2007)...........................................................16

*EEOC v. Westinghouse Elec. Corp.,*
  675 F.2d 164 (8th Cir. 1982)...............................................................17

*Elliott Indus. v. BP Am. Prod. Co.,*
  407 F.3d 1091 (10th Cir. 2005)...........................................................18

*Fla. Med. Ass'n v. HEW, No. 3:78-cv-178,*
  2011 U.S. Dist. LEXIS 111180 (M.D. Fla. May 8, 2011) ........................... 17, 18

*Fla. Med. Ass'n v. HEW, No. 3:78-cv-178,*
  2011 U.S. Dist. LEXIS 111180 (M.D. Fla. Sept. 26, 2011) ................................18

iv

*Firefighters Local Union No. 1784 v. Stotts*,
    467 U.S. 561, 104 S.Ct. 2576 (1984) ...................................................................35

*FTC v. Am. Legal Distributors, Inc.*,
    890 F.2d 363 (11th Cir. 1989) ..........................................................................14

*Greater New Orleans Fair Housing Action Center v. St. Bernard Parish*,
    641 F. Supp. 2d 563 ...........................................................................................18

*Hollywood Cmty. Synagogue, Inc. v. City of Hollywood, Fl.*,
    254 Fed. Appx. 769 (11th Cir. 2007) ..............................................................28

*King v. Allied Vision, Ltd.*,
    65 F.3d 1051 (2d Cir. 1995) ...............................................................................34

*Koziara v. City of Casselberry*,
    392 F.3d 1302 (11th Cir. 2004) ........................................................................29

*McDonald v. E.J. Lavino Co.*,
    430 F.2d 1065 (5th Cir. 1970) ...........................................................................16

*Meek v. Metro. Dade Cnty.*,
    985 F.2d 1471 (11th Cir. 1993) ........................................................................16

*Myricks v. Fed. Reserve Bank of Atlanta*,
    480 F.3d 1036 (11th Cir. 2007) ........................................................................33

*N.L.R.B. v. Gimrock Constr., Inc.*,
    695 F.3d 1188 (11th Cir. 2012) ........................................................................33

*NAACP v. New York*,
    413 U.S. 345, 93 S.Ct. 2591 (1973) .......................................................... 10, 14

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
    732 F.2d 452 (5th Cir. 1984) (en banc) ............................................................34

*Piambino v. Bailey*,
    610 F.2d 1306 (5th Cir. 1980) ...........................................................................14

*Reeves v. Wilkes,
　　754 F.2d 965 (11th Cir. 1985) ................................................................ 10, 24, 25

*Reynolds v. Butts,
　　312 F.3d 1247 (11th Cir. 2002) ........................................................................33

Reynolds v. G.M. Roberts,
　　202 F.3d 1303 (11th Cir. 2000) ........................................................................34

Reynolds v. G.M. Roberts,
　　251 F.3d 1350 (11th Cir. 2001) ........................................................................19

Reynolds v. McInnes,
　　338 F.3d 1201 (11th Cir. 2003) .................................................................. 32, 33

Reynolds v. McInnes,
　　380 F.3d 1303 (11th Cir. 2004) ........................................................................33

*Reynolds v. Roberts,
　　207 F.3d 1288 (11th Cir. 2000) ....................................................... 32, 33, 35, 36

Reynolds v. Roberts,
　　846 F. Supp. 948 (M.D. Ala. 1994) ..................................................................33

Ross v. Marshall,
　　426 F.3d 745 (5th Cir. 2005) ............................................................................18

Rothenberg v. Sec. Mgmt. Co., Inc.,
　　667 F.2d 958 (11th Cir. 1982) ..........................................................................26

R.S.B. Ventures, Inc. v. FDIC,
　　514 Fed. Appx. 853 (11th Cir. 2013) ...............................................................26

Sapuppo v. Allstate Floridian Ins. Co.,
　　739 F.3d 678 (11th Cir. 2014) .................................................................... 29, 34

Stallworth v. Monsanto Co.,
　　558 F.2d 257 (5th Cir. 1977) ..................................................................... 14, 23

*Tweedle v. State Farm Fire & Cas. Co.*,
    527 F.3d 664 (8th Cir. 2008) .................................................................18

*United Nuclear Corp. v. Cranford Ins. Co.*,
    905 F.2d 1424 (10th Cir. 1990) ............................................................17

*United States v. Allegheny-Ludlum Indus., Inc.*,
    553 F.2d 451 (5th Cir. 1977) ......................................................... 16, 24

*United States v. Armour & Co.*,
    402 U.S. 673, 91 S.Ct. 1752 (1971) ....................................... 21, 22, 35

*United States v. Bank of Am. Corp., No. 13-5112,*,
    --- F.3d ---, 2014 WL 2575426................................................................33

*United States v. City of Hialeah*,
    140 F.3d 968 (11th Cir. 1998) ...............................................................20

*United States v. City of Miami*,
    664 F.2d 435 (5th Cir. 1981) .................................................................20

*United States v. Covington Cnty. Sch. Dist.*,
    499 F.3d 464 (5th Cir. 2007) .................................................................17

*United States v. Jefferson Cnty.*,
    720 F.2d 1511 (11th Cir. 1983) ....................................... 11, 14, 25, 28

*United States v. S. Fla. Mgmt. Dist.*,
    922 F.2d 704 (11th Cir. 1991) ............................................. 30, 34, 36

*United States v. U.S. Steel Corp.*,
    548 F.2d 1232 (5th Cir. 1977) ............................................. 16, 18, 20

## <u>STATUTES</u>

12 U.S.C. § 2607(a) ...................................................................................3

12 U.S.C. § 2607(b) ...................................................................................3

12 U.S.C. § 5481(12) ...............................................................................3

12 U.S.C. § 5481(14) ...............................................................................3

12 U.S.C. § 5491(a) .................................................................................2

12 U.S.C. § 5562 ......................................................................................3

12 U.S.C. § 5563 ......................................................................................3

12 U.S.C. § 5563(b)(4)............................................................................28

12 U.S.C. § 5564 ......................................................................................3

## **RULES**

Fed. R. Civ. P. 24(a)......................................................................... 14, 30

Fed. R. Civ. P. 24(a)(2).............................................................................30

Fed. R. Civ. P. 24(b) .................................................................................14

Fed. R. Civ. P. 24(b)(1)(B) .......................................................................36

Fed. R. Civ. P. 24(c).................................................................................9

Fed. R. Civ. P. 8(c)...................................................................................34

Fed. R. Evid. 201(b)(2) .............................................................................25

Fed. R. Evid. Adv. Comm. Notes to the 1972 Proposal ...........................25

## **REGULATIONS**

12 C.F.R. § 1081.402 ...............................................................................28

12 C.F.R. § 1081.305 ...............................................................................28

## OTHER AUTHORITIES

7C Fed. Prac. & Proc. Civ. § 1911 (3d ed.) ............................................................36

Blacks Law Dictionary (9th ed. 2009) ......................................................................16

## STATEMENT OF THE ISSUES

1.      Whether the district court abused its discretion by denying as untimely the motion to intervene that Intervenor-Defendant/Appellants filed nearly ten months after the district court entered the consent order resolving this case.

2.      Whether the denial of Intervenor-Defendant/Appellants' motion to intervene as of right may also be affirmed because Appellants have no legally protectable interest in this case that has been or could be impaired.

3.      Whether the denial of Intervenor-Defendant/Appellants' motion to intervene by permission may also be affirmed because Appellants' claims share no common question of law or fact with this long-settled matter.

## STATEMENT OF THE CASE

### Nature of the Case

Plaintiff/Appellee the Consumer Financial Protection Bureau ("Bureau") brought this case against Defendant/Appellee United Guaranty Corporation ("United Guaranty") on April 4, 2013 to enforce Section 8 of the Real Estate Settlement Procedures Act ("RESPA").  App. Tab 1.  Soon after it was filed, this case was resolved "without trial or adjudication of any issue of fact or law" through the issuance of a consent order on April 8, 2013.  App. Tab 5 at 1.

1

Proposed Intervenor-Defendants/Appellants[1] were not parties to this consent order, and the consent order does not impact any legally protectable interest of the Appellants. *Id.* Although immediately aware of the consent order, Appellants did not seek to intervene in this matter for nearly ten months. Indeed, it was not until two days after the Bureau brought an administrative enforcement proceeding against Appellants that they sought to intervene in this matter, seeking a declaration that the consent order somehow absolves them of liability for their alleged violations of RESPA, and asking the court to enjoin the administrative proceeding. App. Tabs 7, 7-1 at 9.

The District Court denied Appellants' motion to intervene as untimely. App. Tab 30 at 33-34. This Court must now determine whether the district court abused its discretion in denying Appellants' motion.

## Statement of the Facts and Prior Proceedings

The Bureau was created by Congress in 2010 "to regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws." 12 U.S.C. § 5491(a). As part of this mission, the Bureau investigates and takes appropriate enforcement action to address violations of Federal consumer financial law, which includes RESPA. *See, e.g.,* 12 U.S.C.

---

[1] PHH Corporation, PHH Mortgage Corporation, PHH Home Loans, LLC, Atrium Insurance Corporation, and Atrium Reinsurance Corporation (collectively, "Appellants").

2

§§ 5481(12), (14), 5562, 5563, 5564.  RESPA prohibits a person from giving or receiving a "thing of value pursuant to an agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."  12 U.S.C. § 2607(a).  That law also prohibits a person from giving or receiving any portion or split of a fee for real estate settlement services, except for services actually performed.  *See* 12 U.S.C. § 2607(b).

Since January 2012, the Bureau has been investigating whether certain "captive mortgage reinsurance arrangements" violated these provisions of RESPA.[2]  In the practice under investigation, mortgage lenders—like Appellant PHH Corp.—established "captive" subsidiaries that purportedly provided "reinsurance" to mortgage insurers.  App. Tab 1 ¶ 13.  Pursuant to these arrangements, the mortgage lenders would agree to refer business to mortgage insurers in exchange for those insurers' agreement to cede a portion of referred borrowers' premiums to lenders' captive reinsurers.  *Id.* ¶ 14.  This scheme involved two types of potentially culpable parties: (1) mortgage lenders—like Appellant PHH Corp.—who agree to refer mortgage insurance business to mortgage insurers in exchange for a portion of the premiums paid by consumers

---

[2] *See* Decision and Order on PHH Corporation's Petition to Modify or Set Aside Civil Investigative Demand, *available at* http://files.consumerfinance.gov/f/201209_cfpb_setaside_phhcorp_0001.pdf.

for such insurance, and (2) mortgage insurers—like United Guaranty—who agree to cede a portion of the mortgage insurance premiums paid by consumers in exchange for the referrals.[3]

In April 2013, the Bureau reached a settlement with a number of mortgage insurers, including United Guaranty. To effectuate the settlement with United Guaranty, the Bureau filed a complaint and an unopposed motion for the entry of a proposed consent order. App. Tabs 1, 4. The Bureau's complaint alleged that United Guaranty paid illegal kickbacks to mortgage lenders—disguised as reinsurance premiums ceded to the lenders' captive reinsurers—in exchange for the referral of borrowers' mortgage insurance business. App. Tab 1 at ¶¶ 3, 9. According to the complaint, these payments were made pursuant to "captive mortgage reinsurance arrangements" that United Guaranty entered into with "virtually every major lender participating in the U.S. housing market." *Id.* at ¶¶ 14, 15.

The Bureau's complaint clearly communicates the Bureau's position that each and every ceding premium paid by United Guaranty to lenders' captive reinsurers pursuant to a captive mortgage reinsurance arrangement is a violation of RESPA: It alleges that "*each* ceding payment by [United Guaranty] to the captive

---

[3] *See, e.g., supra* n. 2; United Guaranty's Petition to Modify or Set Aside June 20, 2012 Civil Investigative Demand, *available at* http://files.consumerfinance.gov/f/201311_cfpb_american-international-group_petition.pdf.

reinsurers is a 'thing of value' that has been given to a lender's captive," *id.* ¶ 28 (emphasis added); that "*[e]ach* such ceding payment: (a) was not and is not for services actually furnished or performed, or (b) grossly exceeded or exceeds the value of such services," *id.* ¶ 29 (emphasis added); that "*[e]ach* such ceding payment by [United Guaranty] was and is made in consideration of lenders' continued referral of mortgage insurance business to [United Guaranty]," *id.* ¶ 30 (emphasis added); and that "*[e]ach* such ceding payment therefore was and is an illegal kickback in violation of Section 8(a) of RESPA, 12 U.S.C. § 2607(a), for which [United Guaranty] is liable." *Id.* ¶ 31 (emphasis added).  It likewise alleges that "*[e]ach* ceding payment paid by [United Guaranty] and accepted by a lender through its captive reinsurer is a portion, split, or percentage of the private mortgage insurance premiums paid by consumers who are lenders' customers," *Id.* ¶ 32 (emphasis added), and that each ceding payment, therefore, independently violates Section 8(b) of RESPA.  *Id.* ¶ 33.

United Guaranty did not admit or deny that its ceding payments to captive reinsurers violated RESPA; the parties never litigated the issue; and the district court never passed on it because the parties agreed to settle this case "without trial or final adjudication of any issue of fact or law."  App. Tab 5 at 1, 2.  Pursuant to this settlement, which was incorporated into a consent order, United Guaranty agreed to pay a $4.5 million civil money penalty, to relinquish to the Bureau

5

certain funds that might be paid out of captive trusts, and to provide information to facilitate the Bureau's continuing investigation of other participants in captive mortgage reinsurance arrangements and its monitoring of United Guaranty's compliance with the order. *Id.* at 5-11. United Guaranty also agreed to an injunction prohibiting it from participating in any "captive mortgage reinsurance arrangements" by (1) entering into new captive mortgage reinsurance arrangements, (2) revising any existing captive mortgage reinsurance arrangement without the Bureau's prior written consent, or (3) obtaining reinsurance from a captive reinsurer on any new mortgage transactions after the date the consent order is entered. *Id.* at 4-5. The consent order clarified the scope of this injunction by stating that "[n]othing in this Order shall be construed, however, as preventing the ceding of premiums on policies originated as of, and subject to [captive mortgage reinsurance arrangements] already in existence as of, the date of entry of this Order." *Id.* at 5.

In exchange for the relief described above, the Bureau released "United Guaranty, and its affiliates, directors, officers, agents, servants and employees from all potential liability that has been or might have been asserted by the CFPB based on the captive mortgage reinsurance practices described in the Complaint, to the extent such practices occurred prior to the entry of [the] Order." *Id.* at 12.

Not one of the Appellants was a party to this settlement agreement.  App. Tab 5.  Appellants did not agree to pay a civil money penalty, or to relinquish rights to funds held in captive trusts, or to an injunction preventing them from participating in captive mortgage reinsurance arrangements.  *See id.*  The Bureau did not release any claims it had against Appellants or forgo its right to obtain broader relief against Appellants than it had obtained in its negotiated settlement with United Guaranty—including remedies for the allegedly illegal receipt of unearned ceding premiums.  *Id.* at 12.

On the same day the Bureau filed its complaint and proposed consent order, it issued a press release stating its belief that "the mortgage insurers named in today's enforcement actions provided kickbacks to mortgage lenders by purchasing captive reinsurance that was essentially worthless but was designed to make a profit for the lenders."[4]  The press release contained links to both the complaints and the proposed consent orders.  *Id.*  In addition to the press release, the Bureau's enforcement actions received extensive coverage by the news media, including reports predicting that mortgage lenders were likely the next target in the Bureau's

---

[4] *See* "The CFPB Takes Action Against Mortgage Insurers to End Kickbacks to Lenders," *available at* http://www.consumerfinance.gov/newsroom/the-cfpb-takes-action-against-mortgage-insurers-to-end-kickbacks-to-lenders/.

captive reinsurance probe.[5]  Appellants, subjects of the broader investigation,

admit that they were "aware of this Action [when] the settlement was announced

on April 4, 2013."  App. Tab 7 at 11.  Appellants did not seek to intervene in this

matter at that time, and it was administratively closed on August 15, 2013.

On January 29, 2014, the Bureau brought an administrative proceeding

against Appellants.[6]  Consistent with the allegations against United Guaranty, the

Bureau alleged in the proceeding against Appellants that "[t]he premiums ceded by

the [mortgage insurers] to PHH through Atrium were, *individually and in the*

*aggregate*, 'things of value' that have been received by PHH and illegal kickbacks

in violation of Section 8(a) of RESPA."  *Id.* ¶ 102.  The Bureau also alleged that

"[t]he premiums ceded by the [mortgage insurers] to PHH through Atrium were,

*individually and in the aggregate*, a portion, split, or percentage of the private

mortgage insurance premiums paid by consumers who are PHH's customers" and

that, by accepting such premiums, PHH violated Section 8(b) of RESPA  *Id.* ¶¶ 99,

---

[5]  *See* App. Tab 27 at 2 & n. 2 (citing Joe Adler, "Lenders Likely Next Target in CFPB Reinsurance Kickback Probe," *available at* http://www.americanbanker.com/issues/178_65/lenders-likely-next-target-in-cfpb-reinsurance-kickback-probe-1058062-1.html.

[6]  *See* Notice of Charges, *In the Matter of PHH Corp. et al.*, File No. 2014-CFPB-0002, *available at* http://files.consumerfinance.gov/f/201402_cfpb_0002_notice-of-charges.pdf.  *See also* App. Tab 30 at 22 (statement of the district judge noting that she had taken judicial notice of the docket in the administrative proceeding).

100.  This administrative proceeding is ongoing and the Bureau and Appellants are

actively litigating the merits of the Bureau's allegations.[7]

On January 31, 2014—two days after the Bureau filed its notice of charges

against Appellants and almost 10 months after the district court issued its final

judgment in this action—Appellants moved to administratively reopen this case

and intervene, purportedly "for the limited purpose of interpreting and enforcing

the Final Consent Judgment and Order entered by the Court on April 8, 2013."  *See*

App. Tab 7 at 1.  Although Appellants sought to intervene as defendants, they did

not file an answer as required under Fed. R. Civ. P. 24(c).  App. Tab 7 at 1.  Nor

did they ask the court to issue an order to show cause why the Bureau should not

be held in contempt for its alleged violation of the consent order.

Instead, Appellants filed a proposed "Complaint in Intervention," alleging

that they once had a captive mortgage reinsurance agreement with United

Guaranty.  App. Tab 7-1 ¶ 19.  According to Appellants, that agreement had been

in run-off—meaning United Guaranty continued to cede premiums on existing

mortgage insurance policies, but would not cede premiums on any new policies—

since January 1, 2010, before the parties agreed to terminate it completely on May

31, 2013.  App. Tab 7-1 ¶¶ 24, 27.  Appellants' "Complaint in Intervention" asked

---

[7] *See* Docket Sheet, *In the Matter of PHH Corp. et al.*, File No. 2014-CFPB-0002,
*available at* http://www.consumerfinance.gov/administrativeadjudication/2014-
cfpb-0002/.

the district court for, among other things, "[a] declaration that the payments from [United Guaranty] to Atrium did not violate RESPA," and an injunction of the Bureau's pending administrative proceeding against Appellants.  App Tab 7-1 at 9.

On March 10, 2014, the district court heard oral argument and denied Appellants' motion to intervene from the bench based on "the dispositive question [of] timeliness."  App. Tab 30 at 33.  The district court began by observing that "[i]t is an extraordinary remedy in the Eleventh Circuit for a non party to intervene and open up a case."  *Id.*  It recognized that Appellants were aware of the Bureau's case against United Guaranty when it was filed, and that opening up this case could result in prejudice to the existing parties.  *Id.* at 33-34.  Finally, it found that any prejudice to Appellants could be addressed in the pending administrative proceeding, and that there were no unusual circumstances militating in favor of finding Appellants' motion to be timely.  *Id.* at 34.

Appellants timely appealed.

## Standard of Review

"The question whether an application for intervention is timely is largely committed to the district court's discretion, and its determination will not be overturned on appeal absent an abuse of discretion." *Reeves v. Wilkes*, 754 F.2d 965, 968 (11th Cir. 1985) (citing *NAACP v. New York*, 413 U.S. 345, 366, 93 S.Ct.

2591, 2603 (1973); *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1516 (11th Cir. 1983)).

## SUMMARY OF THE ARGUMENT

The District Court did not abuse its discretion by holding that Appellant's motion to intervene was untimely.  Appellants were aware of the Bureau's complaint against United Guaranty and the consent order that settled this action as soon as they were filed in April 2013.  Appellants' attempts to justify their decision to wait nearly ten months to seek to intervene in this action are completely meritless.

Although they feign surprise at the Bureau's allegation that each reinsurance ceding payment that they received from a mortgage insurer violated RESPA, this cannot justify their delay in seeking intervention.  They were aware of—or, at a minimum, should have been aware of—the allegations contained in the Bureau's complaint against United Guaranty, which make clear that the Bureau considered "each ceding payment" that United Guaranty made to lenders and their captives (including Appellants) to be a violation of RESPA.  App. Tab 1 ¶¶ 28-32. Furthermore, Appellants' asserted belief that any limitations on the scope of the consent order's provisions enjoining United Guaranty somehow immunized *Appellants* from liability for their actions is simply implausible.  Settlement agreements, by their very nature, only bind the parties that have agreed to them.

11

Appellants were not a party to the consent order, and are not bound by the injunctive provisions. They cannot, therefore, assert any defense to liability based on any negotiated limitation to those injunctive provisions. Thus, nothing in this consent order could reasonably be construed as providing Appellants a defense to a RESPA enforcement action by the Bureau. Accordingly, Appellants have offered no reasonable justification for waiting almost ten months before seeking intervention.

Appellants' unjustified delay prejudices the parties generally, whose settlement "without trial or adjudication of any issue of fact or law," App. Tab 5 at 1, is now imperiled by Appellants, who seek to intervene to litigate the very issues the parties agreed not to litigate. *Compare* Br. at 23 ("Appellants have an undeniable interest in the legality under RESPA of Atrium Re's agreement with [United Guaranty]") *with* App. Tab 5 at 1 ("The parties, by and through their respective counsel, have agreed to entry of this [consent order], without trial or adjudication of any issue of fact or law, to settle and resolve all matters of dispute arising from the conduct alleged in the Complaint."). And their delay is particularly prejudicial to the Bureau, which spent those ten months preparing to prosecute its case against Appellants based on the entirely reasonable understanding that by agreeing to some limitations to the scope of the injunction

12

against United Guaranty it was not thereby releasing any claims against Appellants (or any other lender).

By contrast, denial of their motion to intervene will not prejudice Appellants because, even if they could intervene, they would not gain anything: They have no standing to enforce the consent order (and no non-frivolous argument that the Bureau "violated" the consent order), and they have a perfectly adequate forum— the pending administrative proceeding—to raise their arguments regarding the impact, if any, of the consent order on their own potential liability. Given that these considerations counsel in favor of finding Appellants' motion untimely, and in the absence of any unusual circumstances excusing their delay, it is clear that the district court acted well within the bounds of its discretion by denying the motion to intervene as untimely.

Finally, although the Court need not reach the issue, the denial of Appellants' motion to intervene also may be affirmed because Appellants have no legally protectable interest in the consent order, and no claim or defense that shares a common question of law or fact with this long-settled matter.

## ARGUMENT

### I.    The District Court Did Not Abuse Its Discretion by Holding that Appellants' Motion to Intervene Was Untimely

A party may intervene in a case—as of right under Federal Rule of Civil Procedure 24(a), or by permission under Federal Rule of Civil Procedure 24(b)—

only if it makes a "timely motion." Fed. R. Civ. P. 24(a), (b). The timeliness of a

motion to intervene is a threshold factor that must be established before any other

factors are considered. *NAACP*, 413 U.S. at 365, 93 S.Ct. at 2602-2603. In

determining whether a motion to intervene is timely, a court must first "look to the

purpose for which intervention is sought." *FTC v. Am. Legal Distributors, Inc.*,

890 F.2d 363, 365 (11th Cir. 1989); *see also Piambino v. Bailey*, 610 F.2d 1306,

1321 (5th Cir. 1980) (determining the timeliness of a motion to intervene "clearly

requires an initial identification of the prospective intervenor's interest in the

case").[8] Once the court has established the interest the proposed intervenor seeks

to protect, it then considers—

> (1) the length of time during which the would-be intervenor knew or
> reasonably should have known of his interest in the case before he
> petitioned for leave to intervene; (2) the extent of prejudice to the
> existing parties as a result of the would-be intervenor's failure to
> apply as soon as he knew or reasonably should have known of his
> interest; (3) the extent of prejudice to the would-be intervenor if his
> petition is denied; and (4) the existence of unusual circumstances
> militating either for or against a determination that the application is
> timely.

*Jefferson Cnty.*, 720 F.2d at 1516 (citing *Stallworth v. Monsanto Co.*, 558 F.2d

257, 264-66 (5th Cir. 1977)). After considering these factors, the district court

---

[8] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)
(adopting as binding precedent in the Eleventh Circuit all decisions of the former
Fifth Circuit handed down prior to October 1, 1981).

held that Appellants' motion was untimely.  App. Tab 30 at 33-34.  This ruling was not an abuse of discretion and should be affirmed.

### A.    Appellants Knew or Should Have Known of Their "Interest" in this Case Nearly Ten Months Before they Moved to Intervene

Appellants claim an "interest in the legality under RESPA of Atrium Re's agreement with UGI." Br. at 23; *see also* App. Tab 7 at 13.  Although this issue was not, and will not be, resolved in this case, Appellants' liability under RESPA for its participation in this and other captive mortgage reinsurance arrangements *is* currently being litigated by the Bureau and Appellants before an Administrative Law Judge.  *See supra* n. 7.  Notwithstanding this fact, Appellants seek to intervene in this long-settled matter to litigate the issue here as well, in an apparent attempt to launch a collateral attack on the Bureau's administrative proceeding. *See* App. Tab 7-1 at 9.  But, in addition to the many other defects with this gambit, Appellants have simply waited too long.

Since at least 2012, Appellants were well aware that the Bureau was investigating them for their participation in captive mortgage reinsurance arrangements, *see supra* n. 2, and they were aware of this matter on the day it was filed.  *See* App. Tab 7 at 11.  As explained below, Appellants' motion to intervene could be denied for numerous reasons, but there is no reason they could not have sought intervention immediately after the case was filed.  They did not move to intervene, however, for nearly ten months, long after final judgment was entered

15

on April 8, 2013.  Appellants provide no reasonable justification for this delay, and the district court did not abuse its discretion by finding that it counsels heavily in favor of finding their motion untimely.

In the Eleventh Circuit, "intervention attempts after final judgments are 'ordinarily looked upon with a jaundiced eye.'"  *United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977) (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1072 (5th Cir. 1970)); *see also Meek v. Metro. Dade Cnty.*, 985 F.2d 1471, 1479 (11th Cir. 1993) ("[O]ur decisions have tended to disfavor intervention following final judgment"), *overruled on other grounds by, Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007).  This general rule is based on the presumption that, "[i]nterventions after judgment have a strong tendency to prejudice existing parties to the litigation or to interfere substantially with the orderly process of the court."  *U.S. Steel Corp.*, 548 F.2d at 1235 (citing *McDonald*, 430 F.2d at 1072).  Accordingly, courts routinely deny as untimely attempts to intervene in settled matters when the proposed intervenor "was aware of the consent decree[9] from the first yet . . . took no action to assert its interest."  *Id.* at 1236; *see also United States v. Allegheny-Ludlum Indus., Inc.,* 553 F.2d 451, 453 (5th Cir. 1977) (finding a motion to intervene untimely because "[t]he

---

[9] The terms "consent order" and "consent decree" are interchangeable.  *See* Blacks Law Dictionary (9th ed. 2009) (defining "consent decree" as "[a] court decree that all parties agree to—Also termed *consent order*.").

applicants offered no compelling reason for waiting until seven and a half months after the judgment and six months after implementation of the decrees to file their motion"); *United States v. Covington Cnty. Sch. Dist.*, 499 F.3d 464 (5th Cir. 2007) (affirming the denial of a motion to intervene to challenge a consent order made fifteen weeks after entry of a consent order); *EEOC v. Westinghouse Elec. Corp.*, 675 F.2d 164 (8th Cir. 1982) (affirming denial of motion to intervene made one month after entry of the consent order).

Although courts have permitted intervention after judgment in certain unusual circumstances, Appellants have not identified a single case in which a district court has been found to have abused its discretion by refusing to permit an intervenor to enter a case after judgment in order to litigate an issue relating to the merits of the claim that the parties, by settling the case, purposely declined to litigate.[10] Appellants' ten month delay in seeking to intervene therefore counsels against finding their motion to be timely.

---

[10] *See* Br. at 16 n. 12 (citing *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (permitting post-judgment intervention because "intervention was not on the merits, but for the sole purpose of challenging a protective order"); *Cincinnati, I. & W.R. Co. v. Indianapolis U. R. Co.*, 279 F. 356, 363 (6th Cir. 1922) (observing, in a case decided long before the promulgation of Fed. R. Civ. P. 24, that while there is "no inflexible rule forbidding the allowance of intervention, even after final decree, . . . the District Court had the right, in the exercise of its discretion, to refuse to entertain the petition and to remit appellees to their remedy elsewhere"); *Fla. Med. Ass'n v. HEW*, No. 3:78-cv-178, 2011 U.S. Dist. LEXIS 111180, at *13 (M.D. Fla. May 18, 2011) (finding timely an unopposed motion to intervene to challenge an injunction preventing the release of

Appellants' proffered excuses for this delay are implausible. First, they contend that the provision of the consent order clarifying the scope of the injunction agreed to by United Guaranty somehow prohibits the Bureau from enforcing RESPA against Appellants, and that it was not until the Bureau (improperly, in their view) filed its notice of charges that it became necessary for them to "enforce" this provision of the consent order. Br. at 13. Their position is completely at odds with the actual text of the consent order, and cannot justify their delay in seeking intervention. *See U.S. Steel*, 548 F.2d at 1235-36 (rejecting

agency records pursuant to the Freedom of Information Act), *objections sustained in part*, *Fla. Med. Ass'n v. HEW*, No. 3:78-cv-178, 2011 U.S. Dist. LEXIS 109451, at *33 (M.D. Fla. Sept. 26, 2011) (noting that the Eleventh Circuit's direction to intervenors, in *Alley v. HHS*, 590 F.3d 1195, 1201 (11th Cir. 2009), to seek relief from the injunction in the district court and the parties' concession that they would not be prejudiced by intervention were unusual circumstances militating in favor of the timeliness of the motion); *Greater New Orleans Fair Housing Action Center v. St. Bernard Parish*, 641 F. Supp. 2d 563 (not addressing the basis for intervention, including whether intervention was timely); *Alley v. HHS*, 590 F.3d 1195, 1210 (11th Cir. 2009) (holding that a party may not use the Freedom of Information Act to collaterally attack an injunction entered by another court and directing the plaintiff to seek intervention in *Fla. Med. Ass'n v. HEW* for purposes of modifying its injunction); *Tweedle v. State Farm Fire & Cas. Co.*, 527 F.3d 664, 671 (8th Cir. 2008) (finding that district court did not abuse its discretion by permitting ex-husband of plaintiff to intervene post-judgment to determine whether he was entitled to any of the insurance proceeds); *Elliott Indus. v. BP Am. Prod. Co.*, 407 F.3d 1091, 1103-04 (10th Cir. 2005) (allowing unnamed member of a proposed class to intervene on appeal for purposes of challenging the district court's subject matter jurisdiction, when neither of the parties had an interest in challenging jurisdiction); *Ross v. Marshall*, 426 F.3d 745 (5th Cir. 2005) (permitting insurer to intervene post-judgment for purposes of prosecuting appeal that insured abandoned); *Acree v. Republic of Iraq*, 370 F.3d 41 (D.C. Cir. 2004) (noting that "[c]ourts are generally reluctant to permit intervention after a suit has proceeded to final judgment")).

18

proposed intervenor's excuse for delay based on a mistaken reading of a consent order).

The provision of the consent order on which Appellants rely follows the provisions that enjoin United Guaranty from: (1) entering into any new captive mortgage reinsurance arrangements; (2) revising any such arrangements without the Bureau's prior written consent; or (3) obtaining reinsurance from any captive reinsurer on any new mortgage transactions. App. Tab 5 at 4-5. After detailing the acts United Guaranty would be enjoined from committing (for a period of ten years), the consent order provides that "Nothing in this Order shall be construed, however, as preventing the ceding of premiums on policies originated as of, and subject to [Captive Mortgage Reinsurance] Arrangements already in existence as of, the date of entry of this order." *Id.* at 5.

This qualification, designed to permit United Guaranty to settle the case without potentially breaching its existing contractual arrangements, was based on a concern that existing precedent could preclude the entry of a consent order that impacted the contractual rights of non-consenting third parties. *See* App. Tab 30 at 19. *See also Reynolds v. G.M. Roberts*, 251 F.3d 1350, 1357 n.12 (11th Cir. 2001) ("The clear law of this circuit is that 'a consent decree requires the consent of all parties whose legal rights would be adversely affected by the decree.'") (quoting

*United States v. City of Hialeah*, 140 F.3d 968, 975 (11th Cir. 1998)); *United States v. City of Miami*, 664 F.2d 435, 447 (5th Cir. 1981).

This provision does not prevent the Bureau from enforcing RESPA against Appellants. Indeed, its only legal effect would be to provide United Guaranty a defense if the Bureau ever claimed that United Guaranty violated the consent order by "ceding premiums on policies originated as of, and subject to Arrangements already in existence as of [April 8, 2013]." App. Tab 5 at 5. Thus, as the district court appropriately recognized, Appellants are not asking it to "enforce" the consent order, but "to decree the [ceding] payments did not violate RESPA, which is something that was never before [it] to begin with." App. Tab 30 at 11. Appellants cannot rely on their unjustified misunderstanding of the consent order to excuse their delay in seeking to intervene here. *See U.S. Steel*, 548 F.2d at 1235-36.

Appellants fare no better with their second claim—that, before the Bureau initiated the pending administrative proceeding against them, they were not aware that "the CFPB considered each individual ceding payment—rather than the placement of reinsurance for a particular loan—to be a violation of RESPA Section 8." Br. at 14. As an initial matter, this claim cannot be squared with the Bureau's complaint against United Guaranty, which alleged that "[e]ach ceding payment [is] an illegal kickback in violation of Section 8(a) of RESPA" and "[e]ach ceding

payment paid by [United Guaranty] and accepted by a lender through its captive reinsurer is a portion, split, or percentage of the private mortgage insurance premiums" that was provided "other than for services actually performed, in violation of Section 8(b) of RESPA."  App. Tab 1 at ¶¶ 31-33 (emphasis added).  In light of these clear statements, Appellants cannot plausibly contend that they became aware that the Bureau considered each ceding payment to violate RESPA only after the Bureau filed its notice of charges against them.

Appellants likewise cannot reasonably contend that they understood the consent order between the Bureau and United Guaranty to reflect the Bureau's change of heart regarding the legality of the ceding payments that the complaint against United Guaranty alleged were unlawful.  To be sure, the consent order's injunction did not prohibit United Guaranty from continuing to make ceding payments under certain preexisting policies.  But the limited scope of that injunction in no way implies that the Bureau believed—contrary to its allegations in the complaint—that those payments were lawful under RESPA.  Rather, the April 8, 2013 consent order, like any settlement, embodies a carefully negotiated compromise in which the "parties waive[d] their right to litigate the issues involved in the case and thus save[d] themselves the time, expense, and inevitable risk of litigation."  *United States v. Armour & Co.*, 402 U.S. 673, 681, 91 S.Ct.

1752, 1757 (1971).  As in any settlement, "the parties each g[a]ve up something they might have won had they proceeded with the litigation."  *Id.*

Thus, United Guaranty could have litigated whether "each ceding payment" violated RESPA.  If it had prevailed, it might not have paid a $4.5 million civil money penalty, or become subject to the injunction, reporting requirements, or other provisions contained in the consent order.  App. Tab 5.  Likewise, the Bureau could have chosen to litigate its claims in order to obtain broader relief against United Guaranty, including an injunction "preventing the ceding of premiums on policies originated as of, and subject to [Captive Mortgage Reinsurance] Arrangements already in existence as of, [April 8, 2013]." App. Tab 5 at 5.

But the parties settled, and in exchange for United Guaranty's payment of the civil money penalty and agreement to be bound by the injunctive and other provisions of the consent order, the Bureau agreed to release "*United Guaranty*, and its affiliates, directors, officers, agents, servants and employees" from certain claims.  App. Tab 5 at 12 (emphasis added).  It also agreed to an injunction that would generally prohibit United Guaranty's participation in captive reinsurance arrangements, but allow United Guaranty to wind down policies subject to existing captive mortgage reinsurance agreements.  *See* App. Tab 5 at 5.

Appellants seem to mistakenly believe that they are entitled to the benefits of United Guaranty's settlement, but, as the district court recognized, Appellants

22

were not "a part of this order; [they] did not give up 4.5 million; [and they] did not agree not to do in the future what United Guarant[y] said it would [not] do in the future." App. Tab 30 at 7. As noted, the Bureau's position that "each individual ceding payment" violated RESPA is entirely consistent with the Bureau's claims against, and its settlement with, United Guaranty. *See* App. Tab 1 ¶¶ 28-33. Any expectation that the Bureau would unilaterally abandon its claims, outside of the context of a settlement, is completely unjustified. Appellants have provided no reasonable explanation for their failure to seek intervention "within a month, [or] within two months," *id.*, and the district court did not abuse its discretion in finding that Appellants' delay in seeking to intervene counseled in favor of finding their motion untimely.

### B.    Intervention at this Late Stage Could Prejudice the Parties

For purposes of applying the second timeliness factor, "the relevant issue is . . . how much prejudice would result from the would-be intervenor[s'] failure to request intervention as soon as [they] knew or should have known of [their] interest in the case." *Stallworth*, 558 F.2d at 267. As explained above, Appellants waited nearly ten months before seeking to reopen this case to litigate the question of liability that the Bureau and United Guaranty agreed not to litigate. By doing so, they risk disrupting the carefully negotiated compromise reached by the parties. *See, e.g., Campbell v. Hall-Mark Electronics Corp.*, 808 F.2d 775, 779 (11th Cir.

23

1987) ("Intervention at this point would only jeopardize a legitimately negotiated, accepted, and approved settlement."); *Reeves*, 754 F.2d at 971; *Allegheny-Ludlum*, 553 F.2d at 453 ("Intervention now for the purpose of challenging the consent agreement will prejudice the appellees by jeopardizing months of negotiations, causing substantial litigation expenses, and even more substantial expenses of implementation.").

In addition, during the nearly ten months between the entry of the consent order and the motion to intervene, the Bureau expended significant resources preparing to litigate the merits of its RESPA claims against Appellants based on the entirely reasonable (indeed, only plausible) interpretation of the consent order that it did not provide Appellants with any defense to liability. Appellants should have been aware that their contrary interpretation was, at a minimum, difficult to reconcile with the text of the consent order. Had Appellants intervened promptly in this case (and assuming for purposes of argument only that they met the other standards for intervention, which they do not), their baseless arguments regarding the proper interpretation of the consent order could have been resolved in a timely manner. Accordingly, this factor also supports the district court's ruling that the motion to intervene was untimely.

### C.    Appellants Will Not be Prejudiced by the Denial of their Motion

Appellants will not be prejudiced by denial of their motion to intervene because the consent order does not bind them, and because they have another forum in which to litigate the legality of their conduct.  As this Court has observed, "[w]here the movant has no identity of interest with a party and thus could not be bound [by any final judgment, this Court] would find no prejudice sufficient to give weight to the third factor."  *Reeves*, 754 F.2d at 971 (quoting *Jefferson Cnty.*, 720 F.2d at 1517).  "By definition a consent decree only binds those who consent, either expressly or impliedly."  *Id.* (citing *Jefferson Cnty.*, 720 F.2d at 1518 n. 19).  Of course, Appellants did not consent to the entry of the consent order, and are therefore not bound by it.  As a result, they are not subject to its injunctive provisions and necessarily cannot benefit from the qualification to those injunctive provisions.  Appellants are, therefore, not prejudiced by the district court's denial of their motion to intervene to "interpret and enforce" that qualification.

Furthermore, as the district court observed, Appellants will not be prejudiced by denial of their motion to intervene because any argument that the consent order "relieves [them] from any liability . . . can be made in the administrative proceeding."  App. Tab 30 at 35.[11]  Indeed, on the same day the Appellants moved

---

[11] The district judge took judicial notice of the docket in the administrative proceeding.  App. Tab 30 at 22.  This was proper, and this Court may take judicial notice of any subsequent proceedings. *See* Fed. R. Evid. 201(b)(2); Fed. R. Evid.

to intervene in this matter, they moved to dismiss the administrative proceeding,

arguing, among other things, that the Bureau should be judicially estopped from

seeking to impose liability on them for receiving payments from mortgage insurers

that the negotiated consent orders entered in this and other cases did not prohibit.[12]

The Administrative Law Judge denied this motion, finding, based on the evidence

before him, that the Bureau had not taken inconsistent positions by filing its notice

of charges against Appellants after agreeing to a consent order in which "the

injunctive relief was subject to the qualification that '[n]othing in this Order shall

be construed, however, as preventing the ceding of premiums on policies

originated as of, and subject to [captive arrangements] already in existence as of,

the date of entry of this Order.'"[13]

---

Adv. Comm. Notes to the 1972 Proposal ("In accord with the usual view, judicial notice may be taken at any stage of the proceedings, whether in the trial court or on appeal."); *R.S.B. Ventures, Inc. v. FDIC*, 514 Fed. Appx. 853, 857 n.2 (11th Cir. 2013) (taking judicial notice of documents on the FDIC's website); *Rothenberg v. Sec. Mgmt. Co., Inc.*, 667 F.2d 958, 961 n. 8 (11th Cir. 1982) (taking judicial notice of records from other proceedings filed subsequent to the district court's dismissal of the underlying action).

[12] *See* PHH's Brief in Support of its Motion to Dismiss, *In re PHH Corp. et al.*, File No. 2014-CFPB-0002, at 21-25 (Jan. 31, 2014), *available at* http://files.consumerfinance.gov/f/201402_cfpb_0002_support-of-motion-to-dismiss.pdf.

[13] *See* Order Denying the Motion to Dismiss, or in the alternative, for Summary Disposition, *In re PHH Corp. et al.*, File No. 2014-CFPB-0002, at 14 (Mar. 13, 2014), *available at* http://files.consumerfinance.gov/f/201304_cfpb_order_denying-motion-dimiss-alternative-summary-disposition.pdf.

As the Administrative Law Judge observed, the complaint against United Guaranty contained "clear and unequivocal" assertions that United Guaranty "paid kickbacks to captive reinsurers, disguised as reinsurance premiums, in exchange for referral of MI business from lenders, and that each 'ceding payment therefore was and is an illegal kickback in violation of Section 8(a) of RESPA.'" *Id.* at 15. The Administrative Law Judge did not view this position as inconsistent with the qualification on injunctive relief contained in the proposed consent order, but understood that "the Consent Orders are nothing more than what they purport to be—court-ordered compromised claims—and that they neither contain nor imply any arguments or positions at all." *Id.*

Appellants pressed their argument for judicial estoppel in the administrative proceeding a second time, but the Administrative Law Judge concluded that they "still 'failed to demonstrate, at a minimum, that [the Bureau's Office of] Enforcement took inconsistent positions.'"[14]  Appellants will have an opportunity to argue once more to the Administrative Law Judge that the evidence presented at the now-concluded hearing supports their judicial estoppel argument.[15]  If they are

_____

[14] *See* Order on Dispositive Motions, *In re PHH Corp. et al.*, File No. 2014-CFPB-0002, at 14 (May 22, 2014), *available at* http://files.consumerfinance.gov/f/201405_cfpb_order_order-on-dispositive-motions_152.pdf.

[15] *See* Post-Hearing Scheduling Order, *In re PHH Corp. et al.*, File No. 2014-CFPB-0002 (June 6, 2014), *available at*

27

dissatisfied with the Administrative Law Judge's ruling, they may appeal to the Director for a final decision.  *See* 12 C.F.R. § 1081.402.  And if they are dissatisfied with the Director's final decision, they may seek review in a United States Court of Appeals.  *See* 12 U.S.C. § 5563(b)(4).

As the foregoing demonstrates, Appellants will not be prejudiced by the district court's finding that their motion to intervene in this matter is untimely, because they have another forum in which to make the same arguments.  *See Jefferson Cnty.*, 720 F.2d at 1518-19 (finding a lack of prejudice from the district court's denial of a motion to intervene because proposed intervenors' interests in a consent order could be protected by bringing a future lawsuit alleging reverse discrimination); *see also Hollywood Cmty. Synagogue, Inc. v. City of Hollywood, Fl.*, 254 Fed. Appx. 769, 771 (11th Cir. 2007) (upholding district court's ruling that a motion to intervene one day prior to entry of the consent order was untimely, in part on the ground that the "prejudice to the Appellants would be minimal as they could litigate the constitutionality of the consent decree in another forum").

Appellants do not argue otherwise, but contend that intervention in this matter is nevertheless "necessary" because only the district court can *enforce* its own order.  Br. at 17-19.  While it is true that only the district court can enforce its own order, Appellants cannot demonstrate any prejudice from the district court's

---

http://content.consumerfinance.gov/f/201406_cfpb_post-hearing-scheduling-order_160.pdf; *see also* 12 C.F.R. § 1081.305 (governing post hearing filings).

refusal to grant intervention for these purposes because, as explained below, they cannot demonstrate the predicate right to *seek* enforcement of the consent order. *See infra* Part II.A. Accordingly, the district court did not abuse its discretion in finding that the third factor weighed against finding Appellants' motion to intervene to be timely.

### D.    There Are No Unusual Circumstances Militating in Favor of Finding the Motion to Intervene To Be Timely

Appellants make no argument that unusual circumstances make their motion to intervene timely. By failing to address this factor, Appellants concede that the district court did not abuse its discretion by finding that no such circumstances exist here. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681-83 (11th Cir. 2014).

### II.    The District Court's Denial of Appellants' Motion to Intervene May Be Affirmed on the Alternative Ground that Appellants Have No Basis to Intervene

Although it need not reach the issue, the Court may also affirm the district court's denial of Appellants' motion to intervene on the alternative ground that, even if the motion were timely, Appellants have no basis for intervening in this long-settled matter, either as of right or permissively. *Koziara v. City of Casselberry*, 392 F.3d 1302, 1306 n. 2 (11th Cir. 2004) ("[W]e may affirm the district court's judgment on any grounds supported in the record.").

A. **Appellants Have No Basis To Intervene as of Right Because they Have No Protectable Interest that Could Be Impaired or Impeded by this Case**

In addition to being untimely, Appellants' motion to intervene as of right also fails because Appellants have failed to demonstrate that they have "[1] an interest relating to the property or transaction that is the subject of the action, and [2] [are] so situated that disposing of the action may as a practical matter impair or impede [their] ability to protect [their] interest. . . ." Fed. R. Civ. P. 24(a).[16] "To support intervention, a nonparty's interest must be 'direct, substantial, [and] legally protectable.'" *United States v. S. Fla. Mgmt. Dist.*, 922 F.2d 704, 707 (11th Cir. 1991) (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989)).

Appellants contend that they have "an undeniable interest in the legality under RESPA of Atrium Re's agreement with UGI." Br. at 23. But even if this were true, it does not support a right to intervene in this action, which the parties settled over fifteen months ago "without trial or adjudication of *any* issue of fact or law," and without "any preclusive effect in any other action or proceeding." App. Tab 5 at 2 (emphasis added). As a result, denial of Appellants' motion to intervene will not "impair or impede [their] ability to protect [their] interest," Fed. R. Civ. P. 24(a)(2), in resolving the question whether their conduct was legal because that

---

[16] To intervene as of right, Appellants would also have to demonstrate that existing parties do not "adequately represent" their interest. *Id.* Because Appellants have no interest that could be impaired by the resolution of this action, the Court need not address this requirement.

question—which Appellants are currently litigating in the Bureau's administrative

proceeding—never was, and never will be, resolved in this action.

Appellants claim a subsidiary interest "in the interpretation and enforcement

of the Consent Order." Br. at 21; *see also* Br. at 23 ("Appellants have an

undeniable interest in the legality under RESPA of Atrium Re's agreement with

UGI, as well as in having the District Court enforce the Consent Order.").  But

Appellants do not have a "legally protectable" interest in enforcing the consent

order because Appellants have no standing to enforce the consent order.  And, even

if they did, the Bureau has not violated the consent order in any manner, and so

there is nothing to enforce.

Appellants' arguments to the contrary are based on a profound

misconception regarding the manner in which consent orders are enforced, and an

untenable reading of this particular consent order.  In the Eleventh Circuit, there is

only one acceptable procedure for the enforcement of a consent decree:

> [I]njunctions, including consent decrees, . . . are enforced through the
> trial court's civil contempt power.  If the plaintiff (the party obtaining
> the writ) believes that the defendant (the enjoined party) is failing to
> comply with the decree's mandate, the plaintiff moves the court to
> issue an order to show cause why the defendant should not be
> adjudged in civil contempt and sanctioned.  The plaintiff's motion
> cites the injunctive provision at issue and alleges that the defendant
> has refused to obey its mandate. If satisfied that the plaintiff's motion
> states a case of non-compliance, the court orders the defendant to
> show cause why he should not be held in contempt and schedules a
> hearing for that purpose.  At the hearing, if the plaintiff proves what
> he has alleged in his motion for an order to show cause, the court

31

hears from the defendant. At the end of the day, the court determines
whether the defendant has complied with the injunctive provision at
issue and, if not, the sanction(s) necessary to ensure compliance.

*Reynolds v. Roberts*, 207 F.3d 1288, 1298 (11th Cir. 2000) (internal citations

omitted). As this Court made clear in *Reynolds*, "an application for injunctive

relief is an inappropriate device for enforcing a consent decree." *Id.* at 1300.

Likewise, the issuance of a declaratory judgment regarding a defendant's

obligations under the consent decree, which the defendant will be presumed to

follow, "could not withstand appellate review." *Id.*; *see also id.* at 1297 n.17;

*Reynolds v. McInnes*, 338 F.3d 1201, 1208 (11th Cir. 2003).

Appellants, of course, are not seeking to "enforce" the consent order in the

manner prescribed by the Eleventh Circuit, or in any manner whatsoever. Rather,

they are attempting to intervene in this action as *defendants* to seek declaratory and

injunctive relief against the *plaintiff*. *See* App. Tabs 7 at 1, 7-1 at 9. In *Reynolds*,

the Court surmised that "[t]he reason why plaintiffs' counsel did not move the

court for an order to show cause is obvious: the [defendant] had not disobeyed any

of the mandates of the consent decree, as amended, and plaintiffs' counsel could

not contend that it had without running afoul of Rule 11 of the Federal Rules of

Civil Procedure." *Reynolds*, 207 F.3d at 1298. The defects in Appellants' claimed

right to enforce the consent decree in this case are even more stark.

First, "Appellants are not parties to the consent decree.  As non-parties, the appellants have no standing to enforce the consent decree."  *Reynolds v. Butts*, 312 F.3d 1247, 1249 (11th Cir. 2002) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750, 95 S.Ct. 1917, 1932 (1975) ("A well-settled line of authority from this Court establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it. . . .")).  Indeed, in cases like this one, in which the injunctive relief entered as part of the consent decree binds only the defendant, only the plaintiff, including those "permitted to intervene [as plaintiffs] in the proceedings that led to the Consent Decree,"[17] can enforce the injunctive provisions of the consent decree.  *Reynolds*, 207 F.3d at 1298; *N.L.R.B. v. Gimrock Constr., Inc.*, 695 F.3d 1188, 1193 n.10 (11th Cir. 2012) (quoting *Reynolds*, 207 F.3d at 1298).[18]

---

[17] *Reynolds v. McInnes*, 380 F.3d 1303, 1307 (11th Cir. 2004); *see also Reynolds v. Roberts*, 846 F. Supp. 948, 953 (M.D. Ala. 1994) ("The non-class-member employees seek to intervene as plaintiffs in this lawsuit.").

[18] As noted, as part of the negotiated compromise incorporated into the consent order, the Bureau released certain claims against United Guaranty.  App. Tab 5 at 12.  This release is enforced not through a civil contempt proceeding to enforce the consent order, but by pleading the release as an affirmative defense in any subsequent action.  *See Myricks v. Fed. Reserve Bank of Atlanta*, 480 F.3d 1036, 1043 (11th Cir. 2007) (citing Fed. R. Civ. P. 8(c)).  In rare instances, the court that issued a consent order containing a release may be asked to interpret the scope of the release, but it is the obligation of the court in the second-filed action "to ensure that the claims [in that action] are litigated in a manner that comports with the [r]elease's limitations, as determined by [the court that issued the consent order]."  *United States v. Bank of Am. Corp.*, No. 13-5112, --- F.3d ---, 2014 WL 2575426,

Of course, Appellants are not parties to the consent order, let alone plaintiffs (*i.e.*, the party obtaining the writ), and have not presented any argument in support of their right to enforce the consent order.  *See* Br. at 21-24; *see also Sapuppo*, 739 F.3d at 681-83.  Their keen interest in collaterally attacking the pending administrative enforcement proceeding against them is not enough.  Rather, "[w]hat is required is that the interest be one which the *substantive* law recognizes as belonging to or being owned by the applicant."  *S. Fla. Water Mgmt. Dist.*, 922 F.2d at 710 (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984) (en banc) (emphasis in original)).  Because Appellants have no right to enforce the consent order under the substantive law they have no interest in this action that could justify their intervention.

Second, even if Appellants did have standing to enforce the consent order, doing so would not serve their interests because nothing in the order resolves the legality of Appellants' receipt of ceding premiums pursuant to their (now terminated) captive mortgage reinsurance arrangement, or prevents the Bureau from enforcing RESPA against Appellants.  In interpreting a consent decree, "'a district court may not impose obligations on a party that are not unambiguously mandated by the decree itself.'"  *Reynolds v. G.M. Roberts*, 202 F.3d 1303, 1312 (11th Cir. 2000) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir.

at * 3 (D.C. Cir. June 10, 2014).  Of course, the Bureau did not release Appellants from any potential claims, nor do Appellants argue otherwise.

34

1995)); *see also Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 574, 104 S.Ct. 2576, 2585 (1984) ("the 'scope of a consent decree must be discerned within its four corners'") (quoting *Armour*, 402 U.S. at 681-82, 91 S.Ct. at 1757).

The provision relied upon by Appellants does not impose any obligations on the Bureau, let alone unambiguous obligations.  It is contained in a section of the consent order labeled "Prohibited Conduct" that enjoins United Guaranty from entering into any new captive mortgage reinsurance arrangements, revising any existing arrangement without the Bureau's consent, or "[o]btaining reinsurance from a Captive Reinsurer on any new mortgage transactions after the date of entry of th[e] Order."  App. Tab 5 at 4-5.  The scope of this injunction is clarified by a provision stating that "*Nothing in this Order* shall be construed, however, as preventing the ceding of premiums on policies originated as of, and subject to Arrangements already in existence as of, the date of entry of this Order."  App. Tab 5 at 5 (emphasis added).  This provision clearly carves out certain conduct from the possible scope of the injunctive provisions contained in "*this Order*."  *Id.* (emphasis added).  Appellants' attempt to convert this provision into a carve-out from the requirements of *RESPA*—and, even more boldly, into an injunction prohibiting the Bureau from seeking to enforce those requirements against Appellants—"is more than sophistic; it is preposterous."  *Reynolds*, 207 F.3d at 1300.

35

Thus, Appellants do not have a legally protectable interest in enforcing the consent order against the Bureau. As a result, "[d]enial of intervention cannot impair [their] interests [because they] have no legal protection for those interests in any event." *S. Fla. Water Mgmt. Dist.*, 922 F.2d at 707 n. 3. Accordingly, their motion to intervene as of right may be denied on this ground as well.

### B.    Appellants Have No Ground for Permissive Intervention

On timely motion, a non-party may seek permission to intervene in an action if it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Because the district court denied Appellants' motion as untimely, it did not exercise its discretion to consider whether Appellants, as proposed defendant-intervenors, have a defense that shares with the main action a common question of law or fact. App. Tab 30 at 33-34. But this court may affirm on the alternative ground that, as a matter of law, "the legality of the continuing ceding payments [made] pursuant to UGI's agreement with Atrium Re," Br. at 26, is not a "question of law or fact" shared with this action because this action was resolved without resolution of that question. *See* App. Tab 5 at 1, 2 (noting that the consent order was entered "without trial or final adjudication of any issue of fact or law."). As a result, there could be no basis for permissive intervention. *See* 7C Fed. Prac. & Proc. Civ. § 1911 (3d ed.) ("If the would-be intervenor's claim or defense contains no question of law or fact that is

36

raised also by the main action, intervention under this branch of the rule must be denied.").  Appellants' motion for permissive intervention may therefore be denied on this alternative ground as well.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Date: July 17, 2014                    Respectfully submitted,


                                       MEREDITH FUCHS
                                           General Counsel
                                       TO-QUYEN TRUONG
                                           Deputy General Counsel

                                        /s/ John R. Coleman
                                       JOHN R. COLEMAN
                                           Senior Counsel
                                       KRISTIN BATEMAN
                                           Attorney

                                       Consumer Financial Protection Bureau
                                       1700 G Street, NW
                                       Washington, DC  20552
                                       (202) 435-7254 (phone)
                                       (202) 435-7329 (facsimile)
                                       John.Coleman@cfpb.gov

                                       *Counsel for Plaintiff-Appellee Consumer*
                                       *Financial Protection Bureau*

38

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with Fed. R. App. P.

32(a)(7)(B) because this brief contains 9,154 words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief complies with the

typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements

of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally

spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.

July 17, 2014                      /s/ John R. Coleman
                                   JOHN R. COLEMAN
                                   Consumer Financial Protection Bureau
                                   1700 G Street, NW
                                   Washington, DC  20552
                                   (202) 435-7254 (phone)
                                   (202) 435-7329 (facsimile)
                                   John.Coleman@cfpb.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2014, I electronically filed this Brief of

Appellee Consumer Financial Protection Bureau with the Clerk of Court using the

CM/ECF system, which will cause a copy to be served electronically upon the

following counsel of record:

Robert John Borrello
Russomanno & Borrello, PA
150 W Flagler Street, PH 2800
Miami, FL 33130-1558
rborrello@russomanno.com

Jane M. Byrne
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Ave., Floor 22
New York, NY 10010
janebyrne@quinnemanuel.com

Molly Alana Karlin
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, Floor 10
Los Angeles, CA 90017
mollykarlin@quinnemanuel.com

Mitchel H. Kider
Weiner Brodsky Kider PC
1300 19th Street, NW, Floor 5
Washington, DC 20036-1609
kider@thewbkfirm.com

Michael Ya'akov Kieval
Weiner Brodsky Kider PC
1300 19th Street, NW, Floor 5
Washington, DC 20036-1609
kieval@thewbkfirm.com

Daniel C. Posner
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, Floor 10
Los Angeles, CA 90017
danposner@quinnemanual.com

Herman Joseph Russomanno, III
Russomanno & Borrello, PA
150 W Flagler Street, PH 2800
Miami, FL 33130-1558
herman2@russomanno.com

David M. Souders
Weiner Brodsky Kider PC
1300 19th Street, NW, Floor 5
Washington, DC 20036-1609
souders@thewbkfirm.com

I further certify that on July 17, 2014, I caused the required number of bound

copies of this Brief of Appellee Consumer Financial Protection Bureau to be filed

via UPS Next Day Air with the Clerk of this Court and for one copy of the same to

be served, via U.S. Mail, to all case participants, at the above listed addresses.


July 17, 2014                         /s/ John R. Coleman
                                      JOHN R. COLEMAN
                                      Consumer Financial Protection Bureau
                                      1700 G Street, NW
                                      Washington, DC  20552
                                      (202) 435-7254 (phone)
                                      (202) 435-7329 (facsimile)
                                      John.Coleman@cfpb.gov

                                      *Counsel for Plaintiff-Appellee Consumer
                                      Financial Protection Bureau*